USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/06/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARK OWEN, *Individually and on Behalf of All Others Similarly Situated*,

                            Plaintiff,

                -against-

ELASTOS FOUNDATION, FENG HAN, RONG CHEN, FAY LI, AND BEN LEE,

                          Defendants.
-----------------------------------------------------------------X

1:19-cv-05462-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

    Plaintiffs Mark Owen and James Wandling filed this putative class action in Supreme Court, New York County, alleging that Defendants violated various provisions of the Securities Act of 1933 (the "Securities Act") by offering, soliciting and selling unregistered securities in the form of Elastos Foundation cryptocurrency tokens ("ELA Tokens"). Dkt. No. 1-3 at ¶ 1. Defendants Elastos Foundation, Feng Han, and Rong Chen removed this case to federal court under the Class Action Fairness Act ("CAFA"), which provides for the removal of class actions meeting certain threshold requirements. *See* 28 U.S.C. § 1453(b). Plaintiffs have moved to remand the case to state court, citing Section 22 of the Securities Act, which bars the removal of cases brought under the Act, subject to certain exceptions not applicable here. Whether or not CAFA's removal provision trumps the Securities Act's bar remains an unresolved question in this Circuit. For the reasons discussed below, the Court finds that it does. Plaintiffs' motion to remand is therefore DENIED.

**I.    BACKGROUND**

    On January 31, 2019, Plaintiff Mark Owen filed a summons with notice in the Supreme Court of the State of New York, on behalf of himself and a putative class of investors, alleging that Defendants violated the Securities Act by failing to register the ELA Tokens with the Securities and

Exchange Commission before issuing them in the United States.  *See* Dkt. No. 1-1.  Owen claims that the tokens are "securities" within the meaning of the Act, and that Defendants specifically targeted the U.S. market as part of their fundraising efforts.  *Id.*; Dkt. No. 1-3.

On May 21 and May 30, 2019, Owen filed affidavits in the state court asserting that Defendants Rong Chen and the Elastos Foundation and Defendant Feng Han had been served on May 18 and May 21, 2019, respectively.  *See* Supreme Court, New York County, Index No. 650628/2019, Dkt. Nos. 3, 36, 37.[1]  Owen filed the complaint in this action on May 28, 2019, adding James Wandling as a plaintiff.  The Elastos Foundation, Chen, and Han removed the case to this District under the CAFA removal provision, 28 U.S.C. § 1453, by filing a notice of removal on June 11, 2019.  Dkt. No. 1.  On July 10, 2019, Plaintiffs filed a motion to remand the case to state court, arguing that Section 22 of the Securities Act barred the removal of this action.  Dkt. No. 26.

## II. DISCUSSION

### a. CAFA provides for the removal of Securities Act class actions, irrespective of the removal bar in Section 22.

When Congress enacted the Securities Act of 1933, it included within the Act an "unusual" provision:  While both federal and state courts could exercise jurisdiction over private suits brought under the Act, Section 22 barred the removal of Securities Act cases brought in state court.  *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1066 (2018).  Although the anti-removal provision in Section 22 was altered by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),[2]

---

[1] On May 21, 2019, Owen moved *ex parte* for an order permitting alternative service on Defendants Fay Li and Ben Lee.  *See* Declaration of Javier Bleichmar, Dkt. No. 29, at Ex. A.  During a hearing held on May 23, 2019, the state court granted Owen a 120-day extension to effect service on Defendants Li and Lee and set a briefing schedule on Owen's application for alternative service.  *See* Dkt. No. 1-2.  That motion was fully briefed at the time Defendants removed this case.  *See id.* at 9.

[2] The full text of the relevant portion of 15 U.S.C. § 77v(a) reads:  "Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  The "except as provided in section 77p(c)" language was added by SLUSA and refers to a narrow category of state-law claims which may be removed under SLUSA solely for the purpose of being dismissed in federal court.  *See* 15 U.S.C. §§ 77p(c), 77v(a); *see also Cyan*, 138 S.

2

the original statutory language as it pertains to this case remains unchanged.  Section 22 clearly states: "[N]o case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  15 U.S.C. § 77v(a).

Seventy-two years after the enactment of the Securities Act, Congress passed the Class Action Fairness Act of 2005.  "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).  CAFA's removal provision, codified at 28 U.S.C. § 1453, provides that "[a] class action may be removed to a district court of the United States in accordance with [28 U.S.C. § 1446]"—which sets out the general procedures for the removal of civil actions—subject to three limitations contained in 28 U.S.C. § 1453(d).  Under CAFA, therefore, any class action over which the federal courts would have original jurisdiction can be removed from state court, so long as it does not fall within the exceptions set forth in § 1453(d).

As the facts of this case demonstrate, for class actions which both meet the jurisdictional requirements of CAFA and assert Securities Act claims, Section 22 of the Securities Act and the removal provisions of CAFA provide opposite directives.  While CAFA permits the removal of such actions, Section 22 explicitly bars their removal.  It is clear, therefore, that one of the statutes must cede to the other.  For two reasons, the Court is convinced that it is CAFA which carries the day.

First, although the Second Circuit has not ruled definitively on this issue, it has considered the analogous issue of the interplay between Section 22 and the bankruptcy removal statute, 28 U.S.C. § 1452(a), which provides for the removal of claims that are "related to" a bankruptcy case.

---

Ct. at 1078 ("The idea was to allow removal so that a federal court could act as a backstop and order a class action's dismissal" out of "concern that state courts would not adequately enforce § 77p(b)'s state-law class-action prohibition." (internal alterations omitted)).

3

*See also* 28 U.S.C. § 1334(b). In *California Public Employees' Retirement System v. WorldCom, Inc.*, the Second Circuit held "that the conflict between Section 22(a) of the Securities Act and the bankruptcy removal statute must be resolved in favor of bankruptcy removal." 368 F.3d 86, 90 (2d Cir. 2004). To reach that conclusion, the Circuit analyzed the structure of the bankruptcy removal provision, particularly as compared to the general removal provision contained in 28 U.S.C. § 1441(a)—which notably provides for the removal of any civil action over which the federal courts have original jurisdiction, "[e]xcept as otherwise expressly provided by an Act of Congress." *Id.* at 105-06. The Circuit noted:

> Like Section 1441(c) but unlike Section 1441(a), Section 1452(a) does not contain an exception for claims arising under an Act of Congress that otherwise prohibits removal. Rather, § 1452(a) states that "[a] party may remove *any* claim or cause of action . . . ." 28 U.S.C. § 1452(a) (emphasis added). The absence of a such a crucial exception in the language of Section 1452(a) suggests that, in 1978, when it originally enacted Section 1452(a) as part of the Bankruptcy Code, Congress did not intend for Section 22(a) and its analogues to bar removal of "related to" claims. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but it omits in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).

*Id.* at 106. To read an exception like the one contained in § 1441(a) into the bankruptcy removal provision would—in the view of the Circuit—render the exception language in § 1441(a) impermissibly superfluous. *Id.* Accordingly, the Circuit concluded, the bankruptcy removal provision permitted the removal of cases which fell within its terms, even if the removal of those cases would otherwise be barred by Section 22. *Id.* at 106-07.

There is no principled basis on which to distinguish *WorldCom* from this case. The Second Circuit's reasoning applies with equal force here: 28 U.S.C. § 1453 provides clear authority for the removal of class actions, subject to no explicit exception for claims whose removal is otherwise barred by an Act of Congress. Under the reasoning of *WorldCom*, therefore, CAFA's removal provisions are not limited by Section 22.

4

Second, the resolution of this question is clearly governed by the rule that "when two statutes are in irreconcilable conflict, [a court] must give effect to the most recently enacted statute since it is the most recent indication of congressional intent." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 991 (2d Cir. 1990). Every court to have considered the interplay between Section 22's removability bar and CAFA's removal provision has found that the two statutes are irreconcilable. *See Katz v. Gerardi*, 552 F.3d 558, 561 (7th Cir. 2009) ("Section 22(a) and the 2005 Act are incompatible; one or the other must yield."); *N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4*, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008) ("On their face, the Securities Act of 1933's anti-removal provision and CAFA's removal provisions are in direct conflict with one another."); *Luther v. Countrywide Home Loans Servicing, LP*, No. 2:07-cv-08165 (MRP), 2008 WL 11339604, at *3 (C.D. Cal. Feb. 28, 2008), *aff'd*, 533 F.3d 1031 (9th Cir. 2008) ("[O]n this issue these two statutes cannot 'mutually coexist' . . . ."). Under the rule of recency, CAFA—as the more recently enacted statute—should prevail over Section 22. *See Katz*, 552 F.3d at 561 ("Usually the older law yields to the newer.").

The Court recognizes—as did the Second Circuit in *WorldCom*—that there is some tension between the "rule of recency" and the presumption that "repeals by implication are disfavored." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (internal quotation omitted); *see WorldCom*, 368 F.3d at 104. But although "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow," *Epic Sys. Corp.*, 138 S. Ct. at 1624 (internal citation omitted), that burden is not insurmountable. Plaintiffs point to legislative history suggesting that Congress did not consider the effects of CAFA on Section 22, arguing that Congress was instead focused on the expansion of diversity jurisdiction and that Defendants therefore cannot demonstrate a "clearly expressed congressional intention" to override Section 22's bar on removal.

5

Plaintiffs' interpretation of CAFA's legislative history may or may not be accurate,[3] but it does not change the reality that Congress wrote the statute it wrote. *See Holloway v. United States*, 526 U.S. 1, 6, (1999) ("[T]he language of the statutes that Congress enacts provides 'the most reliable evidence of its intent.'" (quoting *United States v. Turkette*, 452 U.S. 576, 593 (1981))). And what Congress wrote was a removal statute that is entirely at odds with the limitations in Section 22. The Court need not sift through the statutory language or pore over legislative history to divine a conflict between Section 22 and the CAFA removal provisions. *Cf. Epic Sys. Corp.*, 138 S. Ct. at 1624-27. The conflict is apparent on the face of the statutes—one permits what the other forbids. In such circumstances, the rule of recency provides the guiding principle for resolution of that conflict.

Plaintiffs urge the Court to look to the Ninth Circuit's decision in *Luther v. Countrywide Home Loans Servicing LP*, which found that Section 22's removal bar remained unaffected by the enactment of CAFA. To reach its conclusion, the *Luther* court relied on the "basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153 (1976)). Because "the Securities Act of 1933 . . . applies to the narrow subject of securities cases" and "CAFA, on the other hand, applies to a 'generalized spectrum' of class actions," the Ninth Circuit concluded that the Securities Act was the more specific statute, and therefore that its prohibition against the removal of Securities Act cases remained in effect despite the enactment of

---

[3] Because CAFA's legislative history makes no explicit reference to Section 22, it is difficult to discern any congressional intent regarding CAFA's effect on Securities Act class actions. Indeed, in resolving the same question currently before the Court, Judge Harold Baer, Jr. examined the legislative history of CAFA and came to the opposite conclusion from what Plaintiffs urge here. *See N.J. Carpenters Vacation Fund*, 581 F. Supp. 2d at 584-85. Based on his conclusion that "Congress's overriding concern[] in enacting CAFA was to provide a federal forum for interstate class actions," Judge Baer determined that "the intent of Congress [was] to include within the reach of CAFA all securities class actions except for those set forth in the § 1332(d)(9) exceptions." *Id.* at 584, 587.

CAFA. *Id.* But even if the Court was inclined to agree with *Luther*—and it is not—that reasoning is squarely foreclosed by the Second Circuit's decision in *WorldCom*. In *WorldCom*, the Second Circuit considered whether Section 22 or the bankruptcy removal provision was the more specific statute and concluded that neither was more specific than the other:

> [T]he class of claims covered by Section 22(a) is no more specific than the class of claims covered by Section 1452(a). Section 22(a) does not cover only a subset of the claims covered by Section 1452(a). By the same token, Section 1452(a) does not cover only a subset of the claims covered by Section 22(a). Rather, just as Section 1452(a) applies to many claims that are not brought under the 1933 Act, Section 22(a) applies to many claims that are not "related to" a bankruptcy.

*WorldCom*, 368 F.3d at 102. That same reasoning clearly governs here. CAFA applies to many claims that are not brought under the Securities Act, and Section 22 applies to many claims that are not within CAFA's jurisdictional bounds. Neither is more specific than the other, and the rule of *Radzanower* cannot resolve this case. *See also Katz*, 552 F.3d at 561-62 ("Is the 1933 Act more specific because it deals only with securities law, or is the 2005 Act more specific because it deals only with nationwide class actions? There is no answer to such a question, which means that the canon favoring the specific law over the general one won't solve our problem.").[4]

---

[4] While the Court agrees with much of the reasoning of *Katz*—and although it ultimately arrives at the same conclusion—it declines to base its decision entirely on the logic of *Katz*. *Katz* concluded that the structure of 28 U.S.C. § 1453, particularly the exceptions in § 1453(d), "leaves no doubt about how the 1933 Act, the 1934 Act, and the 2005 Act fit together." *Katz*, 552 F.3d at 562. But a colorable argument could be made that the exceptions in § 1453(d) apply exclusively to state law claims, and thus reveal little about Congress' intent regarding how CAFA should apply to federal law securities class actions (particularly those which would otherwise be barred from removal under Section 22). *See, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381, (2013) ("The force of any negative implication, however, depends on context. We have long held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it . . . ." (internal citation omitted)). Although the exception listed in § 1453(d)(1) appears on its face to apply to any class action involving securities traded on a national exchange—which would include cases asserting federal claims, *see Katz*, 552 F.3d at 562-63—the section could also be interpreted to apply only to the state law fraud claims which were the subject of SLUSA. *See supra*, n.2. Indeed, the Second Circuit has referred to that exception using language that suggests such an interpretation. *See Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("Subsection (A) of § 1332(d)(9) [which is identical to § 1453(d)(1)] carves out class actions for which jurisdiction exists elsewhere under federal law, such as under the Securities Litigation Uniform Standards Act ('SLUSA'), *i.e.*, *state-law fraud claims* in connection with the purchase or sale of securities traded on a national stock exchange." (emphasis added)).

7

Plaintiff also directs the Court to the Supreme Court's recent decision in *Cyan*, which references the "long and unusually pronounced tradition of according authority to state courts over 1933 Act litigation." 138 S. Ct. at 1073. This language—Plaintiffs argue—shows that CAFA could not have been intended to apply to Securities Act claims subject to Section 22's removal bar. But the issue before the Court in *Cyan* related solely to the interpretation of SLUSA, specifically the question of whether SLUSA stripped state courts of their jurisdiction over Securities Act class actions or authorized the removal of class actions alleging only violations under the Act. *Id.* at 1068-69. The Court examined the language of the SLUSA amendments and concluded that "SLUSA's text, read most straightforwardly, leaves in place state courts' jurisdiction over 1933 Act claims, including when brought in class actions." *Id.* at 1069. It further held that SLUSA's text—"most naturally read"—refuted the argument that SLUSA provided for the removal of Securities Act class actions. *Id.* at 1075. Thus, not only did *Cyan* say nothing whatsoever about CAFA, it dealt only with a statute whose clear text did not authorize the removal of Securities Act class actions. That is not the situation here, because CAFA does provide explicit authorization for removal of such actions. *Cyan* does not move the ball in this case and the Court sees no reason to deviate either from Second Circuit's reasoning in *WorldCom* or from established rules of statutory construction. If Plaintiffs' case is removable under 28 U.S.C. § 1453, then Section 22 of the Securities Act does not bar that removal.

### b. This case does not fall within the exception to the CAFA removal provision set forth in 28 U.S.C. § 1453(d)(3).

In the alternative, Plaintiffs argue that, even if CAFA supersedes Section 22, Plaintiffs' case is still not removable under CAFA because it falls within the exception to the CAFA removal provision set forth in 28 U.S.C. § 1453(d)(3). Although, as noted above, 28 U.S.C. § 1453(b) provides that "[a] class action may be removed to a district court of the United States in accordance with [28 U.S.C. § 1446]," that general rule is modified by three exceptions set forth in § 1453(d).

8

The third of those exceptions—which Plaintiffs argue applies here—states, "This section shall not apply to any class action that solely involves . . . a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security . . . ." *Id.* at § 1453(d)(3).

Although § 1453(d)(3) appears expansive on its face, the Second Circuit has defined the scope of the exception as follows: "Claims that 'relate [ ] to the rights . . . and obligations' 'created by or pursuant to' a security must be claims grounded in the terms of the security itself." *Estate of Pew v. Cardarelli*, 527 F.3d 25, 31-32 (2d Cir. 2008). The exception applies to suits which seek to enforce the rights of securities holders "as holders," not as "purchasers." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010). Plaintiffs contend that their "allegation that the ELA Tokens are securities under the terms of the [offering documents] creates Defendants' 'duty' or 'obligation' to register the securities." Plaintiffs' Memorandum of Law in Support of Motion to Remand, Dkt. No. 28, at 11. This argument is without merit. As Defendants correctly note, Plaintiffs are not seeking to enforce the terms of the offering documents as holders of the ELA Tokens; they are seeking to enforce their rights, under the Securities Act, as purchasers of allegedly unregistered securities. The exception set forth in 28 U.S.C. § 1453(d)(3) does not apply to this case.

### III. CONCLUSION

For the reasons discussed above, Plaintiffs' motion to remand is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 26.

SO ORDERED.

Dated: February 6, 2020  
New York, New York

GREGORY H. WOODS  
United States District Judge

9