**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK OWEN, Individually and On Behalf of All Others Similarly Situated, | Hon. Gregory H. Woods |
| Plaintiff, | Civil Action No. 1:19-cv-5462-GHW |
| vs. | <u>CLASS ACTION</u> |
| ELASTOS FOUNDATION, FENG HAN, and RONG CHEN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION TO COMPEL</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..........................................................................................................................3

I.      PROCEDURAL HISTORY........................................................................................3

II.     DEFENDANTS' INTERPRETATION OF THE PIPL....................................................5

ARGUMENT ..............................................................................................................................6

I.      DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO PROVE
THAT RESPONSIVE DISCOVERY IS BARRED BY THE PIPL ..................................7

        A.     Defendants' Objection Fails Because They Refuse To Identify Any
Documents Actually Barred By The PIPL.......................................................7

        B.     Separately, Defendants' Objection Fails Because They Fail To Establish
That The PIPL Bars Production of Business Documents By A Defendant
In U.S. Litigation ........................................................................................8

               1.     Defendants Fail to Prove That The PIPL Applies to U.S. Litigation
And That Business Documents Constitute "Personal Information"............8

               2.     Defendants Cannot Meet Their Burden Because the PIPL Does
Not Bar the Discovery Sought Here By Its Own Terms...........................11

II.     DEFENDANTS FAIL TO SHOW THAT COMITY PREVENTS THIS COURT
FROM ENFORCING THE FEDERAL RULES............................................................13

        A.     Defendants' Status As "Parties" To This Litigation Weighs Against
Comity......................................................................................................14

        B.     Additional Factors Weigh In Plaintiffs' Favor ..................................................15

               1.     The importance of the documents or information requested to the
litigation ...................................................................................................15

               2.     The degree of specificity of the request.....................................................17

               3.     Whether the information originated in the United States ...........................17

               4.     The availability of alternative means of retrieving the information ..........19

               5.     The extent to which noncompliance with the request would
undermine important interests of the United States, or compliance
with the request would undermine the important interests of the
state where the information is located .......................................................20

6.      Nature of the Hardship ...................................................................................21

7.      Good Faith of the Party Resisting Discovery ..............................................22

III.    DEFENDANTS WAIVED THEIR OBJECTIONS BASED ON THE PIPL ...................24

CONCLUSION ..........................................................................................................................25

## **TABLE OF AUTHORITIES**

### **Cases**

*Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*,
No. 90CIV.2370(JFK)(FM), 2000 WL 713057 (S.D.N.Y. June 2, 2000)............................... 20

*Fenerjian v. Nong Shim Co.*,
2016 WL 245263 (N.D. Cal. Jan. 21, 2016)........................................................... 14, 19, 20, 21

*Fischer v. Forrest*,
No. 14CIV1304PAEAJP, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017)................................... 24

*Gucci Am., Inc. v. Curveal Fashion*,
No. 09 CIV. 8458 RJS/THK, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ............................ 17

*In re Mercedes-Benz Emissions Litig.*,
2020 WL 487288 (D.N.J. Jan. 30, 2020)............................................................................... 14

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
917 F.3d 85 (2d Cir. 2019) ...................................................................................................... 7, 13

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
No. MDL 2875 (RBK), 2021 WL 6010575 (D.N.J. Dec. 20, 2021) ................................. 15, 19

*Laydon v. Mizuho Bank, Ltd.*,
183 F. Supp. 3d 409 (S.D.N.Y. 2016) ............................................................................ passim

*Linde v. Arab Bank, PLC*,
706 F.3d 92 (2d Cir. 2013) ...................................................................................................... 21

*Meggitt (Orange Cnty.), Inc. v. Yongzhong*,
No. SACV130239DOCDFMX, 2014 WL 12967458 (C.D. Cal. Mar. 21, 2014) ................... 22

*Mohegan Lake Motors, Inc. v. Maoli*,
No. 16-cv-6717 (NSR)(LMS), 2018 WL 4278351 (S.D.N.Y. Apr. 6, 2018)......................... 24

*Munoz v. China Expert Tech., Inc.*,
No. 07 CIV. 10531 AKH, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) .......................... 20, 21

*Philips Medical Systems (Cleveland), Inc. v. Buan*,
No. 19-cv-2648, 2022 WL 602485 (N.D. Ill. Mar. 1, 2022) ........................................... passim

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
No. 14CV04394AJNBCM, 2017 WL 7512815 (S.D.N.Y. Dec. 29, 2017)............... 7, 9, 16, 24

*United States v. Davis*,
767 F.2d 1025 (2d Cir. 1985) ................................................................................................. 21

*United States v. First Nat'l City Bank*,
    396 F.2d 897 (2d Cir. 1968) ................................................................................................. 21

*Wultz v. Bank of China Ltd.*,
    910 F. Supp. 2d 548 (S.D.N.Y. 2012) ............................................................................. 14, 23

**<u>Rules</u>**

Fed. R. Civ. P. 34 .................................................................................................................... 6, 15

## PRELIMINARY STATEMENT[1]

Elastos is a Singapore company that sells crypto tokens to investors in the United States. Elastos does no business whatsoever in China and has no Chinese customers.  In fact, it is illegal for Elastos to sell its crypto tokens in China.  Since China banned initial coin offerings in September 2017, Elastos has targeted U.S. investors, making its ICO open to anyone *except* Chinese citizens.  Elastos' founder lives in the U.S., and for years it has stored its business communications and documents on Google servers located in the U.S.  Yet Plaintiffs have been forced to file this motion because Defendants seek to obstruct document discovery by hiding behind China's Personal Information Protection Law (PIPL).[2]

Defendants first mentioned that law long after the deadline to serve objections to Plaintiffs' requests had passed.  But the PIPL has nothing to do with this case.  It is aimed at internet companies seeking to collect personal data from Chinese citizens; it does not constrain litigation or a company's use of its own documents generated by company personnel in their work for the business.  Nevertheless, according to Defendants, the PIPL's protection against use of "personal information" located in China or concerning Chinese residents without their "consent" gives a defendant with documents or witnesses in China the power to shield discovery in U.S. litigation. That is, Defendants claim the right to permit each Defense witness to pick and choose which business documents in Defendants' possession can be collected and produced to Plaintiffs—while providing no log of the documents withheld, thus making documents withheld as "personal information" under the PIPL immune to challenge by Plaintiffs or review by this Court.

---

[1] Exhibit references are to the exhibits appended to the Declaration of Javier Bleichmar filed in support of this motion. Internal quotation marks and citations are omitted, and emphasis is added, unless otherwise noted.  ECF references are to the filings in this action, unless otherwise stated.  Capitalized terms not defined herein have the meanings in the Amended Complaint (ECF 68).

[2] Citations to the PIPL are to the English translation published by The National People's Congress of the People's Republic of China, available: http://en.npc.gov.cn.cdurl.cn/2021-12/29/c_694559.htm.

Specifically, Defendants are relying on the PIPL to justify withholding two types of documents—(1) any document located "in China" and (2) any document anywhere in the world (including the U.S.) "that relates to individuals in China." (ECF 107 at 4.) The effect on this case is significant because Defendants assert PIPL restrictions for every individual that Defendants listed in their initial disclosures as having discoverable information relevant to the case. (Ex. 2 (Ds' initial disclosures).) Out of the nineteen agreed upon custodians, it appears that only one custodian (Feng Han) has provided "consent" for document discovery in this case; but Defendants refuse to collect or produce documents from some or all sources for all remaining eighteen custodians. For two Defense witnesses (Dinghe Hu and Hao Cheng) who have not provided consent, Defendants refuse to produce *any* documents. Attached as Appendix A is a chart showing the status of PIPL "consent" reported by Defendants for each custodian.

*Accordingly, the issue before the Court is whether Defendants can withhold responsive business documents in their possession, custody, or control on the grounds that they have not obtained "express written consent" from their witnesses, as they claim is required under the PIPL.* Defendants do not object that *any* of the responsive documents at issue, including the business records and communications from their current or former workers' personal devices, are outside Defendants' possession, custody, or control. (*See, e.g.*, Ex. 6 at 4 ("To be clear, we are not withholding any documents or data held by any custodians on the grounds that it is not in Defendants' possession, custody, or control.").)

This Court should reject Defendants' objection and rule that China's PIPL does not apply, and even if it did, it does not trump the Federal Rules of Civil Procedure and that, just like every other defendant in federal court, Defendants must collect and produce responsive documents in

their possession, custody, or control regardless of whether witnesses want to provide "express written consent" to produce them to Plaintiffs.

## **BACKGROUND**

### I.   **PROCEDURAL HISTORY**

At the outset of discovery, the Parties conferred and Defendants raised Chinese law as a reason discovery may take *longer* than usual, but never as grounds that would preclude or prohibit Defendants' from producing responsive discovery in their possession, custody, or control. Defendants explained that the relevant Chinese laws were longstanding and familiar procedures that they would follow "so we can take that discovery out of China so that we can use it in our litigation." (*See* ECF 92, Tr. 7:7-12.)

On January 26, 2022, Plaintiffs served initial document requests in advance of the Court deadline. (ECF 91 ¶7(b); Ex. 1 (Plfs' Requests).)  On February 25, Defendants served responses and objections, which raised no objection based on the PIPL or any other Chinese law. (Ex. 3.)

The earliest Defendants were available to meet and confer was March 11, when they first announced that they may be unable to produce responsive documents because of unspecified Chinese legal restrictions.  When Plaintiffs' counsel asked for an explanation, Defendants' counsel was unable to provide one, and emailed that were only available to resume discussion was five days later. (*See* Ex. 5 at pp.26-27 (Mar. 11 & Mar. 13 emails).)  On that March 16 call, Defendants' counsel disclaimed their prior comment and instead stated that they "are evaluating what, *if anything*, under China's Personal Information Protection Law limits [their] collection of documents from China," and confirmed that they were ***not***, at that time, "claim[ing] that Chinese law bars or restricts [Defendants'] document collection or production in any way." (*See id.* at pp.24-25 (Mar. 18 email).)

Later, during an April 8 meet and confer, and follow up letter on April 13, Defendants, for the first time, claimed that the PIPL bars Defendants' collection and production of their own business documents.  Specifically, they claimed that the PIPL "provides in Article 13 that personal information about an individual cannot be collected without first obtaining that individual's consent."  (Ex. 4 at 4.)  According to Defendants, "[p]er Article 3 of the PIPL, this consent requirement applies to processing of personal information that occurs both (i) in the territory of China itself, and (ii) outside the territory of China" because the personal information is "being used for the specified purpose … to 'analyze or evaluate behaviors of natural persons in China.'" (*Id.*)  On this basis, according to Defendants, "[f]or all data in China—regardless of whether it is for U.S.-based custodians or China-based custodians—we are required to [] get prior written consent from each custodian" and also "[f]or data for China-based custodians that is located in the U.S., the consent requirement nonetheless applies."  (*Id.* at 5.)

Plaintiffs responded on April 27, explaining that the PIPL does not apply, that U.S. Courts have rejected every attempt by a defendant to use it as an excuse to avoid document discovery, that it has been rejected by U.S. courts as an affront to U.S. sovereignty, and in any event, Defendants had waived any objection based on the PIPL by never raising it in their objections to Plaintiffs' document requests.  (Ex. 5.)  On May 4, Defendants replied, attempting to cure their waiver by serving amended objections that raised the PIPL as a "General Objection" and only "to the extent" that a request or instruction would require Defendants to violate it.  (Ex. 6 at Ds' Ex. A thereto.)  Their May 4 objection did not specify which documents (if any) they are withholding on the grounds of the PIPL.

Further, Defendants have refused to share the PIPL consent requests sent to witnesses, the responses received, their communications that led to key witnesses providing "varying levels of

consent" (ECF 107 at 4) to selectively producing only certain requested documents, their basis for asserting that certain unspecified documents are located in China, or their basis for asserting that certain witnesses are located in China.[3]   For example, Defendants insisted that nearly all relevant individuals were located in China, with the exception of "four custodians in the U.S." (*see* Ex. 4 at 6), while refusing to provide any substantiating information.  Only after Plaintiffs confronted Defendants with publicly available information contradicting their representations, did Defendants admit their prior representations were wrong.  (*See id.* (representing there are "four custodians in the U.S.," which include Rong Chen, Zach Warsavage, and Donnie Bullers); Ex. 6 at 4 (now conceding that Clarence Liu, Kevin Zhang, and Fay Li are also "in the U.S."); Ex. 8. at 2 (now conceding that two more custodians "we previously believed are currently in China are not," namely Hongjie Hu and Leo Lei).)

On May 13, 2022, the parties raised the dispute with the Court (*see* ECF 107), and pursuant to the Court's instruction at the May 26 hearing, Plaintiffs file this motion to compel.

## II.    DEFENDANTS' INTERPRETATION OF THE PIPL

In Defendants' view, business emails and other business records in the possession, custody, or control of Elastos but prepared by employees are the *employees'* "personal information" that the business is barred from collecting, storing, using, processing, transmitting, or disclosing without that employee's "express written consent."  Defendants do not distinguish in any way whether the documents include what is "personal information" (*e.g.*, social security numbers) versus documents that contain only professional or business-related information of the individual.

---

[3] Not until June 8, five days before the instant motion was due to be filed (and nearly two weeks after the May 26 hearing) did Defendants provide a chart summarizing what "varying levels of consent" they believe exist from their private communications with witnesses.  (Ex. 8, June 8 Ltr. at Ds' Ex. F thereto.)  But Defendants still refuse to provide the aforementioned information required to substantiate their PIPL objection.  And, as illustrated in Appendix A, Defendants are using the PIPL to withhold responsive discovery from eighteen of nineteen initial custodians.

Thus, Defendants insist that they will only collect and produce their own business documents if, and only if, the individuals involved (and it is unclear the level of involvement or how that is determined) have elected to give "express written consent" that the document be produced to Plaintiffs in this litigation.   And in Defendants' view, because, under the PIPL, "personal information handling" includes "collection" of personal information (*see* PIPL Art. 4), they cannot even access or review these documents or provide any kind of log showing their volume or contents—and thus any challenge by Plaintiffs or review by the Court is forbidden.  (Ex. 7, Tr. 16:6-12 ("we're not able to collect the data before we're able to analyze it to view what is, in fact, in it without obtaining the consent of the custodian of the documents."); *id.*, Tr. 18-20 ("we don't have consent to collect the data, and thus, we don't have the ability to see exactly what is personal information versus not").

## **ARGUMENT**

Defendants' PIPL objection fails for three independent reasons, each of which alone warrants granting Plaintiffs' motion to compel.  *First*, as the party attempting to invoke a foreign blocking statute, Defendants have failed to meet their burden to prove responsive discovery is barred by the PIPL—both by failing to identify any responsive documents purportedly barred and failing to prove their interpretation of the PIPL.  *Second*, even if the Court were to accept Defendants' interpretation of the PIPL and proceed to a comity analysis—which it need not— Defendants fail to show that comity prevents this Court from enforcing the Federal Rules of Civil Procedure.  *Third*, Defendants waived any objection based on the PIPL by failing to serve any such objection that comports with Rule 34's requirement that objections must be stated with specificity and clearly indicate whether responsive material is being withheld on the basis of that objection.

I.    **DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO PROVE THAT RESPONSIVE DISCOVERY IS BARRED BY THE PIPL**

Defendants, as the objecting party, bear "the burden of proving what that law is and demonstrating why it impedes production [] on the party resisting discovery." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016). Defendants' failure to meet this burden is fatal to their objection and the Court need not proceed to the comity analysis. *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 102 (2d Cir. 2019) ("At the threshold, international comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction."); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2017 WL 7512815, at *10 (S.D.N.Y. Dec. 29, 2017) ("Because I find no true conflict between Belgian law, on the one hand, and the requirements of this Court's discovery orders, on the other hand, there is no need for a comity analysis.").

Here, Defendants fail to meet their burden in two respects, each of which independently warrants rejecting their PIPL objection: (A) they fail to identify any responsive documents that the PIPL purportedly bars them from producing, and (B) they fail to establish that the PIPL actually bars the production of business documents by a defendant in U.S. litigation.

A.    **Defendants' Objection Fails Because They Refuse To Identify Any Documents Actually Barred By The PIPL**

As an initial matter, Defendants cannot meet their burden to prove with particularity and specificity that the PIPL bars production because they have not identified any responsive documents they are withholding on that basis. As the *Philips* Court recognized, where defendants "have not actually identified any responsive documents for which production may be impacted by Chinese law," they fail to meet their burden to sustain an objection based on the foreign blocking statute. *Philips Medical Systems (Cleveland), Inc. v. Buan*, No. 19-cv-2648, 2022 WL 602485, at *5 (N.D. Ill. Mar. 1, 2022). That is, "[l]acking specific and particular information about any such

contested documents that may exist, this court cannot conclude that Chinese law bars their production." *Id.*

Here, like *Philips*, Defendants assert that a lack of "consent" under the PIPL empowers them to refuse to provide any type of log or accounting identifying the documents they are withholding under the PIPL, which is necessary for the Court to adjudicate their objection.  (*See, e.g.*, Ex. 7, Tr. 16:6-12 ("we're not able to collect the data before we're able to analyze it to view what is, in fact, in it without obtaining the consent of the custodian of the documents.").)  Accordingly, like *Philips*, this Court should rule that a defendant's refusal to identify the documents they are withholding is fatal to their attempt to invoke the PIPL to refuse to produce business documents.

> **B.      Separately, Defendants' Objection Fails Because They Fail To Establish That The PIPL Bars Production of Business Documents By A Defendant In U.S. Litigation**

Separately, Defendants fail to meet their burden because they fail to prove their interpretation of the PIPL.

> **1.      Defendants Fail to Prove That The PIPL Applies to U.S. Litigation And That Business Documents Constitute "Personal Information"**

As set forth in the accompanying declaration of Chinese law expert Laura Wen-Yu Young, J.D filed herewith ("Young Report"), the PIPL does not apply for at least two reasons.

First, the PIPL is not meant to block Chinese businesses from complying with discovery requirements under the Federal Rules of Civil Procedure in U.S. litigation.  (*See* Young Report at ¶¶15-17.)   Instead, it is intended to protect individual Chinese citizens who are customers of a business from having their personal information exploited on the internet.  (*Id.* at ¶¶ 23, 24, 26.)  Put differently, the PIPL curtails the Googles, Amazons, and Facebooks of the world from monetizing consumer personal data and selling it to advertisers.  As such, the PIPL solely imposes

any type of "consent" requirement on the processing of personal information by a "personal information processor" (Art. 13), which the PIPL defines as "an organization or individual that autonomously determines the purposes and means of personal information processing" (Art. 73(1)).  For Defendants to deem themselves to be a "personal information processor" simply because Elastos personnel send and receive emails and generate business documents in the course of their work would be so broad as to impose the PIPL's considerable burdens on every business, which is clearly not the intent of the law.  (*See* Young Report at ¶¶16, 25.)

Second, the PIPL restrictions on "personal information" of "natural persons" do not bar a business from using and disclosing its own business records and communications.  (*Id.* at ¶¶15-17, 26, 30-34.)   That is, a company's business documents are not "personal information" within the meaning of the PIPL.  (*Id.*)   As such, the PIPL does not prohibit a business like Elastos from producing its business records and communications from its own server or directing Elastos employees to provide business information stored on personal devices.  (*Id.*)   Notably, this is how U.S. courts have interpreted the PIPL and other foreign data privacy laws.  *See, e.g.*, *Philips Medical Systems*, 2022 WL 602485 at *6 (the PIPL does not apply because a company's business documents are not "personal information within the meaning of the PIPL" and the PIPL does not "prohibit a company from directing their employees to look for business information stored on personal devices"); *Royal Park Invs. SA/NV*, 2017 WL 7512815, at *7 (Belgian Data Privacy Act does not bar unredacted production of "work emails" because "[t]hey all concern the business of the Fortis Entities, not the personal finances or private lives of the individuals").

What's more, Defendants' interpretation would generate many anomalous results.  It is nonsensical for Elastos to claim that the PIPL bars it from "collecting" documents it concedes are in its possession, custody, or control.  (*See, e.g.*, Ex. 7, Tr. 17:9-10, 18:12-16 (Defendants stating

"the data that is on Elastos' servers is in the possession, custody, or control of Elastos at all times, but we're not able to collect it for production purposes until we get the consent from the custodians").)  Elastos has *already* collected those documents.  Defendants' interpretation would mean that, under Article 4, all Chinese companies are barred from "storage" or "use" of their own business documents unless every individual involved separately provides express written consent for every document.  In Defendants' view, Elastos (and perhaps every other business) is *already* in violation of the PIPL because they are "us[ing] and "stor[ing]" their business documents without express written consent from every current and former worker.  (PIPL Art. 4; *see* Young Report at ¶¶16, 25, 38.)

Furthermore, Defendants' interpretation would require every business to handle its business records according to the wishes of employees, former employees, and the relatives of deceased employees.  That is, under the PIPL, "individuals have the right to rescind their consent" (PIPL Art. 15), personal information must be "deleted" where "the individual rescinds consent" (PIPL Art. 47), and these rights may be exercised by "[t]he close relatives of a deceased natural person" (PIPL Art. 49).  Under Defendants' reading of the PIPL, any employee, former employee, or relatives of a deceased employee could—at any time—require a business to destroy all email and records associated with that individual.  (Young Report at ¶¶33-34.)  This becomes even more problematic if the PIPL applies in the litigation context as Defendants wrongfully contend, because it would mean that the Defendants' witnesses (including the two Individual Defendants) have the power to change their mind ***during*** the litigation and order the destruction of any unfavorable business emails or records they previously consented to produce—such as during a deposition or on the eve of trial.

Additionally, Defendants' interpretation means that the PIPL requires every businesses to "assess in advance the impact on personal information protection and keep a record of the course of the processing" before every email (PIPL Art. 55) and to send written notice that "accurately and fully inform[s] an individual" of the company's "purposes and means of personal information processing," "storage periods," and the individual's "rights as provided in this Law"— and send follow-up notices of all "changes"—in connection with every document generated by the business (PIPL Art. 17).  (Young Report at ¶25.)   Such an interpretation is clearly nonsensical.

## 2.    Defendants Cannot Meet Their Burden Because the PIPL Does Not Bar the Discovery Sought Here By Its Own Terms

As explained in Ms. Wen-Yu Young's expert report, even if the PIPL did apply (which it does not), Defendants fail to prove the PIPL requires their refusal to comply with document discovery in at least three respects:

Article 13 Exceptions.  First, the lack of express written consent from Elastos current and former employees is irrelevant because PIPL Article 13 specifically sets forth at least four exceptions that apply here where "the individual's consent" is not required, including (i) where "necessary for the performance of statutory duties or obligations," (ii) for "activities conducted in the public interest," (iii) for information "disclosed by the individual himself," or (iv) under "circumstances provided in laws and administrative regulations."  (PIPL Art. 13(3), (5), (6), and (7).)  Here, Defendants' production of responsive business documents in their possession, custody, or control is "necessary for the performance of statutory duties or obligations" and "provided in laws" under the Federal Rules, thereby qualifying for exceptions (i) and (iv).  (*See* Young Report at ¶¶44-45.)   Moreover, the full and fair adjudication of this class action lawsuit to protect investors from the unlawful sale of unregistered securities is "in the public interest," qualifying for exception (ii), particularly where China also has a strong public policy against the unlawful sale

of crypto tokens.  (*Id.* at ¶46; *see, e.g.*, ECF 95 ¶25 (answer admitting that "China effectively banned ICOs" and "sale of the ELA Token was not open to Chinese citizens").)  Finally, the PIPL consent requirement does not apply because the documents at issue were already "disclosed by the individual himself" in that emails and other business communications transmitted by these individuals, by definition, "disclosed" the contents of the communications to third parties, and further, business documents and communications in the course of work for Elastos are "disclosed" to the business for which they worked (*e.g.*, they are transmitted using @elastos.org email addresses, they are created and stored on company servers, or are otherwise readily accessible by Elastos), thus qualifying for exception (iii).  (Young Report at ¶47.)

Documents Outside China.  Second, the PIPL does not bar production of documents accessible in the U.S., or otherwise outside of China.  As a general matter the PIPL does not apply to documents outside of China.  Defendants attempt to get around that by claiming that an exception applies here because, by producing them (or even accessing them), Defendants will be "processing … the personal information of natural persons within [China]" for the purpose of "analyzing or evaluating the behaviors of natural persons within the territory of the People's Republic of China."  (PIPL Art. 3; *see* Ex. 4 at 4.)  They are wrong.  Defendants' documents will not be used for the purported "personal information" of witnesses they contain (*e.g.*, their birth dates are not being processed to sell them consumer products), nor will they be used to analyze or evaluate "the behaviors of natural persons" (*e.g.*, what their age and location data predicts for consumer products they would buy), but rather whether Elastos (not a natural person) issued unregistered securities.  (Young Report at ¶35.)  Indeed, this language in the PIPL was intended to address internet companies profiting from scooping up and monetizing personal data of Chinese citizens.  Accordingly, the PIPL does not apply to documents accessible outside China, including

documents on Elastos' Google server and Google drive which Defendants' concede are in the U.S.; documents on Tencent servers (which, as described below, *infra* at II.B.3, Defendants have never disputed are accessible in the U.S.); and all laptops, cell phones, and other electronic devices used for Elastos business (which Defendants have never disputed is readily accessible in the U.S.—*e.g.*, through Apple iCloud storage for iPhone data and through U.S. based accounts at Twitter, Facebook, WhatsApp, and other communication platforms).

<u>Witnesses Outside China.</u>  Third, apart from document location, the PIPL does not bar production of personal information relating to persons who are, or were, located in the United States (or otherwise outside of China).  This is clear by the plain terms of the PIPL, which provides that the PIPL only applies to the handling the personal information of "natural persons **within** the territory of the People's Republic of China."  (PIPL Art. 3; *see* Young Report at ¶36.)  Recognizing this deficiency, Defendants initially insisted all custodians were in China except only "four custodians in the U.S." (Ex. 4 at 6), but now concede that there are at least eight custodians outside of China:  Rong Chen, Fay Li, Donnie Bullers, Clarence Liu, Zach Warsavage, Kevin Zhang, Hongjie Hu, and Leo Lei (*id.*; Ex. 6 at 4; Ex. 8 at 2).  Nonetheless, as shown in Appendix A, Defendants have withheld discovery for all these custodians outside of China.  Because individuals are in the U.S. or otherwise outside China are not "natural persons **within** the territory of the People's Republic of China" (PIPL Art. 3), the PIPL does not apply and Defendants must collect and produce all responsive documents for each of these individuals.

## II.    DEFENDANTS FAIL TO SHOW THAT COMITY PREVENTS THIS COURT FROM ENFORCING THE FEDERAL RULES

While Defendants fail to meet their burden to show that the PIPL bars production of responsive discovery, and thus no comity analysis is required, *see In re Picard*, 917 F.3d at 102,

even if the Court were to conduct such an analysis, Defendants fail to show that comity prevents this Court from ordering Defendants to comply with their long-standing discovery obligations.

Critical to the comity analysis, courts in the Second Circuit consider whether the person resisting discovery is "party to the litigation" as well as seven additional factors.  *Laydon*, 183 F. Supp. 3d at 420; *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012).  U.S. courts roundly reject a party's efforts to withhold discovery based on foreign data privacy laws where—like here—there is a "protective order in place" and Defendants fail to cite any instance where the foreign government prosecuted an entity for "violating the [data privacy law] by complying with discovery demands in the United States."  *Laydon*, 183 F. Supp. 3d at 425 (rejecting UK Data Protection Act); *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, *8 (D.N.J. Jan. 30, 2020) (rejecting EU's GDPR); *Fenerjian v. Nong Shim Co., Ltd*, No. 13CV04115WHODMR, 2016 WL 245263, at *5 (N.D. Cal. Jan. 21, 2016) (rejecting Korean Personal Information Protection Act's purported consent requirements).

Here, Defendants seek to go much further and wield this PRC foreign data privacy law to block production of all documents involving certain employees and permit employees to pick which business documents to withhold—in their discretion—with no details or accounting of what is being withheld.  Therefore, Defendants' PIPL objection easily fails the comity analysis.

### A.      Defendants' Status As "Parties" To This Litigation Weighs Against Comity

In adjudicating a resisting party's comity argument, courts pay particular attention to whether the person resisting discovery is "a party to the litigation."  *Id.*; *see Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012) (in contrast to cases where "BOC was a non-party," "[t]he fact that in the instant case BOC is a party doing business in the United States … makes the case for compelling production even stronger").  And as parties to the litigation, Defendants cannot hide behind the PIPL to shield themselves from discovery, as courts have held

in rejecting other Chinese defendants' efforts to hide behind the PIPL.  *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *18 (D.N.J. Dec. 20, 2021) ("PRC defendants cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC blocking statutes…. [I]f you don't like the rules, then stop doing business in the U.S.").

    **B.**    **Additional Factors Weigh In Plaintiffs' Favor**

        **1.**    **The importance of the documents or information requested to the litigation**

This factor weighs in favor of Plaintiffs because Defendants' refusal to collect or identify the responsive documents they are withholding means that Defendants have no basis to contest their importance, and thus cannot possibly meet their burden.  *See, e.g.*, *Laydon*, 183 F. Supp. 3d at 420 (first factor weighs in favor of party seeking discovery where party resisting based on foreign law "do[es] not directly contest this point and instead states that it 'seek[s] only to produce the required documents in a way that comports with their obligations under the UK's data privacy laws'").  Nevertheless, Defendants invite this Court to create a perverse rule that a resisting party should *benefit* from violating Rule 34 by categorically refusing to provide any information about the documents it is withholding.  In Defendants' view, courts should accept their speculation that the responsive documents Defendants' witnesses elected not to produce are unimportant or unnecessary because in their view they have produced enough documents.  This is a vast overreach and seeks to improperly shift the burden to the party seeking production.

To the extent the Court engages in an analysis of this first factor, it should consider that Defendants are asserting their PIPL law objection to resist every document request served by Plaintiffs and for individuals Defendants identified as relevant in their own initial disclosures.  Accordingly, the documents at issue are necessarily important because they include, for example,

documents concerning issues Defendants concede are critical to this case, such as "whether or not the tokens are securities under the Howey Test or whether there's an exemption" (Ex. 7, Tr. 20:12-14; *see, e.g.*, Ex. 1, Plfs' Doc. Request No. 4 (requesting documents concerning the Howey Test).)

As shown by Appendix A, Defendants are obstructing production for nearly every individual that they identified as relevant in their initial disclosures. This includes withholding *every* custodial document for Hao Cheng and Dinge Hu. As Elastos' PR Director and Ecosystem Development Director, respectively, they were both heavily involved in marketing and promoting Elastos to the class of plaintiffs, with Hao Cheng working directly with news outlets, like Business Wire, to put out Elastos press releases and organizing "meetup" events for potential investors and Dinghe Hu traveling around the world (including the U.S.) to give speeches and presentations to promote the ELA Tokens. Their documents and communications are highly relevant.[4]

Defendants also argue that the withheld documents are not important because they have already produced many documents. But even in cases where (unlike Defendants here) the resisting party specifically identified the withheld documents, courts universally reject this illogical and non-responsive argument. *See, e.g.*, *Royal Park Invs. SA/NV*, 2017 WL 7512815, at *10 ("The fact that [the objecting party] has already produced many documents in discovery does not, however, relieve it of its obligation to produce additional responsive documents.").[5]

---

[4] As one example of Defendants' obstruction, for nine individuals Defendants inexplicably answer "N/A" or "No" to the question whether they used "personal or other devices for Elastos," and on that basis Defendants produce nothing from any devices for these individuals. (App'x A; Ex. 8 at Ds' Ex. F.) This answer makes no sense because Defendants admitted that "there are no Elastos-issued devices (desktop computers, laptops, or mobile devices)," and instead all personnel solely "used their personal devices for both Elastos and non-Elastos communications and information." (Ex. 4 at 2.) Therefore, each of these nine individuals necessarily used *some* electronic device for the emails they sent and documents they created at Elastos. Defendants concede that all custodians' devices are in their possession, custody, or control (*see, e.g.*, Ex. 6 at 4), and accordingly Defendants must collect and produce responsive documents from these nine individuals' devices.

[5] Defendants' assertion that their production is large is also not accurate. Their estimated final production of 230,000 documents (Ex. 8 at 2) would be one of the smallest productions (if not the smallest) by defendants in a federal class action securities lawsuit case that undersigned counsel has encountered in the past decade since the advent of social media and ubiquitous electronic files.

### 2.    The degree of specificity of the request

This factor favors Plaintiffs because Defendants' failure to identify any document request by Plaintiffs for which they are withholding documents precludes any finding that the "degree of specificity" of Plaintiffs' document requests warrants comity.  Defendants' failure to lodge specific objections to any of Plaintiffs' document requests based on the PIPL is fatal to their comity argument.  *See, e.g.*, *Gucci Am., Inc. v. Curveal Fashion*, No. 09 CIV. 8458 RJS/THK, 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010) (second factor "clearly favors Plaintiffs" because party resisting discovery based on Malaysian law "has not lodged any specific objections to the Subpoena's requests [and] [t]herefore, as a matter of law, [the resisting party] has waived its objections").  In fact, that Defendants only serve a vague general objection that they caveat as only "to the extent" that a request or instruction would require Defendants to violate the PIPL (Ex. 6 at Ds' Ex. A at Gen. Obj. No. 6) indicates that they may have no PIPL objection to some (or any) of Plaintiffs' document requests.

### 3.    Whether the information originated in the United States

Here, it is undisputed that Defendants are withholding information stored in the United States.  Elastos email, documents, and data is all stored in the United States.  Defendants concede that in April 2018 Elastos "transition[ed]" its data from Tencent to Google, and "[a]fter April/May 2018, Elastos email accounts, and all other related data, were hosted on Google" in the United States.  (Ex. 6 at 3; Ex. 4 at 2.)  Thus, Defendants' Google storage in the U.S. also contains documents prior to their 2018 transition, with even "some documents from Google shared drives predate[ing] November 1, 2017."  (Ex. 6 at 12.)

With respect to devices used for Elastos business, Defendants have never contested that some (or all) data is in the U.S.  Although Defendants have refused all requests to identify the laptops, cell phones, and other electronic devices used for Elastos business, or specify where

exactly such devices and their data is located, Defendants have never disputed that the data for such devices is readily accessible in the U.S. (*e.g.*, through Apple iCloud storage for iPhone data and through U.S. based accounts at Twitter, Facebook, WhatsApp, and other communication platforms).[6]

The only subset of documents that Defendants argue are in China are those hosted on a Tencent server. But Defendants have refused to substantiate this conclusory assertion by identifying specifically on which Tencent server (or servers) these documents are stored or what documents are actually stored there. Critically, Defendants have also never disputed that these "Chinese documents" are readily accessible in the U.S. For example, more than a month ago Plaintiffs asked, "to the extent any such documents or data concerning Elastos email accounts are not accessible through means other than directly accessing the Tencent servers in China, please say so, and explain the basis for such an assertion." (Ex. 5 at 6-7.) Defendants replied with a 61-page response that carefully avoids asserting these documents are unavailable outside China. (*See* Ex. 6.) Indeed, it would not be credible for Defendants to contend that Elastos business documents are sealed off from U.S. access. For example, Defendant Rong Chen (Elastos Founder and Executive Chairman) lives in the U.S. (ECF 75 ¶10.) Defendants have never disputed that Rong Chen (not to mention other non-China based personnel) has access to Elastos business documents purportedly "located" in China—whether on a Tencent server or elsewhere.

Finally, even if the withheld documents were solely in China (and most, or even all of them are not), courts reject foreign data privacy objections for documents located in that foreign country.

---

[6] Defendants have also refused to even identify the email addresses for Elastos custodians at @elastos.org as well as other email and electronic addresses they have used for communications concerning Elastos or otherwise related to this action (*e.g.*, email addresses as well as addresses for communications and content through media, services, or platforms like Google, Facebook, WeChat, Sina Weibo, Twitter, Reddit, Discord, Telegram, Slack, Snapchat, YouTube, and Instagram). (*See, e.g.*, Ex. 5 at 5.)

*See, e.g.*, *Laydon*, 183 F. Supp. 3d at 427 (rejecting defendants' objections to producing requested documents under UK data privacy laws for documents located in the UK).

### 4.   The availability of alternative means of retrieving the information

"The burden of demonstrating alternative means of obtaining information falls upon the party invoking the blocking statute," and further, courts require that "[a]ny such alternative must be 'substantially equivalent' to the discovery requested." *Fenerjian*, 2016 WL 245263, at *4.  This factor favors Plaintiffs because Defendants have not demonstrated a substantially equivalent alternative to obtain the documents they are withholding.

Here, Defendants have not made any suggestions.  Nor could they.  Defendants' speculation that unproduced documents they have never seen or collected are "duplicative" or "cumulative" of documents they *have* produced can be summarily rejected as baseless.  By definition Defendants do not know.  Given that Defendants have not collected or reviewed these documents, they have no basis to represent that they are duplicative of what Defendants already produced.  And, as held in *Valsartan*, Defendants cannot on one hand, claim that the withheld documents require special protection and they would be violating PRC law to produce them; yet, on the other hand, insist that the withheld documents are duplicative because they already produced their contents to Plaintiffs.  If the information has already been disclosed as "duplicative," why would it be entitled to PIPL protection? *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 6010575, at *15 (rejecting defendant's argument as "speculation" because "[t]here's no specific showing that … each of these is cumulative of other documents already produced").

**5.**   **The extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located**

This fifth factor "is the most important, as it directly addresses the relations between sovereign nations." *Philips Medical Systems*, 2022 WL 602485, at *3; *see Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, No. 90CIV.2370(JFK)(FM), 2000 WL 713057, at *9 (S.D.N.Y. June 2, 2000) (fifth factor "is of the greatest importance in determining whether to defer to the foreign jurisdiction"). Courts in this district recognize that "[t]his factor alone is enough to tip the balance in favor of a presumption of disclosure." *Munoz v. China Expert Tech., Inc.*, No. 07 CIV. 10531 AKH, 2011 WL 5346323, at *2 (S.D.N.Y. Nov. 7, 2011). This factor favors Plaintiffs and by itself warrants rejecting the PIPL for at least three reasons.

First, courts have consistently held that a protective order permitting defendant to designate documents confidential adequately protects the interests of a foreign country in its data privacy law. *See, e.g.*, *Laydon*, 183 F. Supp. 3d at 425 ("the UK's interest in protecting the privacy of its citizens is mitigated by the protective order in place in this case"); *Fenerjian*, 2016 WL 245263, at *5 ("the protective order adequately addresses the privacy concerns expressed in [the Korean Personal Information Protection Act], and safeguards against the unauthorized collection, leak, abuse or misuse of the personal information it protects"). The Court has entered such a protective order in the case (*see* ECF 100), which obviates any concerns about disclosure of "personal information." And what's more, Plaintiffs have agreed that the Defendants can freely redact irrelevant, sensitive personal information that properly qualifies as PII (*i.e.*, social security numbers, medical information, etc.). But Defendants instead stand behind their tortured reading of the PIPL, seemingly more concerned about preventing disclosure altogether than protecting purported privacy interests.

Second, the United States' interest in enforcing the Federal Rules so profoundly outweighs China's interest in exempting Defendants from producing business documents in U.S. litigation that "[t]his factor alone is enough to tip the balance in favor of a presumption of disclosure in this case." *Munoz v. China Expert Tech., Inc.*, 2011 WL 5346323, at \*2. "The national interest of the United States is observably strong" in cases, like this one, involving alleged "securities sold in the United States and under the protection of United States' laws governing United States capital markets," which implicates the U.S. interest in "ensuring the integrity of its financial markets." *Id.* Further, foreign data privacy laws are outweighed by the United States' "substantial interest in fully and fairly adjudicating matters before its courts—an interest only realized if the parties have access to relevant discovery, and in vindicating the rights of American plaintiffs." *Fenerjian*, 2016 WL 245263, at \*5.

Third, the balancing of the national interests in favor of the United States is further supported by the fact that the Chinese government has issued no statement opposing Defendants' production of the requested documents in accordance with U.S. law. The Chinese government's silence warrants a finding that strong national interests of China are not at stake. *See, e.g.*, *United States v. Davis*, 767 F.2d 1025, 1035 (2d Cir. 1985) ("The absence of any objection by the Cayman government to the subpoena and subsequent order ... is significant."); *United States v. First Nat'l City Bank*, 396 F.2d 897, 904 (2d Cir. 1968) ("when foreign governments ... have considered their vital national interests threatened, they have not hesitated to make known their objections").

### 6.    Nature of the Hardship

The standard for Defendants to establish hardship that warrants comity is extremely high. Courts reject hardship even in cases where—unlike here—foreign government officials have submitted letters to the court, holding that mere threats of legal action are insufficient. *See, e.g.*, *Linde v. Arab Bank, PLC*, 706 F.3d 92, 114 (2d Cir. 2013) (affirming that "Arab Bank did not face

a substantial hardship" by producing discovery that "violated national bank secrecy laws," even though "government officials … submitted letters to the District Court declaring that Arab Bank would face legal action," holding there was no evidence of prosecutions in prior cases).

Here, Defendants offer no evidence whatsoever that any Chinese authority has used the PIPL to bring a legal action against anyone for producing discovery required in U.S. litigation, despite instances in which U.S. courts have ordered Chinese defendants to collect and produce discovery purportedly in violation of the PIPL.  *See Philips Medical Systems*, 2022 WL 602485, at *6 (ordering Chinese defendant to search its employees' personal cell phones for responsive documents, even though employees refused to provide consent under the PIPL).  And where "[d]efendants do not cite a single case or precedent in which someone was prosecuted by a Chinese court for complying with a foreign court order directing the production of documents … courts have given little weight to this factor and ordered disclosure of the information."  *Meggitt (Orange Cnty.), Inc. v. Yongzhong*, No. SACV130239DOCDFMX, 2014 WL 12967458, at *3 (C.D. Cal. Mar. 21, 2014); *see also Laydon*, 183 F. Supp. 3d at 425 (ordering production where "[d]efendants are unable to cite a single instance in which a UK enforcement action was taken against an entity for violating the DPA by complying with discovery demands in the United States").

### 7.    Good Faith of the Party Resisting Discovery

Finally, Defendants cannot show good faith in resisting discovery that would warrant upending the Federal Rules.[7]  At all times, Defendants' response to Plaintiffs' requests has been dilatory and obstructive.  Defendants never served objections based on the PIPL, and it was long after the deadline that Defendants even *mentioned* the PIPL as an excuse for noncompliance.

---

[7] Where, as here, other factors weigh against defendants, courts in this district have ignored this seventh factor.  *See, e.g.*, *Laydon*, 183 F. Supp. 3d at 427 ("declin[ing] to engage in a substantial analysis of this point given that analysis of the other factors already weighs against" the foreign statute).

Defendants have completely blown the substantial completion deadline for document production. They produced zero documents by the May 15 "substantial completion" deadline (ECF 91 at ¶14 (May 15 deadline)), making their first partial production of approximately 48,000 documents on May 16, then waiting to make a much larger production only yesterday, June 12, with more productions forthcoming such that they are still unable to certify substantial completion.

As noted above, Defendants have refused to cooperate or confer in any meaningful way about their PIPL objections.  They inexplicably refuse to share the PIPL consent requests sent to witnesses, the responses received, their communications that led to key witnesses providing "varying levels of consent" (ECF 107 at 4) to selectively producing only certain requested documents, their basis for asserting that certain unspecified documents are located in China, or their basis for asserting that certain witnesses are located in China.  And where Plaintiffs have obtained information, it has revealed that Defendants' factual representations are wrong, such as where Defendants were forced to admit that Elastos personnel who Defendants insisted resided in China actually live in the United States or elsewhere.

Finally, any finding of good faith is precluded by Defendants' illogical and self-contradicting interpretations of the PIPL.  This includes Defendants' refusal to produce documents that they concede are in Defendants' possession in the United States.  *See, e.g.*, *Wultz*, 910 F. Supp. 2d at 560 (good faith factor does not weigh in favor of Chinese defendant resisting discovery when it "failed to undertake a comprehensive review of even documents located in New York").  Moreover, Defendants overreaching interpretations of the PIPL to make nearly every Chinese business in violation of the law *ab initio* and deem Defendants themselves to have already committed violations of the PIPL further illustrates their lack of good faith.  *See, e.g.*, *Royal Park Invs. SA/NV*, 2017 WL 7512815, at *11 (lack of good faith where the party is resisting "on grounds

substantially undercut by its own inconsistent conduct as to overlapping documents within its own possession").

### III.    DEFENDANTS WAIVED THEIR OBJECTIONS BASED ON THE PIPL

The Court can also reject the Defendants' PIPL objection for the independent reason that they waived it by failing to assert it in response to Plaintiffs' documents requests.  Defendants' objections did not even mention Chinese law—let alone the PIPL—as grounds upon which they were refusing to produce requested documents.  (*See* Ex. 3.)  As such, because Defendants failed to "state with specificity the grounds for objecting to the request," and "whether responsive materials are being withheld on the basis of that objection," as required by Rule 34, they waived this objection to Plaintiffs' requests.  *See, e.g.*, *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-cv-6717 (NSR)(LMS), 2018 WL 4278351, at *1 (S.D.N.Y. Apr. 6, 2018) (defendant failed to "state whether any documents responsive to the request exist" and therefore defendant's objections "did not comply with the Federal Rules of Civil Procedure and were waived").

Recognizing this deficiency, Defendants served amended responses and objections on May 4, 2022.  Even if they were timely, their amended objections are still deficient because they only reference the PIPL once under "General Objections," stating that "Defendants object to each Request and instruction to the extent that each Request or instruction imposes obligations on Defendants that would require Defendants to violate Chinese law," following by a purported list of Chinese laws.  (Ex. 6 at Ds' Ex. A at Gen. Obj. No. 6.)  This is an invalid general objection that runs afoul of Rule 34's requirement that a party "state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection)."  *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) (failure to do so "will be deemed a waiver"); *Mohegan Lake Motors, Inc*, 2018 WL 4278351, at *1 ("general objections to document requests are no longer permitted by the Federal Rules of Civil Procedure").

24

Defendants' amended objections fail to provide notice as to which of the thirty Requests and which of the three Defendants is withholding documents based on the PIPL—if any. As such, Defendants' objection based on the PIPL is waived.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel, overrule Defendants' objections to producing discovery based on the PIPL, and order that Defendants must collect and produce all responsive documents in their possession, custody, or control, regardless of any individual's lack of "consent."

Dated:  June 13, 2022                                 Respectfully Submitted,


**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Benjamin F. Burry
George N. Bauer
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
bburry@bfalaw.com
gbauer@bfalaw.com

*Lead Counsel and Counsel for Lead Plaintiffs*


**RAITI, PLLC**
Warren Raiti
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Telephone: (212) 590-2328
wraiti@raitipllc.com

*Additional Counsel for Lead Plaintiffs*

25

**Appendix A**

| | Individual | Elastos Role / Position | Witness Location | Responsive Documents Defendants Are Wrongly Withholding Based On Their PIPL Objection |
|---|---|---|---|---|
| 1 | Rong Chen | Elastos Founder and Executive Chairman (Individual Defendant) | U.S. | Defendants list "N/A" with no answer as to whether Rong Chen has used "personal or other email accounts," "personal or other devices," or "social media" for Elastos, or whether he has "other sources or repositories of data" or "any hard copy documents or data" related to Elastos, and as to whether he consents to production of such documents to Plaintiffs. (Ex. 8 at Ds' Ex. F.) |
| 2 | Feng Han | Elastos Co-Founder and CEO (Individual Defendant) | Defendants assert China without evidence | While Defendants have not identified Feng Han as withholding document discovery (Ex. 8 at Ds' Ex. F), Defendants have not confirmed that they are withholding no documents associated with Feng Han based on the PIPL. |
| 3 | Ben Li (Ben Lee) | Elastos COO and Board member | Defendants assert China without evidence | Defendants admit that Ben Li has used "social media for Elastos" but refuses to "consent" to produce his documents from these accounts in this litigation. (Ex. 8 at Ds' Ex. F.) |
| 4 | Fay Li | Elastos Chief Marketing Officer (CMO) | U.S. | Defendants report they "have not been able to obtain consent from Fay Li" to produce any of her data. (Ex. 8 at 2.) Because she is based in Silicon Valley in the U.S., Defendants will only produce her custodial documents retrievable from "Google email and Google drive data." (*Id.*) Defendants refuse to account for or produce all other documents, including documents stored on the Tencent server, documents from her other email accounts, and documents from social media accounts used for Elastos. |
| 5 | Donnie Bullers | Elastos Marketer and Member | U.S. | Defendants list "N/A" with no answer as to whether Donnie Bullers has used "personal or other email accounts," "personal or other devices," or "social media" for Elastos, or whether he has "other sources or repositories of data" or "any hard copy documents or data" related to Elastos, and as to whether he consents to production of such documents to Plaintiffs. (Ex. 8 at Ds' Ex. F.) |
| 6 | Simon Cai | Elastos Digital Asset Specialist | Defendants assert China without evidence | Defendants admit that Simon Cai has used "personal or other email accounts" and "personal or other devices" for Elastos business but refuses to "consent" to produce his documents from these accounts in this litigation. (Ex. 8 at Ds' Ex. F.) |
| 7 | Hao Cheng | PR Director of Elastos | Defendants assert China without evidence | Defendants claim Hao Cheng refuses to consent to any production to Plaintiffs, even for his @elastos.org emails (Ex. 8 at Ds' Ex. F), and thus Defendants are withholding *all* of his custodial documents.<br><br>Defendants report "No" to whether Hao Cheng has used "personal or other email accounts" or "social media" for Elastos (*id.*), even though Defendants' production confirms he used other email accounts, like "chenghao@crherald.com," and social media, like We Chat, for Elastos business. |

| | | | | Defendants report "No" to whether Hao Cheng used "personal or other devices" for Elastos business (*id.*), even though personal devices were the sole means to conduct Elastos business (*see* Plfs' Brief at p.16 n.4). |
|---|---|---|---|---|
| 8 | Dinghe Hu | Elastos' Ecosystem Development Director | Defendants assert China without evidence | Defendants claim "we cannot contact" Dinghe Hu and thus "cannot collect, review, or produce" any of his data, including data on Elastos' servers in the U.S. (Ex. 6 at 2.) Thus Defendants are withholding ***all*** of his custodial documents. |
| 9 | Hongjie Hu | Elastos' Chief Secretary | Canada | Defendants report "No" to whether Hongjie Hu used "personal or other devices" for Elastos business (Ex. 8 at Ds' Ex. F), even though personal devices were the sole means to conduct Elastos business (*see* Plfs' Brief at p.16 n.4).<br><br>Defendants report "No" to whether Hongjie Hu has used "personal or other email accounts" for Elastos (Ex. 8 at Ds' Ex. F), even though Defendants' production confirms he used other email accounts for Elastos communications. |
| 10 | Leo Lei | Elastos Digital Asset Specialist | Australia | Defendants admit that Leo Lei has used "personal or other devices" and "social media" for Elastos business but refuses to "consent" to produce his documents from these accounts in this litigation. (Ex. 8 at Ds' Ex. F.) |
| 11 | Clarence Liu | Elastos VP of Development | U.S. | Defendants report they "have not been able to obtain consent from … Clarence Liu" to produce any of his data. (Ex. 8 at 2.) Because he is based in the U.S., Defendants will only produce his custodial documents retrievable from "Google email and Google drive data." (*Id.*) Defendants refuse to account for or produce all other documents, including documents stored on the Tencent server, documents from his other email accounts and social media used for Elastos. |
| 12 | Song Sjun | Elastos Sr. Technical Manager | Defendants assert China without evidence | Defendants report "No" to whether Song Sjun used "personal or other devices" for Elastos business (Ex. 8 at Ds' Ex. F), even though personal devices were the sole means to conduct Elastos business (*see* Plfs' Brief at p.16 n.4).<br><br>Defendants report "No" to whether Song Sjun has used "personal or other email accounts" for Elastos (Ex. 8 at Ds' Ex. F), even though Defendants' production confirms he used other email accounts, like songshijun@elaphant.app, for Elastos communications. |
| 13 | Yipeng Su | Elastos Board Member, Chief Engineer, Chief Architect | Defendants assert China without evidence | Defendants admit that Yipeng Su has used "personal or other devices," "social media," and "other sources or repositories of data" for Elastos business but refuses to "consent" to produce his documents from these accounts in this litigation. (Ex. 8 at Ds' Ex. F.) |

| 14 | Zach Warsavage | Elastos North American Strategist | U.S. | Defendants list "N/A" with no answer as to whether Zach Warsavage has used "personal or other email accounts," "personal or other devices," or "social media" for Elastos, or whether he has "other sources or repositories of data" or "any hard copy documents or data" related to Elastos, and as to whether he consents to production of such documents to Plaintiffs. (Ex. 8 at Ds' Ex. F.) |
|---|---|---|---|---|
| 15 | Nan Yu (Shunan Yu) | Elastos Sr. Technical Manager | Defendants assert China without evidence | Defendants report "No" to whether Nan Yu used "personal or other devices" for Elastos business (Ex. 8 at Ds' Ex. F), even though personal devices were the sole means to conduct Elastos business (*see* Plfs' Brief at p.16 n.4).<br><br>Defendants report "No" to whether Nan Yu has used "personal or other email accounts" or "social media" for Elastos (Ex. 8 at Ds' Ex. F), even though Defendants' production confirms Nan Yu used other email accounts, like yushunan@gelaxy.io, and social media, like the Twitter account @shunan_yu, for Elastos communications. |
| 16 | May Yuan | Finance | Defendants assert China without evidence | Defendants report "No" to whether May Yuan used "personal or other devices" for Elastos business (Ex. 8 at Ds' Ex. F), even though personal devices were the sole means to conduct Elastos business (*see* Plfs' Brief at p.16 n.4).<br><br>Defendants report "No" to whether May Yuan has used "personal or other email accounts" for Elastos (Ex. 8 at Ds' Ex. F), even though Defendants' production confirms May Yuan used other email accounts for Elastos communications. |
| 17 | Kevin Zhang | Elastos Head of Developers Community | U.S. | Defendants report they "have not been able to obtain consent from … Kevin Zhang" to produce any of his data. (Ex. 8 at 2.) Because he is based in the U.S., Defendants will only produce his custodial documents retrievable from 'Google email and Google drive data." Defendants refuse to account for or produce all other documents, including documents stored on the Tencent server, documents from his other email accounts and social media used for Elastos. |
| 18 | Li (Julie) Zhu | Elastos Digital Asset Specialist | Defendants assert China without evidence | Defendants admit that Julie Zhu has used "personal or other devices" for Elastos business but refuses to "consent" to produce her documents from these accounts in this litigation. (Ex. 8 at Ds' Ex. F.) |
| 19 | Rebecca Zhu (Feng Zhu) | Elastos Assistant Chief Engineer | Defendants assert China without evidence | Defendants report "No" to whether Rebecca Zhu used "personal or other devices" for Elastos business (Ex. 8 at Ds' Ex. F), even though personal devices were the sole means to conduct Elastos business (*see* Plfs' Brief at p.16 n.4).<br><br>Defendants report "No" to whether Rebecca Zhu has used "personal or other email accounts" for Elastos (Ex. 8 at Ds' Ex. F), even though Defendants' production confirms she used other email accounts, like zhufeng@elastos-fusion.org, for Elastos communications. |