# Exhibit 4



1(212) 318-6774
zacharyzwillinger@paulhastings.com

April 13, 2022

**VIA ELECTRONIC MAIL**

Javier Bleichmar
George N. Bauer
Benjamin Burry
Bleichmar Fonti & Auld LLP
7 Times Square
Twenty-Seventh Floor
New York, New York 10036

Warren Raiti
Raiti, PLLC
1345 Avenue of the Americas
Thirty-Third Floor
New York, New York 10105

Re:   *Owen, et al. v. Elastos Foundation, et al.*, Case No. 1:19-cv-05462-GHW (S.D.N.Y.)

Dear Counsel:

We write on behalf of the Elastos Foundation ("Elastos"), Rong Chen, and Feng Han (collectively "Defendants") to summarize and follow up on our March 11, March 16, and April 8, 2022 meet and confer sessions. During those discussions we shared the current status of Defendants' extensive document collection and review efforts. As we explained during those lengthy meet and confer sessions, the summary and follow up points below are based on our current understanding and position, which is subject to change, especially in light of the particularly difficult process of working diligently to collect documents from a small, foreign, non-profit, decentralized entity. Additionally, our proposals as to the scope of Defendants' production are made in good faith, are appropriate in light of this litigation, and are contingent on Plaintiffs producing proportionate materials from proportionate sources.

**Initial List of Custodians**

In a previous email, you proposed a list of twenty custodians from whom Defendants should make all reasonable efforts to collect documents. That list is overbroad, and beyond Feng Han, Rong Chen, Fay Li, and Ben Li, consists of individuals who are unlikely to possess relevant documents. Additionally, almost all of those custodians have no ongoing employment relationship with Elastos, and some never did. Nonetheless, in the interests of cooperation, we agree to treat all of the individuals on that list of twenty custodians as custodians for the purposes of this litigation, with one exception: Wilson Lee, who has never worked at or for Elastos, and for whom we could locate no Elastos data. While we initially agree to the treatment of the remaining nineteen individuals as custodians, we ask that you reduce that number, and reserve our right to seek cost-sharing pursuant to Federal Rule of Civil Procedure 26(b)(2)(C). For the same reasons, we do not anticipate any need to add any additional custodians to this list. As it stands, that list of custodians is as follows:

**PAUL HASTINGS**

Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 2

1. Feng Han
2. Rong Chen
3. Ben Li
4. Donnie Bullers
5. Simon Cai
6. Hao Cheng
7. Dinghe Hu
8. Hongjie Hu
9. Leo Lei
10. Fay Li
11. Clarence Liu
12. Song Sjun
13. Yipeng Su
14. Zach Warsavage
15. Nan Yu
16. May Yuan
17. Kevin Zhang
18. Julie Zhu
19. Rebecca Zhu

**Location of Custodians and Data**

Four of the custodians on the aforementioned list of custodians are located in the United States—Rong Chen, Donnie Bullers, Zach Warsavage, and Fay Li.  All other custodians on that list are, to Defendants' knowledge, located in China.

As to Elastos data—in other words, documents that are in the possession, custody, or control of Elastos itself—some of it is located in the United States, and some of it is located in China.  Prior to approximately April/May 2018, Elastos email accounts were hosted on the servers of the Chinese company Tencent, and thus, Elastos data from before that time is located in China.  After April/May 2018, Elastos email accounts, and all other related data, were hosted on Google, and thus, Elastos data from after that time is located in the United States.  We do not believe any Elastos data is located in Singapore or in any other countries other than the United States or China.

Additionally, there are no Elastos-issued devices (desktop computers, laptops, or mobile devices), and Elastos has no policies about the use of its data on personal devices.  Instead, custodians used their personal devices for both Elastos and non-Elastos communications and information.

U.S. District Courts have held that personal device data of even current employees is not in the possession, custody, or control of a corporate employer.  *See, e.g., Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974 at *6 (D. Kan. July 24, 2013).  ("[The defendant corporate entity] does not likely have within its possession, custody, or control text messages sent or received by these individuals on their personal cell phones.").  Additionally, "even in those cases where the court has found that an employer has 'control' over an employee's personal device, courts have only required the employer to ask the employee to search and produce the responsive information."  *In re Skanska USA Civil Southeast, Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 953239 at *4 (N.D. Fla. Aug. 5, 2021).  There are similar limitations in what can be collected from individuals who are not currently employees; as you



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 3

have noted yourself, under similar circumstances corporations are to "ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession." *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005).  As described below, Elastos has more than met these standards as to these non-employee custodians from whom it is collecting documents.

We note as well that to date you have refused to produce similar information that Defendants have requested; namely, you have refused to produce information responsive to Defendants' Request No. 16, "Document sufficient to identify Any social media platforms or internet forums in which You have participated or to which You have contributed."

### Impact of China Law on Document Collection

As an initial matter, we are perplexed by your statement that "it was troubling to hear for the first time on our March 11 call that [Defendants] are unable to produce the bulk of [Defendants'] responsive documents because of Chinese legal restrictions" (March 15, 2022 email from Benjamin Burry), and by your repeated assertions that there are no challenges in obtaining discovery from witnesses in China, because Plaintiffs stated in the parties' Joint Pretrial Letter to the Court that "[t]here are [] likely to be potential difficulties and delays in obtaining discovery from witnesses located in China and elsewhere." Dkt. 89 at 3.  Indeed, this is the primary reason that the parties informed the Court that the parties anticipate that they will require a full year to complete fact discovery.  The parties also discussed the difficulties of obtaining discovery in China with the Court at the December 22, 2021 telephonic pretrial conference.

To that end, Defendants objected, in their General Objections to your Document Requests, "to each Request to the extent that each Request seeks information or documents not within the possession, custody or control of Defendants or purports to impose upon Defendants a duty to produce information or document from individuals or entities that are not under Defendants' possession, custody, or control," as well as a "to each Request and instruction to the extent that each Request or instruction imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure."  Additionally, Defendants expressly preserved all objections on other grounds, and noted they would "make a good faith effort to interpret and respond to Plaintiffs' Requests, but should in no way lead to the prejudice of Defendants in relation to further discovery, research, and analysis."  Further, Defendants objected, in their Specific Objections and Responses, to multiple Requests to the extent they called for production of documents that are not in the possession, custody, or control of Defendants, and agreed, in all of their Responses, only to production of documents in their possession, custody, or control. It is now clear that your requests, though it was unknown at the time, do in fact implicate all of these objections, given your surprising unwillingness to credit the good faith efforts Defendants have taken, and ensuing difficulties they have faced, in obtaining documents from China.

Per your request, we have summarized the relevant aspects of China law that apply to the collection, review, and production of documents in this case, as we currently understand them.  If you believe that our understanding of China law is incorrect, please let us know as soon as possible and provide us with legal citations to support your position.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 4


1. Consent Requirement

The PRC Personal Information Protection Law (PIPL), which is effective as of November 1, 2021, provides in Article 13 that personal information about an individual cannot be collected without first obtaining that individual's consent.  Moreover, express written consent is required for providing personal information to any third parties (Article 23), processing sensitive personal information (Article 39), or transferring personal information outside of China (Article 39).

Per Article 3 of the PIPL, this consent requirement applies to processing of personal information that occurs both (i) in the territory of China itself, and (ii) outside the territory of China if the personal information is being used for specified purposes, one of which is to "analyze or evaluate behaviors of natural persons in China."  In other words, this consent requirement would also apply to data based in the U.S., if that U.S.-based data was being used to analyze the behavior of natural persons in China.

Violations of the PIPL, as described in Article 66 and 67, can result in harsh legal and financial penalties, including revocation of business licenses, a fine of up to 8 million USD or 5% of business revenues for entities, and a fine of up 150,000 USD for individuals.

2. State Secrets Review

Before any data can leave China, it must undergo a more established procedure known as state secrets review.  This review is conducted in accordance with the Interpretation of the Supreme People's Court on Several Issues Concerning the Application of Law for Trial of Cases of Stealing, Buying, or Unlawfully Supplying State Secrets or Intelligence for Entities outside of the Territory of China, which provides that "[w]hoever steals, spies into, buys or unlawfully supplies state secrets or intelligence for entities outside the Territory of China," can, under certain circumstances, be given a lengthy prison term or even, in especially serious cases, a death sentence.

There is not a clear definition of what constitutes a state secret under this rule; it includes, for example, the very broad categories of "national economic and social development," and "science and technology."  Given this lack of clarity, the established procedure is to hire a PRC law firm to conduct a state secrets review and provide an opinion typically noting that the data does not implicate secrecy concerns.  We have engaged a PRC law firm to perform this review.

As we noted during our discussion, this state secrets review process would apply only to data located in China, unlike the consent requirement noted above.  We will let you know if we believe this review process will inhibit our ability to produce responsive documents.

3. Limitations on Data Export out of China

Finally, there are limitations on the export of data out of China in general, without prior approval of the "competent authority" of the PRC.  This applies to both personal information, under Article 41 of the PIPL (the personal information law noted previously), and to, seemingly, all data in general, under Article 36 of the PRC Data Security Law, effective September 1, 2021.  As both these laws were enacted in only 2021, there are no enforcement cases that provide any indication as to how these laws work in practice, or any indication as to who the "competent authority," from whom permission to transfer data out of China would need to be obtained, actually is.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 5

Nonetheless, provided the PRC law firm we've engaged ultimately signs off on our production, we do not believe these laws will provide any further restriction on our ability to produce documents in this case; they also only apply to data located in China.

In addition to the potential penalties for violation of the PIPL noted above, violations of the PRC Data Security Law can, as described in Article 48, result in harsh legal or financial penalties, including revocation of business licenses and fines of up to 800,000 USD for entities and 80,000 USD for individuals.

Given these three requirements, there are essentially three buckets of documents:

1. For all data in China—regardless of whether it is for U.S.-based custodians or China-based custodians—we are required to 1) get prior written consent from each custodian; 2) perform a state secrets review; and 3) follow whatever process the PRC law firm deems appropriate for the new data transfer laws.

2. For data for U.S.-based custodians that is located in the U.S., none of the above requirements apply; we will be collecting and producing this data accordingly.

3. For data for China-based custodians that is located in the U.S., the consent requirement nonetheless applies.

Because Elastos, Mr. Han, the Shanghai office of Paul Hastings, our PRC-based law firm, and our eDiscovery vendor are all located in China, we cannot violate China law without risking incurring significant financial and legal liability.  As a result, we cannot collect, review, or produce documents except as permitted by China law.  As demonstrated below, Defendants have undertaken an extensive, good faith effort to collect responsive, relevant documents for this litigation and at the same time comply with China law.  In light of the substantial document collection that Plaintiffs will already receive, there is no reason why Defendants should be forced to violate China law, nor can they.

Indeed, U.S. courts have refused to require production under similar circumstances.  In considering whether a party must comply with certain discovery requests, district courts will analyze foreign data privacy laws or other foreign restrictions on production or international transfer implicated by those requests.  Based on principles of comity, courts have found that production of documents is not warranted where such production would require the responding party to violate foreign laws.  *See, e.g., Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10 CIV. 9471 WHP, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) (holding production not required where production would have violated various Chinese laws); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 529 (S.D.N.Y. 1987) (denying motion to compel where production would have violated Swiss banking secrecy laws); *Campbell v. Facebook Inc.*, No. 13CV05996PJHMEJ, 2015 WL 4463809, at *5 (N.D. Cal. July 21, 2015) (denying motion to compel where production would have violated Irish data protection law); *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N-BG, 2015 WL 13031698, at *5 (N.D. Tex. Dec. 9, 2015) (denying motion to compel where production would have required violation of Swiss data and banking secrecy laws).  This is particularly true where the documents in question originated outside of the United States.  *Tiffany (NJ) LLC*, 276 F.R.D. at 152.  Courts are similarly mindful of instances where a responding party would face "potentially harsh sanctions" in the form of civil or criminal penalties if forced to produce documents in violation of foreign law.  *Id.* at 158–59.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 6

**Current Status of Consent Process**

In light of the above, we provide the following update on the status of each custodian's U.S.-based and China-based Elastos data.

In consultation with China counsel, we prepared a written consent form, which asks each of the custodians what categories of data exist that related to Elastos generally, and whether they consent to the collection, review, and production of their documents in this action.

Of the nineteen custodians listed above, we have been able to locate contact information and send consent requests to all custodians except Dinghe Hu and Kevin Zhang, both of whom are no longer involved in Elastos-related activities and have proven inaccessible to Defendants. We are continuing to investigate whether we are able to locate contact information for those two custodians; for example, we have asked one of our existing custodians to reach out to Mr. Zhang via social media to see if he will provide his contact information to us. Of the seventeen custodians that we have been able to send consent requests to, we have received responses from all except Clarence Liu and Fay Li, who we are continuing to diligently pursue in the hopes of receiving such a response.

Among the fifteen custodians that have responded to our consent requests, all custodians that have responded except one (Hao Cheng) have consented to the collection of any documents that are on Elastos servers (whether in China or the U.S.). Of the custodians in China, Feng Han, Ben Li, and May Yuan have agreed to allow us to collect Elastos-related data on their personal devices, accounts, or other sources beyond what is contained on Elastos Servers. In addition, of the four custodians in the U.S., Rong Chen, Zach Warsavage, and Donnie Bullers have agreed to allow us to collect Elastos-related data from their personal devices, accounts, and other sources. We are working with our eDiscovery data to ensure that for all custodians that have agreed to provide us with access to their Elastos data, we are collecting as much as we are able, regardless of whether it exists on a personal device or on a personal account.

To be clear, the fact that Elastos has agreed to collect or produce documents from these individuals does not imply that Elastos believes that all of these documents are in its possession, custody, or control, nor does it imply that any of these documents are relevant to the issues in this case. As we discussed during our meet and confer calls, this case is not a traditional securities class action, where internal communications are generally relevant to the elements of plaintiffs' claims. Instead, the key questions in this case revolve around whether ELA tokens were marketed and sold as unregistered securities, which is an issue that is not likely to be resolved by review of internal correspondence.

**"Official" Elastos Social Media Accounts**

As to "official" Elastos social media accounts, such as Twitter, Facebook, YouTube, Instagram, etc., our understanding is that the Elastos decentralized community has control over these accounts, and that none of the custodians proposed above, nor any other individual linked to Elastos, has access to or control over these accounts. As such, Defendants cannot provide documents from these accounts, nor is it their responsibility, as these documents are not in their possession, custody, or control. Moreover, all communications from such social media accounts are publicly available and can be accessed directly by Plaintiffs, as is demonstrated in the allegations set forth in the Amended Complaint.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 7

### Search Terms

As we indicated during the meet and confer sessions, Defendants are willing to negotiate regarding search terms. Attached as Exhibits A and B to this letter are search term hit reports containing the results of our initial proposed search terms, run against the documents that have already been collected and processed by our vendor. Each hit report corresponds to data that is in the U.S. (Ex. A) and data that is in China (Ex. B). The reports also indicate what documents and custodians have been collected and processed to yield these reports. These reports have been run only against data collected from Elastos servers (*i.e.*, Tencent and Google), i.e., the only data that we have been able to process so far. When we are able to process data from other sources (*e.g.*, personal devices, personal accounts, etc.), we will likely need to refine and revise the search terms for those sources, as appropriate.

Please send us any additional search terms that you believe we should run across the processed data. Once we receive your proposed search terms, we will run them against the data that has been processed at that time, and will return hit reports for further negotiation.

### Responsiveness Review

For each document that hits on a search term, we will review the entire document family for responsiveness and applicable privileges. At this time, we will be taking a broad approach to our responsiveness review. That is, if a document hits on a search term and is relevant to Elastos, ELA Tokens, or any other relevant aspect of this case, we will produce it unless it is protected by the attorney-client, work product, or other applicable privilege. Thus we are not standing on the objections raised in our written responses and objections, except as to privilege, attorney work product, and other similar protections. Moreover, we will not produce documents that are wholly irrelevant or unrelated to this matter (*i.e.*, false hits). If during the course of the review we believe we need to take a different approach, we will let you know.

### Relevant Date Range

We believe that the parties should produce documents starting at November 1, 2017 forward. This is consistent with the allegations set forth in the Amended Complaint, which alleges that Defendants "began to actively promote the Elastos technology in the United States" [i]n November 2017. AC ¶ 25; *see also id*. ¶ 26 ("[I]n November 2017, Elastos first established a prominent presence in San Francisco, California and shifted its promotional efforts from Chinese based social media."); *id*. ¶ 27 ("Elastos's official Facebook account began promoting Elastos at least as early as November 17, 2017 and its official Twitter account, @Elastos_org, began promoting Elastos at least as early as November 29, 2017. Defendant Han began promoting Elastos's efforts in the United States on Twitter at least as early as November 28, 2017 and CMO Li began promoting Elastos on Twitter at least as early as December 8, 2017.").

Documents from prior to November 2017, which would relate to contemplated sales in China or elsewhere outside the U.S., are not relevant to this U.S. federal securities class action. Plaintiffs have requested all documents from January 1, 2016 to present. However, you have not articulated any basis for expanding discovery over one year prior to the alleged events that took place in this action. To the extent that you hypothesize that there may be documents that bear on the actual issues in this litigation in



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 8

documents prior to November 2017, you have not articulated any reasoning for such an increase in light of the extensive discovery you will already be receiving from Defendants.

**Production of Additional Documents**

As we noted previously, we will be producing certain U.S.-based loose files; namely, the Elastos White Paper, dated January 1, 2018, and the full set of Elastos Weekly Updates and Elastos Financial Reports publicly available online.

**Current Understanding of Document Requests with No Responsive Documents**

Based on a diligent and reasonable search, we do not believe that responsive, non-privileged documents concerning the below document requests exist.  We will let you know if we learn of such documents.

- Document Request No. 3: Documents concerning "interactions with regulatory authorities" do not exist.
- Document Request No. 5: Traditional offering materials, such as prospectuses, do not exist.
- Document Request No. 16: Tax analyses regarding ELA tokens do not exist.
- Document Request No. 18: Document and ESI retention and destruction policies do not exist.
- Document Request No. 21: Organizational charts and other similar documents do not exist.
- Document Request No. 23: Documents related to document retention and preservation efforts are necessarily privileged; Defendants refuse to produce them on that basis.
- Document Request No. 24: Device and app usage policies and procedures and/or "bring your own device"/"bring your own technology" policies do not exist.
- Document Request No. 27: As previously stated, Elastos does not have any such insurance policies.

**Cyber Republic**

Documents held by the Cyber Republic are not in the possession, custody, or control of Defendants.  The Cyber Republic is a separate legal entity from Elastos.  The Cyber Republic website, whitepaper, and Elastos Essentials application detail what the Cyber Republic is and how it works.  *See* https://www.cyberrepublic.org; https://www.cyberrepublic.org/whitepaper; https://apps.apple.com/us/app/elastos-essentials/id1568931743.  The Cyber Republic website, whitepaper and app detail the process by which ELA holders vote to elect Cyber Republic Council Members who can raise, recommend, and vote on community proposals. The Cyber Republic Council consists of 12 Council Members at this time, and is a decentralized entity whose collective decision making is facilitated by the blockchain.  Any document or other requests regarding the Cyber Republic should be directed to it, not Defendants.

**Plaintiffs' Production of Documents**

We must also discuss the fact that to date, we have spent 4.5 hours discussing Plaintiffs' requests, but only around 15 minutes discussing Defendants' requests.  We served our requests on February 1; you served your responses and objections on March 3.  We first asked to discuss our requests on March 15, and you responded only saying that we should set up a separate time to discuss your requests.  We reaffirmed that we wanted to discuss our requests in our March 16 discussion, and you indicated that you



Bleichmar Fonti & Auld LLP
Raiti, PLLC
April 13, 2022
Page 9

would have a smaller volume of documents and would have fewer issues producing them.  When we once again reaffirmed that request on March 30, you responded only to ask us to be "more specific about what substantive questions you have and what substantive information in particular you are looking for with respect to your discovery requests," despite your receipt of our requests.   We asked again on April 4 that you be ready to discuss Defendants' requests as well as Plaintiffs' requests in our discussion April 8.  On April 8, you initially committed only to producing transaction records involving both of the named plaintiffs before noting you might have some emails and some other documents.  Despite, as you yourself have noted, having a significantly less burdensome collection at hand from your clients, we have had very little insight into your own collection, review, and production plans.  To the extent you are asserting your clients had communications or saved other documents about Elastos and/or ELA, but that these documents are not relevant and do not need to be collected and produced, we strongly disagree with that assertion.

 Please confirm that you are available to discuss Defendants' requests to Plaintiffs on Monday, April 18 at 11:30 am ET.  We will expect Plaintiffs to be fully prepared to discuss all aspects of Defendants' requests, as well as to discuss the collection and review efforts that Plaintiffs have conducted to date.

Sincerely,


/s/ Zachary Zwillinger

Zachary Zwillinger
for PAUL HASTINGS LLP


cc:     Ken Herzinger
        Carl Hudson
        Erin Zatlin

# **EXHIBIT A**

| Search Set | | Elastos Data |
|---|---|---|
| Date Run | | 13-Apr-22 |
| Custodians | | See Custodian List |
| Total Documents | | 164,824 |
| Total Records Searched (from 2017.11.01) | | 157,239 |
| Hits | | 69,669 |
| Hits Percentage of Total | | 44.3% |
| Documents in Families | | 90,285 |
| Family Percentage of Total | | 57.4% |

| Custodian List | Hits + Family |
|---|---|
| Lee, Ben | 28,068 |
| Lei, Leo | 24,564 |
| Chen, Rong | 9,526 |
| Warsavage, Zach | 6,987 |
| Su, Yipeng | 5,764 |
| Feng, Han | 5,635 |
| Hu, Hongjie | 3,828 |
| Yuan, May | 3,496 |
| Cai, Simon | 1,880 |
| Zhu, Julie | 460 |
| Li, Fay | 77 |

**Search Result Notes:**

Hits are number of documents hitting the keyword / key phrase
Families include the family members to the keyword hit document i.e. emails plus all attachments
Hits greater than 1,000 are highlighted in red

| | Total Records: | 69,669 | 90,285 | | |
|---|---|---|---|---|---|
| Search Count | Search Terms | Hits | Families | Unique Hits | Comments |
| Search 001 | initial coin offering OR 首次代币发行 | 212 | 722 | 1 | |
| Search 002 | ICO | 2,257 | 4,622 | 454 | |
| Search 003 | lock in OR lockin OR 锁定 OR 禁售 | 5,042 | 8,476 | 855 | |
| Search 004 | secondary market OR 二级市场 | 509 | 1,234 | 21 | |
| Search 005 | white paper OR whitepaper OR white W/3 paper OR 白皮书 | 562 | 1,425 | 39 | |
| Search 006 | Mark W/3 owen OR (马克 OR 马可) W/3 欧文 | 363 | 528 | 35 | |
| Search 007 | Wandling OR 旺德林 OR 王德林 OR 汪德林 | 156 | 585 | 12 | |
| Search 008 | Cyberrepublic OR cyber republic OR (cyber W/3 republic) OR CR OR 网络共和国 | 15,643 | 26,646 | 6,407 | |
| Search 009 | Decentraliz* OR 去中心化 | 5,478 | 9,868 | 356 | |
| Search 010 | DAO OR 去中心自治组织 OR 分布式自治组织 | 1,792 | 3,162 | 69 | |
| Search 011 | Ecosystem* OR 生态系统 | 4,970 | 7,577 | 209 | |
| Search 012 | Dapp* | 3,329 | 6,632 | 226 | |
| Search 013 | App* OR 应用程序 | 34,107 | 50,855 | 16,122 | |
| Search 014 | Communi* OR 社区 OR 团体 | 25,350 | 40,488 | 7,459 | |
| Search 015 | Council* OR 委员会 OR 理事会 OR 顾问 | 11,115 | 20,019 | 3,803 | |
| Search 016 | Vot* OR 投票 OR 表决 OR 选举 | 9,974 | 17,788 | 3,626 | |
| Search 017 | KYC or "Know your customer" OR 实名 OR 身份认证 OR 了解你的客户 | 1,937 | 4,129 | 417 | |
| Search 018 | Socure | 48 | 433 | 11 | |

# **EXHIBIT B**

| Search Set | Elastos Data |
|---|---|
| Date Run | 13-Apr-22 |
| Custodians | See Custodian List |
| Total Documents | 33,322 |
| Total Records Searched (from 2017.11.01) | 27,583 |
| Hits | 10,340 |
| Hits Percentage of Total | 37.5% |
| Documents in Families | 15,453 |
| Family Percentage of Total | 56.0% |

| Custodian List | Hits + Family |
|---|---|
| Li, Ben | 4,806 |
| SONG, Sjun | 3,479 |
| YU, Nan | 2,299 |
| LEI, Leo | 1,562 |
| HAN, Sunny | 1,384 |
| CHEN, Rong | 841 |
| HU, Hongjie | 580 |
| YUAN, May | 276 |
| SU, Yipeng | 178 |
| ZHU, Rebecca | 34 |
| CAI, Simon | 14 |
| ZHU, Julie | - |

**Search Result Notes:**

Hits are number of documents hitting the keyword / key phrase
Families include the family members to the keyword hit document i.e. emails plus all attachments
Hits greater than 1,000 are highlighted in red

| | | Total Records: | 10,340 | 15,453 | | |
|---|---|---|---|---|---|---|
| Search Count | Search Terms | | Hits | Families | Unique Hits | Comments |
| Search 001 | initial coin offering OR 首次代币发行 | | 10 | 16 | | |
| Search 002 | ICO | | 800 | 3,543 | 332 | |
| Search 003 | lock in OR lockin OR 锁定 OR 禁售 | | 222 | 463 | 94 | |
| Search 004 | secondary market OR 二级市场 | | 28 | 74 | 9 | |
| Search 005 | white paper OR whitepaper OR white W/3 paper OR 白皮书 | | 114 | 205 | 37 | |
| Search 006 | Mark W/3 owen OR (马克 OR 马可) W/3 欧文) | | | | | |
| Search 007 | Wandling OR 旺德林 OR 王德林 OR 汪德林 | | 19 | 67 | 1 | |
| Search 008 | Cyberrepublic OR cyber republic OR (cyber W/3 republic) OR CR OR 网络共和国 | | 92 | 4,200 | 17 | |
| Search 009 | Decentraliz* OR 去中心化 | | 415 | 1,384 | 23 | |
| Search 010 | DAO OR 去中心自治组织 OR 分布式自治组织 | | 72 | 2,435 | 21 | |
| Search 011 | Ecosystem* OR 生态系统 | | 210 | 781 | 22 | |
| Search 012 | Dapp* | | 204 | 892 | 26 | |
| Search 013 | App* OR 应用程序 | | 7,191 | 11,821 | 5,366 | |
| Search 014 | Communi* OR 社区 OR 团体 | | 2,677 | 8,468 | 910 | |
| Search 015 | Council* OR 委员会 OR 理事会 OR 顾问 | | 1,353 | 4,487 | 729 | |
| Search 016 | Vot* OR 投票 OR 表决 OR 选举 | | 351 | 3,077 | 88 | |
| Search 017 | KYC or "Know your customer" OR 实名 OR 身份认证 OR 了解你的客户 | | 378 | 791 | 120 | |
| Search 018 | Socure | | 7 | 129 | - | |