# Exhibit 5



Benjamin F. Burry
212 789 1345 direct
212 789 3960 fax
bburry@bfalaw.com

April 27, 2022

**VIA ELECTRONIC MAIL**

Zachary Zwillinger
Paul Hastings LLP
200 Park Avenue
New York, New York  10106
zacharyzwillinger@paulhastings.com

Re:     *Owen, et al. v. Elastos Foundation, et al.*, Case No. 1:19-cv-05462-GHW (S.D.N.Y.)
        Defendants' Document Production

Dear Zach:

    We write on behalf of Lead Plaintiffs,[1] in furtherance to our March 15, March 18, March 25, April 1, and April 11 emails regarding Plaintiffs' Document Requests,[2] in connection with the parties' March 11, March 16, and April 8 meet and confer calls, and in response to your April 13 letter.

### A. Defendants' Initial Custodian List

    Lead Plaintiffs appreciate your confirmation in your April 13 letter that you will treat the following nineteen of twenty individuals identified by Defendants in your initial disclosures as custodians for the purposes of this litigation:[3]

    1. Feng Han
    2. Rong Chen

---

[1] Capitalized terms not defined herein have the meanings specified in the Complaint (ECF 68).

[2] For reference, the March 15, March 18, March 25, and April 1 emails are attached as Exhibit A, and the April 11 email is attached as Exhibit B.

[3] Lead Plaintiffs reserve their rights with respect to other potential custodians.  Defendants have yet to produce any of the requested discovery, or even basic information about Elastos, which is essential to determine whether additional custodians should be added.  Similarly, while in your letter you note the possibility of "reduc[ing]" discovery from some of the initial nineteen custodians (Apr. 13 Ltr. at 1), this is an issue that can only be considered (if at all) following Defendants' production of confirmatory discovery to Lead Plaintiffs.



Zachary Zwillinger
April 27, 2022
Page 2

    3. Ben Li
    4. Donnie Bullers
    5. Simon Cai
    6. Hao Cheng
    7. Dinghe Hu
    8. Hongjie Hu
    9. Leo Lei
    10. Fay Li
    11. Clarence Liu
    12. Song Sjun
    13. Yipeng Su
    14. Zach Warsavage
    15. Nan Yu
    16. May Yuan
    17. Kevin Zhang
    18. Julie Zhu
    19. Rebecca Zhu

With respect to the twentieth individual—Wilson Lee—you state that he "has never worked at or for Elastos" and that "we could locate no Elastos data." (Apr. 13 Ltr. at 1.) Please explain this statement in light of the fact that, in his LinkedIn profile, "Lee Willson" lists himself as "Strategic Advisor" for Elastos from August 2017 to present:



Further, you do not dispute that Wilson Lee possesses relevant information concerning this action. Indeed, in your initial disclosures, you identified "Wilson Lee" as someone "likely to have discoverable information that Defendants may use to support their defenses." (Defs' Initial Discl. at 4.) Please promptly identify the relationship between Wilson Lee (and/or Lee Willson) and Defendants, and what information this custodian may have concerning Defendants' defenses or this action. Further, in the event you are refusing to ask Wilson Lee (and/or Lee Willson) to cooperate in providing documents relevant to this action, please explain your basis for doing so.



Zachary Zwillinger
April 27, 2022
Page 3

### B. Defendants' Possession, Custody, or Control Over Initial Custodian Documents

In your April 13 Letter, you state that "some" of the initial custodians "never" had any "employment relationship with Elastos." (Apr. 13 Ltr. at 1.) However, during our April 8 meet and confer, we understood you to represent that:

1. With the sole exception of Wilson Lee, all twenty custodians "have had or currently have some sort of economic relationship with Defendant Elastos";

2. Except for four (Wilson Lee, Dinghe Hu, Clarence Liu, and Kevin Zhang), all twenty custodians still have an ongoing economic relationship with Defendant Elastos; and

3. None of the twenty custodians have ever had any separate economic relationship with either of the two individual defendants (Rong Chen and Feng Han).

To the extent the above representations from the April 8 meet and confer are not accurate, please let us know right away. Further, please clarify the distinction you are making between "employment" and "economic" relationships, including (i) what "economic" relationships these custodians have with Elastos apart from employment and (ii) which custodians specifically had an employment relationship with Elastos and during what time periods. Please also clarify your basis for asserting that the Defendants do not have possession, custody, or control of documents and information from custodians with whom Elastos has an "employment relationship" and/or an "economic relationship."

### 1. Personal Accounts And Devices Are Within Defendants' Possession, Custody, or Control

#### a. Current Elastos Personnel

The personal accounts (including email), laptops, cell phones, and other electronic devices for any individuals with whom Defendants have any continuing economic relationship are within the possession, custody, or control of Defendants. In fact, as you have explained it, these devices were the *only* devices these custodians used for conducting Elastos business. Therefore, they must be produced. Lead Plaintiffs made this clear during the parties' March 16 meet and confer and in our March 18 summary of that call. (*See* Ex. A at 4.)

In your April 13 Letter, you now announce that Defendants have a contrary view, claiming that "U.S. District Courts have held that personal device data of even current employees is not in the possession, custody, or control of a corporate employer." (Apr. 13 Ltr. at 2.) But the two decisions you cite from out-of-circuit jurisdictions do not support that proposition. In fact, in the Florida decision you cite, the employer "agreed to download, search, and produce relevant text messages" from its employee's personal cell phone, and the Court held that it was required to do so. *Matter of Skanska USA Civ. Se. Inc.*, No. 3:20-CV-05980-



Zachary Zwillinger
April 27, 2022
Page 4

LC/HTC, 2021 WL 4953239, at *4 (N.D. Fla. Aug. 5, 2021) ("Regardless of whether responsive information is on [the employee's] personal cell phone, *[its employer] has an obligation to produce the information*.")  What is more, that Court rejected the exact argument Defendants make here—that Elastos can "avoid producing business documents by simply maintaining anything potentially discoverable in [Elastos] employee's personal [] account[s]"—holding that "[s]uch evasive measures" by employers "would cut against the purpose of the federal civil rules that allow for broad discovery."  *Id.* at 3.

The Kansas decision that you cite (Apr. 13 Ltr. at 2) does not apply the Second Circuit standard for possession, custody, or control, and in any event simply holds that it is "likely" employee personal cell phone are outside the employer's possession, custody, or control, in a situation where it is undisputed that the employees *never* "used the cell phones for any work-related purpose." *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974 at *6 (D. Kan. July 24, 2013).  Here, by contrast, it is undisputed that Elastos personnel *did* use their personal cell phones and other devices for Elastos-related purposes.  (*See* Apr. 13 Ltr. at 2 ("custodians used their personal devices for both Elastos and non-Elastos communications and information").)  In fact, Elastos custodians' personal cell phones and devices are the *only* cell phones and devices that they used for Elastos communications because, as you represented during the April 8 meet and confer, Elastos never issued any laptops, phones, or other electronic devices to anyone.

As noted above, you confirmed that sixteen custodians currently have an ongoing "economic relationship" with Elastos.[4]  The documents of these sixteen individuals concerning their Elastos work are within Elastos' possession, custody, or control.  *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2016 WL 5408171, at *6 (S.D.N.Y. Sept. 27, 2016) (an entity has "control" over, among others, officers, employees, and those with whom they have a "continuing economic relationship," and therefore must produce documents in those non-parties' possession).  Please immediately withdraw your objection that you lack possession, custody, or control of these individuals' documents, including cell phones and other electronic devices that they have used for Elastos-related work or communications and confirm that you are withholding no documents on the basis of any such objection.  Further, for each of these sixteen individuals, please identify, specifically, what relationships they had with Elastos, including the time periods of such relationships, and confirm that you will produce all documentation concerning such relationships.  If this issue is not immediately resolved, we will have no choice but to raise it with the Court.

---

[4] They are Feng Han, Rong Chen, Ben Li, Donnie Bullers, Simon Cai, Hao Cheng, Hongjie Hu, Leo Lei, Fay Li, Song Sjun, Yipeng Su, Zach Warsavage, Nan Yu, May Yuan, Julie Zhu, and Rebecca Zhu.  Moreover, given that, as noted above, Wilson Lee (or Lee Willson) currently has an ongoing economic relationship with Elastos as its "Strategic Advisor," he should be added to the list as well.



Zachary Zwillinger
April 27, 2022
Page 5

### b. Former Elastos Personnel

With respect to the remaining three initial custodians who you claim had—but no longer have—an economic relationship with Elastos (Dinghe Hu, Clarence Liu, and Kevin Zhang), you must, as you concede in your letter, "at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession." *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005). (Apr. 13 Ltr. at 3.)  Moreover, as the *Export-Import Bank* Court held, you "must exhaust the practical means at its disposal to obtain the documents from [the former employee]."  233 F.R.D. at 342.

While Lead Plaintiffs continue to believe that these documents are within Defendants' possession, custody, or control, we are willing to attempt to continue to meet and confer with you with respect to these individuals in an attempt to reach a resolution.[5]  As such, Defendants must promptly provide further explanation.  Please state the measures you used to seek the cooperation of Dinghe Hu, Clarence Liu, and Kevin Zhang with respect to Plaintiffs' Document Requests and provide copies of all communications in this regard.  Further, for each of these three individuals, please identify, specifically, what relationships they had with Elastos, including the time periods of such relationships, and confirm that you will promptly produce all documentation concerning such relationships.

### C. Location And Sources Of Documents

Devices:  We have repeatedly asked you to identify the laptops, cell phones, and other electronic devices for each Elastos personnel and possible custodian.  You have been unable to do so, which adds to the growing concerns about whether you have complied with your preservation obligations.  Please provide this information immediately.

Account Names and Addresses:  You have refused to provide the email addresses for Elastos custodians at @elastos.org as well as other email and electronic addresses they have used for communications concerning Elastos or otherwise related to this action (*e.g.*, email addresses as well as addresses for communications and content through media, services, or platforms like Google, Facebook, WeChat, Sina Weibo, Twitter, Reddit, Discord, Telegram, Slack, Snapchat, YouTube, and Instagram).  (*See* Ex. A at 4 (Mar. 18 email recounting that "you are unable to identify" such sources); Ex. A at 2 (Mar. 25 email reiterating Lead Plaintiffs' requests for email and other account addresses); Ex. A at 1 (Apr. 1 email following up on

---

[5] In addition, Lead Plaintiffs are relying on your representation that your objection here is academic in that you confirmed that you are not withholding any documents pursuant to an objection that you lack possession, custody, or control with respect to these three individuals' documents.  Specifically, during our March 11 and 16 meet and confers, "[y]ou agreed to inform us in the event that you withhold documents based on any objection to Plaintiffs' definition of 'possession, custody, or control,' so that we can promptly meet and confer and attempt to reach a resolution of this issue."  (Ex. A at 4 (Mar. 18 email).)



Zachary Zwillinger
April 27, 2022
Page 6

requests); Ex. B at 1 (Apr. 11 email asking you to "provide any support for your refusal to provide any of the account addresses that the individuals identified in your initial disclosures used for email and other electronic communications").).[6]  Please provide this information immediately.

In addition, you continue to assert that "all communications from such social media accounts are publicly available and can be accessed directly by Plaintiffs" (Apr. 13 Ltr. at 6), even though you conceded on earlier meet and confers that it is patently false.  So-called "social media accounts" like Twitter, Facebook, Instagram, and have functions, like direct messages, for private communications that are not accessible to Lead Plaintiffs.

Further, you state that there are certain "'official' Elastos social media accounts" for which "none of the custodians proposed above, nor any other individual linked to Elastos, has access to or control."  (Apr. 13 Ltr. at 6.)  Again, to the extent this is true, please identify, specifically, what "social media accounts" you are referring to.  Moreover, your statement is misleading because, during the April 8 meet and confer, you suggested that certain individuals associated with Elastos **used to** have access to or control over these accounts.  Please state who has had access or control over these accounts for all periods from January 1, 2016 through the present.

Critically, apart from whatever you mean by "'official' Elastos social media accounts," you do not dispute that there are documents available from social media accounts, messaging platforms, mobile devices, and other such sources.  Many of these documents should be available from U.S. sources, such as, for example, through services like Google (such as Gmail and Google documents), as well as communications and content through Facebook, Twitter, Reddit, Discord, Telegram, Slack, Snapchat, YouTube, and Instagram.  Previously you only stated that "your investigation is ongoing."  (*See, e.g.*, Ex. A at 3.)  Please identify the media, services, and other such document and communication platforms to which Defendants and/or the initial custodians **do** have access or control.

Elastos Servers:  You state that "[p]rior to approximately April/May 2018, Elastos email accounts were hosted on the servers of the Chinese company Tencent, and thus, Elastos data from before that time is located in China."  (Apr. 13 Ltr. at 2.)  But to the extent any such documents or data concerning Elastos email accounts are not accessible through means **other than** directly accessing the Tencent servers in China, please say so, and explain the basis for

---

[6] Your assertion that Lead Plaintiffs "have refused to produce similar information" sought by Defendants' Request No. 16 (*see* Apr. 13 Ltr. at 3) is misplaced and factually inaccurate.  Though counsel for Lead Plaintiffs made itself available, you never even discussed Defendants' Request No. 16 with us until April 18—five days *after* your letter.  And in that discussion, you agreed that Defendants' Request No. 16 as written seeks an irrelevant and impossible collection of documents concerning everything from a Yelp restaurant review to a church message board that coordinates transportation to religious services, and you therefore agreed to come back to Lead Plaintiffs with a more appropriate formulation.  You have not yet made your revised proposal.


BLEICHMAR
FONTI & AULD LLP

Zachary Zwillinger
April 27, 2022
Page 7

such an assertion.  For example, you do not deny that the documents on Tencent servers can also, or separately, be accessed from the United States.  To the extent you actually contend that, as a technical matter, accessing any data concerning Elastos email accounts prior to April/May 2018 can only be done while physically located in China please also explain:

- Where, specifically, are the relevant "Tencent servers" located.

- It is unclear to us why you lump together the two-month period "April/May 2018." When, specifically, did Elastos email accounts stop being hosted by Tencent?  When, specifically, did Elastos email accounts begin being hosted by Google?

- Please explain the distinction you make when you state that "Elastos email accounts" prior to April/May 2018 are located in China, but that "[a]fter April/May 2018, Elastos email accounts, *and all other related data*, were hosted on Google."  And what is the "all other related data" you are referring to?  Please also identify all servers/location(s) that have hosted Elastos documents or data since its founding and what, specifically, is (or was) hosted on each server/location.  Further, given your representation that, after April/May 2018, Elastos data has been available in the U.S. through Google, please explain the basis for Defendant Chen's sworn statement that "Elastos does not maintain any web servers in the U.S. (the Elastos web server was and is in Singapore), and all of the technology supporting the Foundation's operations and website are based in China" (ECF 75 ¶9) and your representation to the Court in September 2020 that Elastos "does not maintain any web servers in the United States, nor is its website administered in this country" (ECF 74 at 4).

Singapore data:  We are surprised by your statement that "[w]e do not believe any Elastos data is located in Singapore" (Apr. 13 Ltr. at 2), which is flatly contradicted by the sworn statement by Defendant Chen that "the Elastos web server was and is in Singapore." (ECF 75 ¶9.)  Please explain the basis for your client's prior sworn statement.  Further, please identify all servers concerning Defendants' or Elastos data, including the contents and locations for each from January 1, 2016 to present.

Shared/Centralized Files and Non-Custodial Documents:  You represented that there are no shared or centralized files or any other type of non-custodial documents with respect to Elastos other than those available from Tencent and Google servers referenced above.[7]  Lead Plaintiffs find it hard to believe that Elastos has no (and has never had any) such documents whatsoever; please explain the efforts you made to locate them.

---

[7] The "U.S.-based loose files" you describe are no exception because they consists solely of documents "publicly available online" that, in our April 8 meet and confer, you confirmed were obtained by outside litigation counsel downloading them from publicly available websites.  (Apr. 13 Ltr. at 8.)



### D.  Chinese Law Is No Basis For Defendants To Delay or Refuse Production

#### 1.  Defendants Waived Their Belated Objections Based on Chinese Law

Contrary to your assertions, your general objections to producing documents "not under Defendants' possession, custody, or control" and "beyond those required by the Federal Rules of Civil Procedure" (Apr. 13 Ltr. 3) do not preserve objections to producing documents on the grounds of purported Chinese legal restrictions.  Among other reasons, because you have failed to "state with specificity the grounds for objecting to the request," and "whether responsive materials are being withheld on the basis of that objection," as required by Rule 34, you have waived your objections to our requests.  *See, e.g.*, *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-cv-6717 (NSR)(LMS), 2018 WL 4278351, at *1 (S.D.N.Y. Apr. 6, 2018) (defendant failed to "state whether any documents responsive to the request exist" and therefore defendant's objections "did not comply with the Federal Rules of Civil Procedure and were waived").  The fact that, last year, the parties had discussed "potential difficulties and delays in obtaining discovery from witnesses located in China and elsewhere" (Apr. 13 Ltr. at 3) makes waiver all the more appropriate for Defendants' failure to serve any such objection in response to Plaintiffs' Document Requests.

#### 2.  Defendants Offer No Legal Support For Their Assertion That PRC Blocking Statutes Permit Chinese-Based Defendants To Refuse Document Requests In U.S. Litigation

The PIPL and DSL are general framework that simply sets out vague Chinese Communist Party principles intended to shield PRC defendants from unfavorable discovery in U.S. litigation.  For that reason, Federal Courts have flatly rejected the very statutes you rely on, holding that they are "blocking statutes" that cannot be grounds to refuse to comply with the Federal Rules of Civil Procedure in U.S. litigation.  In fact, recognizing the absurdity of a Chinese law unilaterally dictating the conduct of discovery in U.S. litigation, one court held not only that these laws "do not appear to apply to the American civil discovery process," but that, even if they did purport to apply, U.S. courts would reject them because "such a law [would] infringe upon the sovereignty of the United States."  *Philips Medical Systems (Cleveland), Inc. v. Buan*, No. 19-cv-2648, 2022 WL 602485, at *6 (N.D. Ill. Mar. 1, 2022).  Put simply, as another Court held, Elastos "cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC blocking statutes."  *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *18 (D.N.J. Dec. 20, 2021).

You fail to cite a single case that supports your conclusory assertion to the contrary: that PRC data privacy laws shield your clients from discovery in U.S. litigation.  The sole decision you cite concerning PRC law deals with Chinese banking law.  (*See* Apr. 13 Ltr. at 5.)  And that decision is instructive because the Court only respects Chinese banking laws because the discovery sought was by subpoena from a non-party, the documents were located in China, and the plaintiffs had readily available "alternative means for securing" the same documents that did



Zachary Zwillinger
April 27, 2022
Page 9

not violate Chinese law. *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160 (S.D.N.Y. 2011) (Pitman, M.J.); *see Tiffany (NJ) LLC v. Andrew*, No. 10 CIV. 9471 WHP, 2011 WL 11562419, at *2 (S.D.N.Y. Nov. 14, 2011) (finding that magistrate ruling that plaintiffs should follow the viable alternative to obtain documents from non-party banks was proper "[g]iven the banks' status as third parties").[8] Here, by contrast, you represent party Defendants who availed themselves to the benefit of the U.S. market, you do not offer any alternative to obtain these documents other than proceeding under what you contend are PIPL and DSL requirements, you have not demonstrated the documents are unavailable outside of China, and you are invoking PRC blocking statutes that are an affront to U.S. sovereignty. *See, e.g.*, *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *18 (D.N.J. Dec. 20, 2021) ("PRC defendants cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC blocking statutes").

Your deliberate violation of U.S. discovery requirements based solely on a strained misinterpretation of unenforceable PRC blocking statutes is inappropriate.[9]  It is all the more outrageous here, where you already waived any such objection and struggled for over a month to actually articulate what PRC laws you were purportedly relying upon.  And the fact that you are belatedly invoking these PRC blocking statutes to shield Defendants' documents that you concede are readily available in the U.S. is truly indefensible.[10]

Given the importance of this dispute you have belatedly injected to resist the entirety of Plaintiffs' Document Requests, we must immediately resolve it.  By no later than May 4, 2022 either (1) state that Defendants have withdrawn all purported objection to document production based on PRC law, or (2) provide a written statement of your objection to producing the requested documents no longer than two pages so that it can be submitted to the Court in a joint letter, pursuant to Rule 2(C)(ii) of the Court's rules.

---

[8] You also cite a decision under the outdated approach from the Restatement (Second) of the Foreign Relations Law of the United States (1965) that solely involves Swiss banking law.  (Apr. 13 Ltr. at 5.)  And in any event, that case also concerns non-party discovery of documents located abroad.  *See Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 530 (S.D.N.Y. 1987) (plaintiffs had already obtained full discovery from all defendants and were only seeking discovery about "nondefendant trading customers" from an entity that was "no longer a primary defendant" and instead "st[ood] vis-a-vis plaintiffs in the position of a witness").

[9] That you also explain your clients' violation of the Federal Rules of Civil Procedure as motivated by your law firm's selfish desire to protect the "the Shanghai office of Paul Hastings" (Apr. 13 Ltr. at 5) from the speculative possibility of punishment by the Chinese Communist Party is both troubling and irrelevant.

[10] Indeed, even for foreign data privacy laws that are not PRC blocking statutes, courts have readily ordered the production of documents outside the U.S.  *See, e.g.*, *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 427 (S.D.N.Y. 2016) (rejecting defendants' objections to producing requested documents under UK data privacy laws, even for documents located in the UK).



Zachary Zwillinger
April 27, 2022
Page 10

### 3.  In any Event, Defendants Fail to Establish Chinese Law Prohibits The Requested Discovery

You claim that Chinese law imposes three requirements that bar Defendants from "the collection, review, and production of documents in this case":  (1) a "consent requirement"; (2) "State Secrets Review"; and (3) "Limitations on Data Export out of China."  (Apr. 13 Ltr. at 4.)

As initial matter, Lead Plaintiffs once again demand that you identify the responsive documents for which production may be impacted by Chinese law.  Tellingly, to date, Defendants have been unable to identify *any* responsive documents for which production may be impacted by Chinese law.

In any event, Defendants fail to establish that Chinese law imposes any of the three requirements you claim.

### a.  Defendants Fail To Establish A "Consent Requirement" Under the PIPL That Applies Here

As to consent, you claim that articles 3, 13, 23, and 39 of the PRC Personal Information Protection Law (PIPL) create a blanket bar that prevents you from producing Elastos business documents because you have not procured "express written consent" from every individual who participated in creating, sending, or receiving those documents.  (Apr. 13 Ltr. at 4-6.)

But the PIPL provisions you cite do not require any such consent.  To the contrary, Article 13 specifically provides that "individual consent is *not* required" in several situations that apply here, including "[w]here necessary to fulfill statutory duties and responsibilities or statutory obligations," for "activities for the public interest," for information "disclosed by persons themselves or otherwise already lawfully disclosed," or under "circumstances provided in laws and administrative regulations."  Production of documents required by the Federal Rules of Civil Procedure in a class action lawsuit to protect investors from the unlawful sale of unregistered securities qualifies, on its face, particularly where the documents are business documents and communications disclosed to the business for which they worked.

For Elastos documents available in the U.S. (or otherwise accessible outside China) that relate to China-based custodians, you claim that their lack of consent nonetheless bars production because they will be used for "analyzing or assessing activities of natural persons inside the borders."  (PIPL Art. 3; *see* Apr. 13 Ltr. at 4.)  But that is absurd.  The documents are accessible in the United States and will be used for adjudicating violations of U.S. securities laws by Defendants in the United States.

Moreover, you improperly presume that every document and communication constitutes protected "personal information," when the business documents requested are not protected personal information or, even if they were, they do not fall under the PIPL because the relevant



Zachary Zwillinger
April 27, 2022
Page 11

information was disclosed.  For example, "marketing or promotional materials concerning Elastos and/or ELA Tokens" (Request 5), documents concerning "publications or statements in connection with Elastos, the Elastos Blockchain, ELA Tokens, the ICO, the Lock-In Program, and/or the listing of the ELA Tokens on a secondary market" (Request 7), documents concerning "Your actual or forecasted financial results" (Request 17) are Elastos business documents, not personal information for individual Elastos personnel.  And communications, like email, transmitted to a third party, by definition "disclosed" the contents of the communication thus exempting it from protection under the express terms of the PIPL.

Indeed, even as to personal devices used by company personnel, U.S. courts have specifically rejected your argument that the PIPL prohibits disclosure in U.S. litigation.  *See Philips Medical Systems (Cleveland), Inc. v. Buan*, 2022 WL 602485, at *6 ("As for the privacy objection, Defendants also have not demonstrated that any personal information within the meaning of the PIPL is at issue in Plaintiffs' discovery requests. Nor have Defendants identified anything in the law to prohibit a company from directing their employees to look for *business* information stored on personal devices.") (emphasis in original).

Finally, while you claim a PIPL violation "***can*** result in harsh legal and financial penalties," you fail to cite a single instance of the PRC government actually imposing penalties against PRC defendants —harsh or otherwise—on the grounds that complying with a document request in U.S. litigation violates a PRC consent requirement.

### b. Defendants Fail To Establish A "State Secret Review" Is Required Under Chinese Law

You claim that "[b]efore any data can leave China, it must undergo a more established procedure known as state secrets review" (Apr. 13 Ltr. at 4) but fail to cite any Chinese law that actually applies to the responsive documents you possess.  Nor do you identify any responsive document impacted by such law, or what kind of Chinese "state secret" that is implicated by Defendants' documents concerning Elastos.  Indeed, you concede that "[t]here is not a clear definition of what constitutes a state secret."  (*Id.*)

While you cite a particular Chinese court's opinion interpreting certain Chinese criminal laws, apparently issued more than twenty years ago, titled the "Interpretation of the Supreme People's Court on Several Issues Concerning the Application of Law for Trial of Cases of Stealing, Buying, or Unlawfully Supplying State Secrets or Intelligence for Entities outside of the Territory of China," you do not contend that this judicial interpretation constitutes a Chinese law, nor do you identify any of the Chinese criminal laws interpreted therein as applicable here.

In any event, your amorphous "state secret" objection to discovery in U.S. litigation has been recognized as a "blocking statute" and rejected by U.S. courts because "PRC defendants cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC



Zachary Zwillinger
April 27, 2022
Page 12

blocking statutes." *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 6010575, at *18.

### c.   Defendants Fail To Establish Applicable "Limitations on Data Export out of China"

You claim that "prior approval of the 'competent authority' of the PRC" is required for exporting "personal information," (citing Article 41 of the PIPL) and for exporting "seemingly, all data in general" (citing Article 36 of the PRC Data Security Law (DSL)). (Apr. 13 Ltr. at 4.)

With respect to the PIPL, as noted above, it is inapplicable to disclosure in U.S. litigation. Further, by its terms, PIPL Article 41 solely concerns "foreign judicial or law enforcement authorities' requests" for personal information, and thus is inapplicable to Plaintiffs' Document Requests because Lead Plaintiffs are not a judicial or law enforcement authority. *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 6010575, at *10 (holding that the DSL and PIPL injunction "is inapplicable to these documents or indeed to any information produced in response to an FRCP discovery request," explaining that "[i]t is not U.S. courts that receive discovery in U.S. litigation, but the parties themselves who exchange information").

As to the DSL, your argument has additionally been rejected by U.S. courts on the grounds that "the DSL's review and approval requirements do not appear to apply to the American civil discovery process," and, separately, even if it the DSL did purport to apply, U.S. courts would reject it because "such a law infringe upon the sovereignty of the United States." *Philips Medical Systems (Cleveland), Inc. v. Buan*, N2022 WL 602485, at *6.

Finally, while you claim that a violation PIPL or DSL has "***potential*** penalties" or "***can*** … result in harsh legal and financial penalties," you once again fail to cite a single instance of the PRC government actually impose penalties against PRC defendants—harsh or otherwise—on the grounds that complying with a document request in U.S. litigation in violates a PRC data export limitation.

### 4.   Defendants Fail To Explain Their Collection, Review, and Production For Custodial Documents

### a.   Initial Custodians based in the U.S.

You state that "[f]or data for U.S.-based custodians that is located in the U.S., none of the above requirements apply; we will be collecting and producing this data accordingly." (Apr. 13 Ltr. at 5.) We understand that Rong Chen, Zach Warsavage, Donnie Bullers, and Fay Li are U.S.-based and accordingly, you have collected (or are collecting) all documents in the possession, custody, or control of these four individuals that are not solely accessible in China,



Zachary Zwillinger
April 27, 2022
Page 13

including all documents associated with their @elastos.org email accounts since at least
April/May 2018, which are available from a Google server in the U.S.

Separately, your letter still refuses to provide basic information we have sought about these
individuals and your document collection:

- Rong Chen, Zach Warsavage, and Donnie Bullers – you state that these three individuals
  "agreed to allow us to collect Elastos-related data on their personal devices, accounts, or
  other sources." (Apr. 13 Ltr. at 6.)

  o Please provide copies of the consent requests you sent, the responses received,
    and all other correspondence with these individuals related to this action. Please
    identify, specifically, what "personal devices, accounts, or other sources" exist
    for each of these individuals (or existed since January 1, 2016), which sources
    these individuals "agreed to allow [you] to collect," as well as the sources from
    which you have collected documents to be produced in this action. To the extent
    there are any sources or items that they did not "agree[] to allow [you] to collect"
    or that are inaccessible or no longer exist, please specify what these are. Further,
    how will you differentiate between "Elastos-related data" and other data in your
    collections? Moreover, in contrast to other custodians, you make no mention of
    "Elastos Servers" with respect to these three individuals—please explain your
    collection, review, and production with respect to the Elastos Servers for these
    three individuals. Finally, to the extent you are withholding documents with
    respect to Rong Chen, Zach Warsavage, and Donnie Bullers based on your PRC
    law objections, please explain, specifically, what those documents are and the
    basis for your objection to producing such documents under U.S. law.

  o Additionally, you stated during our meet and confer that Donnie Bullers has
    access to Elastos "MailChimp documents." Please describe the nature of these
    documents, the volume of such documents, and your process for the collection,
    review, and production of such documents.

- Fay Li – you claim you have not "received responses" from Fay Li to your "consent
  requests" but are "continuing to diligently pursue [them] in the hopes of receiving such a
  response."

  o Please provide the consent requests you sent to Fay Li and all other
    correspondence with them related to this action. Further, please describe what
    efforts you have made "to diligently pursue [them] in the hopes of receiving such
    a response." Please identify, specifically, what devices, accounts, or other
    sources exist for Fay Li (or existed since January 1, 2016) as well as sources
    from which you have collected documents. To the extent there are any sources
    or items that are inaccessible or no longer exist, please specify what these are.



Zachary Zwillinger
April 27, 2022
Page 14

Moreover, to the extent you are withholding documents with respect to Fay Li based on your PRC law objections, please explain, specifically, what those documents are and the basis for your objection to producing such documents under U.S. law.

**b. Initial Custodians based in China**

You have identified the following fifteen initial custodians as "custodians in China." What is your basis for saying they are "in China"? Where, specifically, do each of them reside and/or transact business? To the extent you are asserting that they do not visit, own property, or conduct business in the U.S., please explain your basis for that position.

Separately, your letter still refuses to provide basic information we have sought about these individuals and your document collection:

- <u>Dinghe Hu</u> and <u>Kevin Zhang</u> – you claim they "are no longer involved in Elastos-related activities and have proven inaccessible to Defendants."

  - o Please explain when their involvement with Elastos ceased and what efforts have been made to contact them. Please also provide all correspondence with Dinghe Hu and Kevin Zhang related to this action. We find it hard to believe that Defendants have no information for Dinghe Hu or Kevin Zhang with respect to addresses used by them in the form of physical address, phone, email, WeChat, Sina Weibo, or any of the myriad communications platforms, social media, and other applications used by Elastos and its personnel. Please identify, specifically, what devices, accounts, or other sources exist for Fay Li (or existed since January 1, 2016) as well as sources from which you have collected documents. To the extent there are any sources or items that are inaccessible or no longer exist, please specify what these are. Moreover, to the extent you are withholding documents with respect to Dinghe Hu or Kevin Zhang based on your PRC law objections, please explain, specifically, what those documents are and the basis for your objection to producing such documents under U.S. law.

- <u>Clarence Liu</u> – you claim you have not "received responses" to your "consent requests" but are "continuing to diligently pursue [them] in the hopes of receiving such a response."

  - o Please provide copies of the consent requests you sent to Clarence Liu and all other correspondence with them related to this action. Further, please describe what efforts you have made "to diligently pursue [them] in the hopes of receiving such a response." Please identify, specifically, what devices, accounts, or other sources exist for Clarence Liu (or existed since January 1, 2016) as well as sources from which you have collected documents. To the extent there are any



Zachary Zwillinger
April 27, 2022
Page 15

> sources or items that are inaccessible or no longer exist, please specify what these are. Moreover, to the extent you are withholding documents with respect to Clarence Liu based on your PRC law objections, please explain, specifically, what those documents are and the basis for your objection to producing such documents under U.S. law.

> o Further, please explain the basis for your assertion that Clarence Liu is "in China" with no U.S. presence, given that, in his LinkedIn profile, he lists his location as "San Francisco, California, United States" and states that he is "Chief Strategy Office & Co-Founder at Tacen," a Wyoming-based company. (*See* https://www.linkedin.com/in/clarencehlliu/.)

- <u>Feng Han</u>, <u>Ben Li</u>, and <u>May Yuan</u> – you state that these three individuals "agreed to allow us to collect Elastos-related data on their personal devices, accounts, or other sources beyond what is contained on Elastos Servers." (Apr. 13 Ltr. at 6.)

  > o Please provide copies of the consent requests you sent, the responses received, and all other correspondence with these individuals related to this action. Please identify, specifically, what "personal devices, accounts, or other sources beyond what is contained on Elastos Servers" exist for each of these individuals (or existed since January 1, 2016), which sources these individuals "agreed to allow [you] to collect," as well as the sources from which you have collected documents to be produced in this action. To the extent there are any sources or items that they did not "agree[] to allow [you] to collect" or that are inaccessible or no longer exist, please specify what these are. Further, how will you differentiate between "Elastos-related data" and other data in your collections? Finally, to the extent you are withholding documents with respect to Feng Han, Ben Li, or May Yuan based on your PRC law objections, please explain, specifically, what those documents are and the basis for your objection to producing such documents under U.S. law.

- <u>Hao Cheng</u> – we understand from your letter, that Hao Cheng has written to you refusing to "consent[] to the collection of any documents that are on Elastos servers (whether in China or the U.S.)." (Apr. 13 Ltr. at 6.) You do not contend that there is any lack of consent with respect to personal devices, accounts, or other sources beyond what is contained on Elastos Servers.

  > o Please provide copies of the consent requests you sent, the responses received, and all other correspondence with Hao Cheng related to this action. Please identify, specifically, what "personal devices, accounts, or other sources beyond what is contained on Elastos Servers" exist for Hao Cheng (or existed since January 1, 2016), the sources you have consent to collect, as well as the sources from which you have collected documents in connection with this action. To the



Zachary Zwillinger
April 27, 2022
Page 16

> extent there are any sources or items that Hao Cheng did not agree to allow you to collect, or that are inaccessible or no longer exist, please specify what these are.  Finally, to the extent you are withholding documents with respect to Hao Cheng based on your PRC law objections, please explain, specifically, what those documents are and the basis for your objection to producing such documents under U.S. law.

- <u>Simon Cai</u>, <u>Hongjie Hu</u>, <u>Leo Lei</u>, <u>Song Sjun</u>, <u>Yipeng Su</u>, <u>Nan Yu</u>, <u>Julie Zhu</u>, and <u>Rebecca Zhu</u> – we understand from your letter that these eight individuals "have consented to the collection of any documents that are on Elastos servers (whether in China or the U.S.)."  (Apr. 13 Ltr. at 6.)  You do not contend that there is any lack of consent with respect to personal devices, accounts, or other sources beyond what is contained on Elastos Servers.

  - Please provide copies of the consent requests you sent, the responses received, and all other correspondence with each of these eight individuals related to this action.  Please identify, specifically, what personal devices, accounts, or other sources beyond what is contained on Elastos Servers exist for each of them (or existed since January 1, 2016), the sources you have consent to collect, as well as the sources from which you have collected documents in connection with this action.  To the extent there are any sources or items that Hao Cheng did not agree to allow you to collect, or that are inaccessible or no longer exist, please specify what these are.  Further, what documents, specifically, on the "Elastos servers" will you collect by virtue of these consents?  Finally, to the extent you are withholding documents with respect to any of these individuals based on your PRC law objections, please explain, specifically, what those documents are and the basis for your objection to producing such documents under U.S. law.

Particularly given that you are attempting to hold up or refuse production of these documents based on an improper reliance on PRC blocking statutes that has been roundly rejected by U.S. courts, Defendants must promptly provide the information requested above.  If this issue is not immediately resolved, we will have no choice but to raise it with the Court.

### E.  Defendants Must Produce Cyber Republic Documents

You claim that "Documents held by the Cyber Republic are not in the possession, custody, or control of Defendants" because "Cyber Republic is a separate legal entity from Elastos."  (Apr. 13 Ltr. at 8.)  But Cyber Republic and Elastos are inextricably connected.  By its own admission:

- "***Cyber Republic is certainly part of Elastos***" (cyberrepublic.org/vision);



Zachary Zwillinger
April 27, 2022
Page 17

- The "Contact" information for Cyber Republic is an Elastos email address (cyberrepublic@elastos.org) and Elastos Discord account (https://discord.gg/elastos) (*see* https://www.cyberrepublic.org/);

- Cyber Republic's website is governed by "Terms & Conditions" that users enter into with "Elastos Foundation Ltd. and its affiliates," with no identification of any Cyber Republic legal entity separate from Elastos (https://www.cyberrepublic.org/terms);

- Cyber Republic was "formed around Elastos" and serves as the "mechanism of Elastos community governance" (https://www.cyberrepublic.org/whitepaper); and

- Cyber Republic "consists of ELA token holders, Elastos Foundation members, Elastos ecosystem partners, and any other teams and individuals that contribute to developing Elastos' technologies and community" (*id.*)

Moreover, Cyber Republic is run by the "Cyber Republic Council," the only confirmed member of which is your client, Defendant Feng Han, the Co-Founder, and a Board Member of Elastos. (*See* https://www.cyberrepublic.org/council.)  Indeed, during the April 8 meet and confer, you were unable to name any individual other than Feng Han with any role or responsibility for Cyber Republic.  Tellingly, on its website, Cyber Republic also admits that other Elastos personnel, including Kevin Zhang and Yipeng Su have served (and may still serve) on the Cyber Republic Council.  (cyberrepublic.org/vision.)[11]

     This is more than enough to constitute Defendants' possession, custody, or control over Cyber Republic documents.  Indeed, even the senior role that Individual Defendant Feng Han (let alone other Elastos personnel) holds at Cyber Republic alone gives Defendants the practical ability to obtain Cyber Republic documents such that they are in Defendants' possession, custody, or control.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) ("a senior executive of FTGL … certainly has the pracitical ability to obtain … FTGL documents"); *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019) ("the Individual Defendants' status as directors establishes that they had 'the ability in the ordinary course of business to obtain' the documents").

     Please confirm by May 4, 2022 that (1) Defendants withdraw their attempt to object that Cyber Republic documents are outside their possession, custody, or control and (2) Defendants will promptly produce all Cyber Republic documents responsive to Plaintiffs' Document Requests.

---

[11] To the extent that you continue to maintain "Cyber Republic is a separate legal entity from Elastos," please immediately identify such separate legal entity, its owners, its officers and directors, and the role of the twenty initial custodians and any other Elastos personnel with respect to such separate legal entity.



BLEICHMAR
FONTI & AULD LLP

Zachary Zwillinger
April 27, 2022
Page 18

**F.     Defendants Must Withdraw Their Refusal To Produce Documents Prior to
       November 1, 2017**

Your letter confirms Defendants' refusal to produce documents prior to November 1,
2017. You do so on the grounds that Lead Plaintiffs "allege[] that Defendants 'began to
actively promote the Elastos technology in the United States' [i]n November 2017." (Apr. 13
Ltr. at 7.) By contrast, you claim, "[d]ocuments from prior to November 2017, which would
relate to contemplated sales in China or elsewhere outside the U.S., are not relevant to this U.S.
federal securities class action." (*Id.*) There are several problems with your objection.

*First*, you fail to explain any basis for your conclusory assertion that contemplated sales
outside the U.S. are "not relevant." You do not identify any relevant distinction between the
ELA Tokens for which there were the "contemplated sales" prior to November 2017, as
compared to the ELA Tokens for which there were "contemplated sales" in the United States
after November 2017. If, for example, in early 2017, Defendants promoted ELA Tokens
outside the U.S. in a way that meets the criteria of an "investment contract" under U.S.
securities law, that would be highly relevant as to whether the same ELA Tokens constitute an
"investment contract" when subsequently promoted in the U.S.[12]

*Second*, Defendants cannot possibly cite Lead Plaintiffs' allegation that "[i]n November
2017, Defendants … began to actively promote the Elastos technology in the United States"
(ECF 68 ¶25), as a settled start date given that they deny this allegation in their answer (*see* ECF
95 ¶25). To the extent that you now admit that Defendants began to actively promote Elastos in
the United States in November 2017, please immediately amend your answer to say so.

*Third*, *even if* Defendants' promotion in the U.S. began in November 2017, you do not
(and cannot) dispute that Defendants planned and undertook efforts toward promoting Elastos
and ELA Tokens in the United States prior to November 2017. That is, there are necessarily
relevant documents prior to the date promotion began with respect to planning and coordinating
that promotion.

*Fourth*, as we have explained on our meet and confer calls, there are numerous events
and allegations prior to November 2017 that are critical to this case. Your objection incorrectly
presumes that the only documents that exist prior to November 2017 are those that relate solely
to "contemplated sales in China or elsewhere outside the U.S." For example, you ignore that,
according to Defendant Rong, he created the Elastos blockchain in 2016; in June 2017,
Defendants founded Elastos; and, in August 2017, they published the Elastos whitepaper on the

---

[12] To the extent your date range objection also implies that Defendants are refusing to produce documents
concerning "contemplated sales" or promotion that are not specifically linked to transactions in the United States,
even for dates after November 1, 2017, please say so expressly, and provide your basis for doing so. If so, Lead
Plaintiffs intend to raise this issue with the Court as well.



Zachary Zwillinger
April 27, 2022
Page 19

technology.  (ECF 68 ¶¶22-23; *see also* ECF 95 ¶¶22-23 (admitting allegations for certain events prior to November 2017).)

As such, your date range cutoff is tantamount to a refusal to produce documents responsive to requests that are highly relevant to this case.  For example, Lead Plaintiffs are entitled to the following documents prior to November 2017 (among others):

- Documents concerning the white paper that relate to Elastos (Requests 5, 6, 13, 14), which are directly relevant to Lead Plaintiffs' Securities Act claims.  *See, e.g.*, *SEC v. Kik Interactive Inc.*, 492 F.Supp.3d 169, 172, 176, 180 (S.D.N.Y. 2020) (citing cryptocurrency's "white paper" as relevant to inquiry whether sale of cryptocurrency constituted investment contract subject to registration requirement of Securities Act).

- Documents concerning the establishment and construction of the Elastos ecosystem, the banking and handling of its finances, and its use of Elastos funds from its founding (Requests 14, 15, 17, 19, 20, 22), which are highly relevant to Lead Plaintiffs' claims.  *See, e.g.*, *SEC v. Kik Interactive Inc.*, 492 F.Supp.3d at 178 (sale of cryptocurrency constituted "investment contract" subject to registration requirement of Securities Act where "[defendants] established a common enterprise," "deposited the funds into a single bank account," and "used the funds for its operations, including the construction of the digital ecosystem it promoted").

- Documents concerning the Individual Defendants' "personal financial interest" and potential gain from "solicited investment in the ELA Tokens" (Requests 19, 20), which the Court recognized as relevant to this action.  (*See* ECF 87 at 30.)

- Documents concerning each Defendant's affirmative defenses that they are not subject to the Court's personal jurisdiction, including each Defendant's contacts with the United States, including residences, visits, communications, and business activities prior to November 1, 2017.

### G. Search Terms

We understand that the hit reports you have provided represent results "run only against data collected from Elastos servers (i.e., Tencent and Google)" because this is "the only data that [Defendants] have been able to process so far."  (Apr. 13 Ltr. at 7.)  As you acknowledge in your letter, this collection is incomplete.  And, for reasons stated in this letter, additional documents are clearly missing, including, among other things, documents you are withholding based on PRC blocking statutes, documents from the laptops and personal devices of Elastos personnel, Cyber Republic documents, and documents prior to November 1, 2017.

Separately, however, your letter leaves several open questions about the underlying documents to which you applied your search terms.



Zachary Zwillinger
April 27, 2022
Page 20

First, please confirm that you applied your search terms to **the entirety** of all Elastos-related documents from all servers and other locations.  That is, the total number of such documents is 198,146 (or 164,824 documents from Google plus 33,322 documents from Tencent).

Second, please confirm that every collected document was converted to an OCR text-searchable format to which your application of search terms would yield as hits all documents that contain that term (regardless of the document's original form), and describe the process (if any) for handling audio, video, and other files not readily amenable to text searchability.

Third, we understand from your hit reports that you recovered "164,824" documents from the Google server, of which only "157,239" documents are for the time period since November 1, 2017.  (Apr. 13 Ltr. at 7 & Ex. A.)  But this makes no sense because your statement that the Google stores Elastos email "[a]fter April/May 2018" means that **all** 164,824 documents should be for the time period after November 1, 2017.  To the extent you are asserting that any documents recoverable from Google are dated prior to November 1, 2017, please explain the basis for that assertion.  Further, for all documents, please explain the process by which you have assessed a date, including whether and to what extent you rely on metadata field(s) to do so, and how you assign a date to documents without data in certain metadata fields.

Lead Plaintiffs are continuing to review your search terms, including your proposed Chinese translations, and will propose additional search terms.  Your responses to Lead Plaintiffs' longstanding questions and issues presented in this letter about Defendants' ESI and other documents are required for Lead Plaintiffs to assess proper search terms for Defendants' documents.  Further, we have yet to receive any document production from Defendants, and such productions are likely to reveal additional search criteria that should be run as well.  When Defendants provide responses and productions, Plaintiffs will promptly follow up regarding proposed searches.

## H. Responsiveness Review

We understand from your letter that Defendants will produce all documents that hit on the search terms with only two exceptions:  (1) documents for which Defendants assert "privilege, attorney work product, and other similar protections," each of which will be memorialized in a privilege log and (2) "documents that are wholly irrelevant or unrelated to this matter (*i.e.*, false hits)."  (Apr. 13 Ltr. at 7; *See* ECF 105-1 at §VI (Privilege Logs).)

With respect to the first exception, we know of no privilege or "similar protection" other than attorney-client privilege or attorney work product that can be asserted with respect to Defendants' document productions.  To the extent you have a contrary view, please let us know immediately and provide the authority for your assertion.



Zachary Zwillinger
April 27, 2022
Page 21

        With respect to the second exception, our understanding is that you will produce ***every***
document that hits on any search term with the sole exception of false hits.  Among your initial
eighteen searches, the only two that could have a false hit are Search 13 (App*) and Search 16
(Vot*).

        Please let us know right away if our understanding is incorrect.

                        *                        *                        *

        We look forward to Defendants' first document production and prompt response to this
letter.  As stated, if we cannot come to agreement promptly regarding the disputed discovery
issues, we will need to raise these deficiencies with the Court.  We are available to meet and
confer on or prior to May 3, 2022 if you wish to discuss further.

Very truly yours,

Benjamin F. Burry


cc:     Javier Bleichmar
        George Bauer
        Warren Raiti

# EXHIBIT A

**Benjamin Burry**

| | |
|---|---|
| **From:** | Benjamin Burry |
| **Sent:** | Friday, April 1, 2022 4:16 PM |
| **To:** | Zwillinger, Zachary S.; Hudson, Carl; Herzinger, Kenneth P. |
| **Cc:** | George Bauer; Javier Bleichmar; wraiti@raitipllc.com |
| **Subject:** | RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.) |
| | |
| **Categories:** | Counsel |

Zach and Carl,

Another week has passed with no response or update from Defendants.  This is contrary to the commitment you made weeks ago to keep us informed of your efforts to identify what documents exist, the custodians for which you have documents, the sources from which documents can be obtained, propose potential search terms or parameters, and resolve the numerous uncertainties associates with your responses to Plaintiffs' document requests.  Nor have you provided any further information about the purported restrictions imposed by Chinese law, or responded to our requests below for information about the accounts used by Defendants and key custodians and for consent to permit Elastos' electronic communication services providers to produce the content for their accounts.

Please provide times that you are available to speak Monday or Tuesday, or provide your substantive written responses to our correspondence by that time.  If we do not hear from you, we have no choice but to raise these issues with the Court.

Thanks,
Ben

---

**From:** Benjamin Burry
**Sent:** Friday, March 25, 2022 2:13 PM
**To:** Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Hudson, Carl <carlhudson@paulhastings.com>; Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Javier Bleichmar <JBleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Zach and Carl,

We have not received an update from you or a response to our email below.  Please advise when you'll be able to provide an update.  One key issue that we would like to discuss further is your contention that Defendants' documents may be in China and inaccessible.  From what you've told us, the only files you have recovered to date are some "loose files" available in the U.S.  This is very concerning to Plaintiffs.  We therefore have some follow up questions for you; we would appreciate receiving your prompt response by March 30:

1. Can you please send us the hit count or volume of the recovered documents to date?  And do you have any further information about what these documents consist of and from whom were they collected?

2. We understand from public records that Google appears to be the email provider for @elastos.org and that Amazon and Mailchimp also provide electronic communication services for these email accounts.  Please let us know if that is incorrect.  Further, can you please let us know if there is anyone other than Google, Amazon and Mailchimp that have provided any electronic communication service for elastos.org?

1

3. Can you please confirm Defendants' consent to permit Google, Amazon, and Mailchimp (plus any other service provider) to produce to a third-party vendor the content of any and all available and/or recoverable information for @elastos.org accounts?

4. For each of the Defendants, Ben Li, the other 17 individuals identified in your initial disclosures, please provide all email addresses at elastos.org as well as other email and electronic communications they have used (*e.g.*, including other email addresses as well as communications and content through media, services, or platforms like Facebook, Twitter, Reddit, Discord, Telegram, Slack, Snapchat, YouTube, and Instagram).

Thanks,
Ben

---

**From:** Benjamin Burry
**Sent:** Friday, March 18, 2022 12:59 PM
**To:** Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Hudson, Carl <carlhudson@paulhastings.com>; Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Javier Bleichmar <JBleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Zach and Carl,

Thank you for speaking on March 11 and March 16 regarding Plaintiffs' Document Requests. We covered a lot in the two hours of discussion, and this email is to summarize the current status of Defendants' production, agreements reached, and steps moving forward, per our calls.

You are working diligently to locate responsive documents and you indicated that there is no reason to believe Defendants cannot meet the May 15 deadline for the Parties to substantially complete document production. Given that your investigation is ongoing and you are not in a position to identify what documents exist, the custodians for which you have documents, or the sources from which documents can be obtained, we agreed we are unable to discuss potential search terms or parameters at this time. You said that you cannot commit to a time when that discussion can occur, but we appreciate your commitment to keeping us informed as your investigation continues. We discussed your objections to Plaintiffs' Document Requests and you confirmed that there are no objections pursuant to which Defendants are withholding documents at this time, except attorney-client privilege. Nonetheless, we discussed in more detail the following important subjects:

1. **Location of Documents**

You indicated that all the requested documents are located in either China or the United States, or possibly Singapore.

    a. <u>China</u>

    You indicated that you suspect that the bulk of the responsive documents are in China. While your investigation is ongoing, the only documents you have identified as located in China thus far are those on the server containing Elastos company emails (which you indicated generally have an @elastos.org domain name). Please let us know promptly if you identify any other documents located in China and, if so, what they are.

    Further, you said that you are evaluating what, if anything, under China's Personal Information Protection Law limits your collection of documents from China. In your responses to Plaintiffs' Document Requests,

you did not object or otherwise claim that Chinese law bars or restricts your document collection or production in any way, nor did you make that assertion during our meet and confers.  We understand that you are not presently withholding anything based on Chinese law.  If you are attempting to claim that Chinese law bars or restricts your document collection or production in any way, please let us know promptly and, if so, what particular provisions of Chinese law apply and how exactly they bar or restrict your document collection or production.

Finally, you assured us that you have not yet selected any particular subset of documents to be collected from China.  We emphasized that it would be prejudicial to Plaintiffs if you selected anything less than the entire universe of documents to go through your time-consuming Chinese legal procedures because it could effectively exclude documents Plaintiffs believe are responsive from your production before the parties have had a chance to discuss search terms, custodians, and other parameters for Defendants' production.  You agreed that you will let us know if there comes a point where you limit the universe of documents (e.g., identify specific documents, custodians, searches) for extraction/collection from China, so that the Parties can discuss this before any decision is made.

    b.   <u>United States</u>

You confirmed that Defendants have collected certain documents in the U.S. and are ready to start production.  You stated that "loose files" are available from the U.S., but that your investigation is ongoing and you are unable at this time to provide any further information about what these documents are or what else is available.  Your continued efforts include identifying whether there is a U.S. server and whether documents are available from social media accounts, messaging platforms, personal email accounts, mobile devices, and other sources.  We stated that many documents should be available from U.S. sources, such as, for example, personal email through services like Gmail, as well as communications and content through Facebook, Twitter, Reddit, Discord, Telegram, Slack, Snapchat, YouTube, and Instagram.  You did not disagree, but simply stated that your investigation is ongoing.

Please promptly produce the responsive documents retrievable from the U.S., including the "loose files" you mentioned.  Further, please promptly tell us what documents are available so that we can meet and confer about Defendants' production of the remaining documents retrievable from the U.S.

    c.   <u>Singapore</u>

You stated that Elastos in incorporated in Singapore, but that you are not aware of there being any potentially responsive documents in Singapore.  In the event this changes, and there are any documents located in or accessible via Singapore (or any other country), you agreed let you know so that we can promptly discuss next steps.

## 2.  Custodians

You indicated that Defendants possess documents from the following three individual custodians and are amenable to producing from their files:  Defendant Rong Chen, Defendant Feng Han, and Ben Li.  (Note that in Defendants' initial disclosures, you named "Ben Lee," the Elastos HR Director, who your firm represents in this Action; please let us know if "Ben Lee" in your initial disclosures is someone different from the "Ben Li" that Carl referenced in your March 15 email below.)

With respect to the 17 other individuals named in your initial disclosures and listed in my March 15 email below (or any other custodians that could be relevant), your investigation is ongoing.  All 17 of the named individuals have been employed by Elastos, but you do not yet know whether any still currently work for the company.  Nor do you yet know what custodial documents exist for any of these individuals, the sources of documents (*e.g.*, whether company email, personal email, mobile devices, social media, etc. exists), or where such documents are located (*e.g.*, China, US, Singapore).

With respect to all potential custodians, you confirmed that you are not withholding documents based on your objection to Plaintiffs' definition of "possession, custody, or control" as including, among other things, any and all documents Defendants have the right or authority, or even just the "practical ability," to obtain.  You agreed to inform us in the event that you withhold documents based on any objection to Plaintiffs' definition of "possession, custody, or control," so that we can promptly meet and confer and attempt to reach a resolution of this issue.

To be clear, Plaintiffs' view is that Defendants must produce documents in their "possession, custody, or control," and it is settled law that the word "control" is construed "broadly," to include any document Defendants have "the right, authority, or practical ability to obtain … from a non-party to the action."  *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2016 WL 5408171, at *5 (S.D.N.Y. Sept. 27, 2016).  As such, Defendants have "control" over, among others, all officers, employees, and those with whom they have a "continuing economic relationship," and therefore must produce documents in those non-parties' possession.  *Id.* at *6.  Further, with respect to, former employees, "courts insist that corporations, at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession."  *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005).

Accordingly, we ask that you promptly do the following:  (1) for all individuals and entities you identify in your initial disclosures, please identify any for which Defendants claim to lack "possession, custody, or control" to obtain documents; (2) among the 17 individual custodians, please identify any that you claim are not current officers or employees and lack an economic relationship with a Defendant, or whose documents are not otherwise within Defendants' "possession, custody, or control"; (3) for any individuals you identify in response to item #2, please state whether you object to taking the initial step of reaching out to these individuals to seek their cooperation in providing responsive documents; (4) please promptly inform us of the results of your efforts to reach out to former Elastos personnel; and (5) please promptly identify if there are Elastos officers or employees (including former officers or employees) where you lack possession, custody, or control of their documents for the period they were with Elastos, and why you do not have these documents (*e.g.*, whether documents have been destroyed).

**3.   Sources of Documents**

As noted, you stated that your investigation is still ongoing and you are unable to identify the sources of potentially relevant or responsive documents.  This includes, what email (including personal email accounts) and other messaging or chats, social media, mobile devices, centralized files, and databases exist, as well as the nature of documents for each.

We discussed in more detail the outsourcing of Elastos' business functions to vendors.  On our March 16 call you clarified that my statement in my March 15 email that "Elastos' business functions were outsourced to vendors for which you are unable to produce documents" is not accurate.  Namely, the only vendor to which you are aware Defendants outsourced any function is the vendor that houses Elastos' server in China (containing, among other things, @elastos.org email), and you confirmed that you agree that the server and documents that this vendor has are within Defendants' possession, custody, or control.  Accordingly, you are presently not aware of any instance where an Elastos' business functions was outsourced to a vendor for which you are unable to produce documents.  You agreed to let us know if any of this changes.  As we told you, if there are such vendors, it is important that Plaintiffs know promptly so that we can pursue third-party discovery or seek relief from the Court, as appropriate.

Finally, we began discussing Defendants' database, data sets, enterprise systems, and other such documents, including those concerning the sale of ELA Tokens and transactions with actual or potential ELA Token purchasers.  You indicated that you were amenable to producing, for example, documents that show how the purchase transactions work and communications as to how the transactions occurred, though you were resistant to producing databases or data sets.  We explained that we believe these materials will be highly relevant to the question of whether there were sales of securities within the meaning of the Securities Act.  Nonetheless, because you have not yet identified what documents and data exist we had to table this issue for now.  Please let us know

promptly when you identify what data and other documents exist so that we can resume this discussion and attempt to reach a resolution.

Best,
Ben

---

**From:** Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>
**Sent:** Wednesday, March 16, 2022 9:47 AM
**To:** Benjamin Burry <bburry@bfalaw.com>; Hudson, Carl <carlhudson@paulhastings.com>; Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Ben,

We are in receipt of your email.  Your email contains a number of inaccuracies, and omits the fact that we discussed the China law issues with the court at the hearing in December.  We can discuss your email further during our call.

Thanks,

---

**PAUL HASTINGS**

**Zachary Zwillinger** | **Associate, Litigation Department**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6774 | M
+1.212.318.6000 | Fax: +1.212.230.7774 | zacharyzwillinger@paulhastings.com |
www.paulhastings.com

---

**From:** Benjamin Burry <bburry@bfalaw.com>
**Sent:** Tuesday, March 15, 2022 8:36 PM
**To:** Hudson, Carl <carlhudson@paulhastings.com>; Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** [EXT] RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Carl,

Thank you for your email.  To be clear, it was troubling to hear for the first time on our March 11 call that you are unable to produce the bulk of your clients' responsive documents because of Chinese legal restrictions, that Elastos has no centralized files, that Elastos' business functions were outsourced to vendors for which you are unable to produce documents, and that you do not yet know whether you have access to social media accounts used or accessed by Defendants during the relevant time period.  We believed that it was important that we discuss these issues promptly, given that we served our document requests on January 26 and this was the first we were hearing of them.

Further, particularly with the new revelations mentioned above, we had asked to discuss custodians and search terms as soon as possible.  Please send us the names of the custodians for which you have documents, other than Rong Chen, Feng Han, and Ben Li, including whether you have possession, custody, or control of any documents for any of the following individuals, all of whom were listed on Defendants' initial disclosures and all of whom we understand were employees of Elastos during the relevant time period:

1. Feng Han

5

2.   Rong Chen
3.   Ben Lee
4.   Donnie Bullers
5.   Simon Cai
6.   Hao Cheng
7.   Dinghe Hu
8.   Hongjie Hu
9.   Wilson Lee
10.  Leo Lei
11.  Fay Li
12.  Clarence Liu
13.  Song Sjun
14.  Yipeng Su
15.  Zach Warsavage
16.  Nan Yu
17.  May Yuan
18.  Kevin Zhang
19.  Julie Zhu
20.  Rebecca Zhu

Also, we would appreciate you sending us in advance of tomorrow's call the names of Defendants' vendors that have possession, custody, or control of documents responsive to any of Plaintiffs' document requests (including those for which you are withholding documents based on objections), as well as the role/function performed by such vendors.

Additionally, we would appreciate hearing your response about the Protective Order on or before tomorrow's call, so we can get it on file and move forward with productions.  As my colleague George mentioned, we are suggesting that the parties simply utilize Judge Woods' form Protective Order, which is the one you mentioned on Friday's call.

Finally, tomorrow's call was scheduled to discuss Plaintiffs' document requests.  You mention in your email earlier today that you would like to discuss your own document requests.  We should schedule a separate call to discuss that so please send us your availability.

Thanks,
Ben

---

**From:** Hudson, Carl <carlhudson@paulhastings.com>
**Sent:** Tuesday, March 15, 2022 2:51 PM
**To:** Benjamin Burry <bburry@bfalaw.com>; Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Ben,

That time will work for us.  As to your other request: we are not aware of any authority requiring provision of a custodian and search term list, particularly at this stage of discovery.  While we nonetheless plan to negotiate them with you, discovery has just begun, and there have not been any delays.  After receiving our objections and responses on February 25, your team reached out on March 4 and offered March 10, and we connected last Friday, March 11, which is also the first time you requested a custodian and search term list.  We are now reconnecting Wednesday, March 16.  The deadline for substantial completion of production of documents is May 15, which both parties agreed to, both in recognition of the difficulty of obtaining documents from China.

That said, we can provide the following list of custodians:

- Rong Chen, Feng Han, Ben Li

We may well add to this list as we complete our own factual investigation and confirm whether the Elastos Foundation has documents from other relevant individuals in its possession, custody, or control.  We are diligently working, as we mentioned Friday, to obtain documents from the server in China where we understand the bulk of the responsive documents to be located, and therefore, we need to comply with China's strict state secrets and privacy laws.  For the same reasons, we are not currently in a position to provide a list of search terms, though we would be open to reviewing an initial proposal from you on those.

Looking forward to discussing the responses and objections for both parties tomorrow; we will follow up separately on your message regarding the protective order.

Thank you,

Carl

---

**From:** Benjamin Burry <bburry@bfalaw.com>
**Sent:** Sunday, March 13, 2022 4:23 PM
**To:** Hudson, Carl <carlhudson@paulhastings.com>; Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** [EXT] RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Carl,

If Wednesday is the soonest you can be available, then yes we will resume then.  I just sent you a calendar invite for 11:30am to 1pm ET.  In the interest of minimizing further delay, can you please send us your list of proposed custodians and search terms in advance of the call?

Thanks,
Ben

---

**From:** Hudson, Carl <carlhudson@paulhastings.com>
**Sent:** Sunday, March 13, 2022 4:14 PM
**To:** Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>; Benjamin Burry <bburry@bfalaw.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; wraiti@raitipllc.com
**Subject:** RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Hi Ben,

Can we resume the discussion this Wednesday?  It will be Zach and I from our team.  We are both generally available that day, so let us know a block (perhaps 1 hour this time just in case) that works for you; would just request after 11 am ET as I am on the west coast.

Thank you,

Carl

**From:** Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Sent:** Friday, March 11, 2022 12:22 PM
**To:** Benjamin Burry <bburry@bfalaw.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; <wraiti@raitipllc.com>; Hudson, Carl <carlhudson@paulhastings.com>
**Subject:** RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Thanks Ben.  Apologies for jumping off the call so abruptly but I had a presentation at 11:30 PT/2:30 ET sharp and had to login to it.  We'll compare calendars and get back to you on a time to resume the call asap.

Ken

---

**From:** Benjamin Burry <bburry@bfalaw.com>
**Sent:** Friday, March 11, 2022 11:54 AM
**To:** Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** George Bauer <gbauer@bfalaw.com>; Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; <wraiti@raitipllc.com>; Hudson, Carl <carlhudson@paulhastings.com>
**Subject:** [EXT] RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Ken,

You dropped off before we could conclude the call.  But George, Carl, and I are generally available to resume the call Monday.  Would 2pm work for you?  If not, please let us know what time you are available.  It would also be helpful if you could send us a list of proposed custodians and search terms so that we can review and discuss with you.

In the meantime, we will work on the confidentiality agreement and ESI protocol, as discussed.

Best,
Ben

Benjamin F. Burry
Bleichmar Fonti & Auld LLP
7 Times Square, 27th Floor
New York, New York 10036
O: (212) 789-1345
F: (212) 789-3960
bburry@bfalaw.com

---

**From:** George Bauer <gbauer@bfalaw.com>
**Sent:** Saturday, March 5, 2022 3:46 PM
**To:** Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Cc:** Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; Benjamin Burry <bburry@bfalaw.com>; Ross Shikowitz <rshikowitz@bfalaw.com>; <wraiti@raitipllc.com>; Hudson, Carl <carlhudson@paulhastings.com>
**Subject:** Re: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Ken, thanks for getting back to me. Friday afternoon works for us. We'll send a dial in for 2 pm et.

Thanks and have a good weekend.

George

George N. Bauer
Bleichmar Fonti & Auld LLP
75 Virginia Road
White Plains, NY 10603
T: 212-789-3602
M: 718-757-0586
gbauer@bfalaw.com

On Mar 4, 2022, at 7:20 PM, Herzinger, Kenneth P. <kennethherzinger@paulhastings.com> wrote:

George:

I'm tied up on Thursday but am free on Friday 3/11 after 1 pm ET.  If that works for you, can you please send a dial-in to me and Carl Hudson cc'd above.  Will just be the two of us on our end.

Thanks,
Ken

**From:** George Bauer <gbauer@bfalaw.com>
**Sent:** Friday, March 4, 2022 11:27 AM
**To:** Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; Benjamin Burry <bburry@bfalaw.com>; Ross Shikowitz <rshikowitz@bfalaw.com>; wraiti@raitipllc.com
**Cc:** Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Subject:** [EXT] RE: Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Counsel, we would like to schedule a meet and confer to discuss these responses and objections.  Are you available next Thursday, March 10, in the afternoon?  Say 3pm et?

Thanks,
George

George N. Bauer
Bleichmar Fonti & Auld LLP
75 Virginia Road
White Plains, NY 10603
T: 212-789-3602
M: 718-757-0586
gbauer@bfalaw.com

**From:** Zwillinger, Zachary S. <zacharyzwillinger@paulhastings.com>
**Sent:** Friday, February 25, 2022 12:08 PM
**To:** George Bauer <gbauer@bfalaw.com>; Javier Bleichmar <jbleichmar@bfalaw.com>; Benjamin Burry <bburry@bfalaw.com>; Ross Shikowitz <rshikowitz@bfalaw.com>; wraiti@raitipllc.com
**Cc:** Herzinger, Kenneth P. <kennethherzinger@paulhastings.com>
**Subject:** Owen, et al. v. Elastos Foundation, et al., Case No. 1:19-cv-5462-GHW (S.D.N.Y.)

Counsel,

Attached please find Defendants' Joint Set of Objections and Responses to Plaintiffs' First Requests for Documents.

Also, please provide us with a draft protective order and ESI protocol for review. We note that Judge Woods provides a form protective order as a starting point.

Regards,



**Zachary Zwillinger | Associate, Litigation Department**
Paul Hastings LLP | 200 Park Avenue, New York, NY 10166 | Direct: +1.212.318.6
+1.212.318.6000 | Fax: +1.212.230.7774 | zacharyzwillinger@paulhastings.com
www.paulhastings.com

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

*************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments. If you reply to this message, Paul Hastings may collect personal information including your name, business name and other contact details, and IP address. For more information about Paul Hastings' information collection, privacy and security principles please click HERE. If you have any questions, please contact Privacy@paulhastings.com.

# EXHIBIT B

## Benjamin Burry

| | |
|---|---|
| **From:** | Benjamin Burry |
| **Sent:** | Monday, April 11, 2022 7:04 PM |
| **To:** | Zwillinger, Zachary S. |
| **Cc:** | Hudson, Carl; Herzinger, Kenneth P.; George Bauer; Javier Bleichmar; wraiti@raitipllc.com; Zatlin, Erin |
| **Subject:** | RE: Owen v. Elastos Foundation - ESI Protocol |

| | |
|---|---|
| **Categories:** | Counsel |

Thanks Zach.  We have filed the ESI Protocol.

Per, our conversation on Friday, you are sending us a letter this week by "mid-week" that responds to the questions and issues regarding Defendants' document production we have raised in our meet and confers and in our written correspondence.  Your letter will also include proposed search terms with a hit report, including as to unique hits on a custodian-by-custodian basis.  We agree it makes sense to meet and confer after you send your letter.  We are not available Friday, but please send times Monday that work for you.

In the letter you are sending by mid-week, please make sure to address the topics from Friday's meet and confer.  Among other things, these include:

1. Send us the particular provisions of any Chinese law that you claim is relevant here and explain how such law(s) apply to this litigation.
2. Provide any legal support for Defendants withholding responsive documents available in the U.S. on the grounds that dictates from the People's Republic of China supersede the Federal Rules of Civil Procedure in U.S. litigation.  For example, you confirmed that, by April or May 2018, all Elastos email was stored in the U.S. on a server run by Google, and even though the Federal Rules of Civil Procedure require you to produce these documents to Plaintiffs, you are withholding them based on your belief in Chinese legal supremacy.
3. Provide any support refusal to consent to permit Google, Amazon, and Mailchimp (plus any other service provider) to produce to a third-party vendor the content of any and all available and/or recoverable information for @elastos.org accounts.  Similarly, provide any support for your refusal to provide any of the account addresses that the individuals identified in your initial disclosures used for email and other electronic communications (*e.g.*, including email addresses as well as communications and content through media, services, or platforms like Facebook, Twitter, Reddit, Discord, Telegram, Slack, Snapchat, YouTube, and Instagram).  To the extent you claim that your refusal is required by Chinese law, please provide the legal support for this assertion.
4. Provide any support for your assertion that Cyber Republic's documents are not within Defendants' possession, custody, or control.  You were unable to identify anyone other than Defendant Feng Han with any role or authority concerning Cyber Republic.  Cyber Republic is supposedly run by a council of 12 members, but the only one identified is Feng Han.  Further, no one other than Feng Han has been identified as a principal, owner, director, or officer of Cyber Republic; nor has anyone else been identified as responsible for Cyber Republic's formation.  Given these facts, please explain the basis for asserting that Feng Han and the other Defendants lack the right, authority, or practical ability to obtain documents from Cyber Republic.  Further, in the event you have asked Feng Han to obtain Cyber Republic's documents, please provide Feng Han's response.
5. Provide any support for your categorical refusal to producing responsive document from prior to November 2017.

Thanks,
Ben