# Exhibit 6



1(212) 318-6774
zacharyzwillinger@paulhastings.com

May 4, 2022

**VIA ELECTRONIC MAIL**

Benjamin Burry
Bleichmar Fonti & Auld LLP
7 Times Square
Twenty-Seventh Floor
New York, New York 10036

Re:     *Owen, et al. v. Elastos Foundation, et al.*, Case No. 1:19-cv-05462-GHW (S.D.N.Y.)

Ben:

We write on behalf of the Elastos Foundation ("Elastos"), Rong Chen, and Feng Han (collectively "Defendants") in response to your letter of April 27, 2022.

**Lee Willson**

As we explained in our April 13 Letter, Lee Willson[1] has never worked at or for Elastos and was never assigned any titles or roles by Elastos. Nor have we located any Elastos data associated with him. The fact that Mr. Willson claims that he is a "strategic advisor" to the Elastos Foundation on his LinkedIn page merely shows that is what he claims to be, not that he actually is or was an advisor to Elastos or had any other role. Moreover, we included Mr. Willson in our initial disclosures because Plaintiffs named him as a defendant in the initial complaint filed in New York Supreme Court, so we assumed that he might be someone we needed to call as a witness. To date, we have not found anything to suggest that he would be appropriate as a custodian or witness. As a result, Mr. Willson will not be an Elastos custodian in this action.

**Update on Document Collection**

We provide the following update to our efforts to collect and produce relevant, responsive documents.

*Data in China*

We have largely completed the collection and processing of all relevant data that we are able to obtain that is located in China. This data includes both Elastos's data from its Tencent servers, as well as non-Elastos data from custodians that is located in China.

Regarding the Tencent data, we have collected email data for Feng Han, Rong Chen, Ben Lee, Simon Cai, Leo Lei, Song Sjun, Nan Yu, May Yuan, Rebecca Zhu, Hu Hongjie, Julie Zhu, and Yipeng Su. There does not appear to be any Tencent data from Zach Warsavage, Donnie Bullers, Clarence Liu, and Kevin Zhang. We have very recently received Fay Li's consent to collect, review, and produce her Tencent email. Because we have not been able to obtain consent from Hao Cheng (who refused to provide

---

[1] We believe that his name is Lee Willson, not Wilson Lee.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 2

consent) or Dinghe Hu (who we cannot contact), we cannot collect, review, or produce their Tencent email data at this time.  However, if we do obtain their consent in the future, we will produce their data.

Regarding non-Elastos data in China, Feng Han, Ben Lee, and May Yuan consented to the collection of other data held on personal devices or in personal accounts.  Specifically:

- Feng Han agreed to the collection of WeChat messages, iMessage messages on his iPhone and iPad, TikTok messages on his iPhone, and QQ messages on his iPad.
- Ben Lee agreed to the collection of WeChat messages.
- May Yuan agreed to the collection of WeChat messages and laptop files.

Notwithstanding our requests, some custodians have not consented to the collection of Elastos-related data that exists on their personal devices and accounts.  As a result, under Chinese law we are not able to collect this data.  However, in light of the extensive data that we have been able to collect, the productions that Defendants will make in response to Plaintiffs' requests will more than satisfy their obligations under the Federal Rules of Civil Procedure.

*Data in the U.S.*

We have finished collecting all Elastos data from its Google servers (including both Google email and Google drive data), as well as most of the non-Elastos data from custodians that is located in the U.S.  In particular, we have collected Google email data from Feng Han, Rong Chen, Ben Lee, Simon Cai, Leo Lei, Song Sjun, Zach Warsavage, Nan Yu, May Yuan, Rebecca Zhu, Hu Hongjie, Julie Zhu, Donnie Bullers, Yipeng Su, Clarence Liu, Kevin Zhang, and Fay Li.  In addition, we have collected Google drive data from Feng Han, Rong Chen, Ben Lee, Simon Cai, Leo Lei, Song Sjun, Zach Warsavage, Nan Yu, May Yuan, Rebecca Zhu, Hu Hongjie, Julie Zhu, Yipeng Su, Clarence Liu, Kevin Zhang, and Fay Li. There does not appear to be any Google drive data from Donnie Bullers.  Because we do not have consents from Hao Cheng and Dinghe Hu, we cannot collect, review, or produce their Google email or Google drive data at this time.  However, if we do obtain their consent in the future, we will produce their data.

Regarding non-Elastos data in the U.S., we have been able to collect or anticipate completing the collection shortly of the following data held on personal devices or in personal accounts from Feng Han, Rong Chen, Zach Warsavage, and Donnie Bullers.  Specifically:

- Feng Han has agreed to the collection of personal email messages, Twitter messages, Telegram messages, and Discord messages.
- Rong Chen has agreed to the collection of his WeChat messages, Telegram messages, OneDrive efiles, OneDrive Outlook files, Outlook live files, and Twitter messages.
- Zach Warsavage has agreed to the collection of his WeChat messages, Telegram messages, Discord messages, Twitter messages, and iCloud efiles.
- Donnie Bullers has agreed to the collection of his Telegram messages, WeChat messages, and MailChimp messages.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 3

Based on our discussions with Feng Han, Rong Chen, Zach Warsavage, and Donnie Bullers, we believe we have collected all relevant data from these custodians, including data in their personal accounts and devices.

## Update on Outstanding Consent and Collection Requests

We have continued to use reasonable and appropriate efforts to obtain the consents necessary to collect, process, and produce documents.  Mr. Liu agreed to the collection of his Elastos emails, but did not agree to the collection of any of his other data.  We were not able to correspond with Kevin Zhang despite multiple efforts to contact him.  However, further research has confirmed that Mr. Liu and Mr. Zhang both appear to be in the U.S.  As a result, we do not need their written consent to produce their Elastos Google data (both Google email and drive data) that is located in the U.S.  Moreover, we have confirmed that neither of them have Tencent email data in China.  To date, we have not been able to collect any data from personal devices or accounts from Fay Li.  Moreover, we have not been able to locate any method to reach Dinghe Hu to request the required consent.

In sum, Defendants have collected (or are soon going to collect) all documents and data that they are legally able to collect in light of the limitations imposed by Chinese law.

## Location of Elastos Email and Drive Data

As explained in the April 13 Letter, email and drive data that is actually in the possession, custody, or control of Elastos is housed in either a Tencent server or a Google server.  The Tencent server, which is located in China, contains only email messages.  The Google server contains both email messages and Google drive documents, and that data is currently in the U.S. for processing, review, and production.  We have not identified any further Elastos email or drive data that is not in either of those servers, or on the personal devices of the custodians.  Consistent with Rong Chen's declaration, Elastos's website server was and is hosted in Singapore.  However, it is our understanding that there is no Elastos email or drive data in Singapore.

## Account Names and Addresses

Plaintiffs request the email addresses and account information that the custodians used to communicate regarding Elastos.  However, Plaintiffs do not explain why they need this information now, as opposed to as part of Defendants' production.  Defendants have no obligation to provide interrogatory-style answers to Plaintiffs' letter and preparing a log of this information would be both unduly burdensome and expensive and would delay the production of documents to Plaintiffs, and thus Defendants decline to do so.

## Transition of Data from Tencent to Google

Based on our factual investigation, Elastos's transition from Tencent to Google started in April 2018 and ended in May 2018.  However, because we will be producing documents from both servers November 2017 forward, the precise date of the transition is not relevant.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 4

**Elastos's Relationship with Custodians**

As you note, Elastos has or has had some sort of employment or other economic relationship with each of the custodians.  This is why we have agreed to treat them all as custodians.  As a result, there is no reason for us to detail each custodian's relationship with Elastos at this time.  However, we note that, at least, point 2 on page 3 of your April 27 Letter is incorrect, and that we never made any representation regarding point 3 on that same page.

The only data that is in the possession, custody, or control of Defendants is the Tencent and Google server data (for Elastos itself), and the personal data in the possession of Feng Han and Rong Chen, the two individual Defendants.  Defendants do not have possession, custody, or control of documents on the personal devices or accounts of any of the other 17 custodians.  This is because the data is not on Elastos devices or servers.  Moreover, Elastos has no polices that would give it control over data on the personal devices of the custodians.

To be clear, we are not withholding any documents or data held by any custodians on the grounds that it is not in Defendants' possession, custody, or control.  And as already explained, we have taken extensive efforts to collect as much data as possible that could contain relevant information, including by repeatedly asking all custodians to provide us with the consent to collect their documents.  This is the exact opposite of the facts in *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171 (S.D.N.Y. Sept. 27, 2016), cited at page 4 of your April 27 Letter, in which the court relied in part on the fact that there was "no evidence that the directors have refused – or, if asked, would refuse – to cooperate in retrieving relevant emails from their [personal] accounts."  *Id.* at *9.  Indeed, Defendants' extensive efforts to collect data on personal devices and accounts have borne substantial fruit, as detailed in the summary above of what we have been able to collect to date and will produce to Plaintiffs.

Likewise, Plaintiffs mischaracterize Elastos's position in a desperate attempt to distinguish *Matter of Skanska USA Civ. Se. Inc.*, 2021 WL 4953239 (N.D. Fla. Aug. 5, 2021).  Elastos has not taken any "evasive measures" to prevent relevant documents from being produced, nor is it refusing to produce documents from personal devices.  Indeed, Elastos has not attempted to "avoid producing business documents" by maintaining discoverable information in employee personal accounts, as is clear from the fact that each custodian had and used an Elastos email account.  Moreover, far from hiding data in personal accounts and devices, Elastos asked each custodian for access to all of their devices and accounts that have Elastos-related data so that such data could be collected.  In turn, Elastos has collected such data from six custodians, and will produce all responsive non-privileged documents from these collections, consistent with Chinese law.

With respect to Clarence Liu, Kevin Zhang, and Fay Li (all of whom we understand are in the U.S., and all of whom are no longer associated with Elastos), we have taken every reasonable effort to ask these custodians for access to their personal devices to search for any Elastos data they may have on them.  To date, we have not been able to collect any personal devices from these individuals.  Likewise, as discussed above, our investigation has turned up no way to reach Dinghe Hu.  As a result, we have already "exhaust[ed] the practical means at [our] disposal to obtain the documents from [the former employees]."  *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 342 (S.D.N.Y. 2005) (cited by Plaintiffs on page 5 of the April 27 Letter).  Defendants have fulfilled their obligation to seek documents from these custodians.  Moreover, Plaintiffs are more than capable of pursuing discovery from these U.S.-based individuals through Rule 45 subpoenas.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 5


**Official Elastos Social Media Accounts**

It is our understanding that the following social media accounts were at one point run by individuals connected to Elastos:

- @ElastosInfo (formerly @Elastos_org) (Twitter)
- @ElastosInfo (Instagram)
- https://www.facebook.com/elastosorg/ (Facebook)
- https://www.youtube.com/channel/UCy5AjgpQIQq3bv8oy_L5WTQ (YouTube)

At this time, we do not know who currently controls these accounts.  We have been trying to determine who previously controlled these accounts, but have not yet been able to learn such information.  To the extent we learn more information, we will let you know.

**Chinese Law**

*Defendants Have Not Waived Anything*

Defendants have made abundantly clear to Plaintiffs throughout this lawsuit that Chinese law would impact the production of documents.  Indeed, at the December 22, 2021 conference with the Court, counsel for Defendants explained that "there are various complex Chinese data privacy laws that we will need to work through with plaintiffs' counsel in order to ensure that we can have the appropriate checks and balances so we can take that discovery out of China so that we can use it in our litigation."  *See* 12/22/2021 Hr'g Tr. at 7:4-12 (Dkt. 92).  As explained in our April 13 Letter, our February 25, 2022 responses and objections more than adequately covered any limitations that Chinese law would create for Defendants' ability to produce documents.  Moreover, counsel for Defendants raised and discussed with you the fact that Chinese law would impact our ability to produce documents during our March 11, March 16, and April 8 meet and confer calls.  And our April 13 Letter detailed how Chinese law would affect document production.

Plaintiffs' argument appears to boil down to a claim that Defendants' responses and objections were not specific enough in noting the impact of Chinese law on the production of documents.  In an effort to address this immaterial dispute, we have attached as Exhibit A amended responses and objections to Plaintiffs' discovery requests.  These should more than adequately address Plaintiffs' claim that any such argument has been waived, especially in light of the total failure of Plaintiffs to identify any prejudice they have suffered, or are likely to suffer, as a result of their failure to listen to Defendants' counsel's explanation of the effects of Chinese law on this case.[2]

---

[2] The court's decision in *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278351, at *1 (S.D.N.Y. Apr. 6, 2018) changes nothing.  The decision, whose entire relevant analysis is limited to a few sentences, says nothing about the impact of foreign law on the production of documents, or the requirement to assert such law in written responses and objections.  Moreover, even after holding that certain objections were waived, the court did in fact place related limitations on the request.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 6

*Defendants Are Not Hiding Behind Chinese Law*

Plaintiffs' editorializing regarding Chinese law is designed to suggest that Defendants are using it to hide relevant, responsive documents from production in this case. This is simply wrong. As explained above, Defendants have taken every step to maximize its production of documents in this litigation and at the same time comply with Chinese law. We have agreed to 19 of Plaintiffs' 20 custodians (and as explained above, the 20th could never be a custodian). For all custodians whose data is subject to Chinese law, we have sought the maximum possible scope of consent to allow us to collect all relevant documents, whether they are located in the U.S. or China, and whether they are on Elastos servers, or on personal devices and accounts. For those custodians that we were not able to obtain consent from, we took multiple steps in an effort to obtain their consent.

In turn, we have obtained consent to collect, review, and produce the vast majority of the data that is held by these custodians that is in Elastos's own possession. Likewise, we have been able to collect a variety of other documents from six custodians (including some of the most important custodians in the case), including documents from personal email messages, devices, messaging apps, and social media. Plaintiffs have failed to explain why the hundreds of thousands of documents that Defendants have collected are insufficient to address the issues in this case. Moreover, Plaintiffs have failed to explain why the non-specific, hypothetical documents that they seek the production of are so important that Defendants should be forced to violate Chinese law.

Indeed, if Elastos had any intention of hiding its data behind Chinese law, then it would have kept all of its data in China (*e.g.*, on Tencent servers). However, as noted above, in 2018 Elastos itself chose to transition to Google servers, which are outside of China and which are far less affected by Chinese law. Elastos has continued to use such Google servers through the filing and the pendency of this litigation.

*Plaintiffs' Analysis of Chinese Law Is Wrong*

The PRC law firm we have engaged has reviewed your interpretation of Chinese law and determined that it is wrong. Please let us know if you have engaged counsel competent in Chinese law, so that we can discuss whether our PRC counsel and your counsel should meet and confer regarding the scope of Chinese law.

*Consent Requirement*

Consent is the primary basis for processing of personal information under the PIPL. This is similar to other international counterparts such as the GDPR, which explicitly provides for a consent requirement before a third party may use, process, or transfer personal information/data.

Plaintiffs incorrectly asserted that the exceptions prescribed under Article 13 of the PIPL should apply to the present case. (Apr. 27 Ltr. at 10). However, the exceptions that you cite to, specifically (3), (5), (6) and (7) of Article 13 are not applicable here. The "statutory duties and responsibilities or statutory obligations" in (3) are duties, responsibilities, and obligations arising from the laws of the PRC, while the present litigation is in the U.S. and you are seeking relief based on the laws in the U.S., not the PRC. The "public interest" in (5) refers to the public interest in the PRC, which the present case does not concern. Throughout our ongoing review, we have identified a large volume of documents containing personal information (*e.g.*, bank account numbers and physical addresses) that is not "disclosed by



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 7

persons themselves or otherwise already lawfully disclosed" under (6). Finally, you fail to explain what "circumstances provided in laws and administrative regulations" referred to in (7) can be the basis for an Article 13 exception.

Moreover, Article 13 of the PIPL only sets out exceptions to the consent requirement for non-sensitive personal information. Articles 29 and 39 of the PIPL also impose an express consent requirement for processing sensitive personal information (such as information on biometric identification, specific identity, medical health, financial accounts, and personal whereabouts), and for overseas provision of any personal information. In other words, even if a consent is not required for the transfer of non-sensitive personal information due to the exceptions set out in Article 13 (which is not the case here), an express consent must still be obtained prior to processing sensitive personal information, and transferring documents containing any personal information outside the territory of China.

The overbroad production of irrelevant personal information here will constitute a direct contravention of the fundamental principles set out in the PIPL. Our PRC law firm advised that the collection and processing of personal information must be for a specified and reasonable purpose and must be conducted in a way that has the least impact on personal rights and interests under Chinese law. It must also be limited to the minimum scope necessary for achieving the purpose of processing and shall not be excessive. The consent requirement safeguards the privacy rights of the individuals who may not be aware of the contemplated use of their personal information. Accordingly, it is widely accepted as essential to engage PRC-licensed attorneys to conduct risk-based review to ensure that the handling of personal information in a production complies with the PIPL. It is especially true for personal information of little or no value to the recipient (being Plaintiffs), but that nevertheless may have a negative impact on the affected individual (being the owner of the personal information).

*State Secrets Review*

Your assertion that documents in China may be produced without first screening out any PRC state secrets therein is disingenuous. Assuming, *arguendo*, that documents were to be transferred from the U.S. to China, it would be dangerous and irresponsible to suggest that the materials might be transferred without regard to the U.S. states secrets contained therein.

The documents to be transferred to the U.S. are subject to Chinese law and regulations governing state secrets, including the PRC Law on Guarding State Secrets, first released in 1988 (the "State Secrets Law"); the Interim Provisions on the Administration of Secret Classification of State Secrets released in 2014 ("Interim Provisions on State Secrets"); certain provisions under the PRC Criminal Law issued in 1979 (the "Criminal Law"); and Interpretation of the Supreme People's Court on Several Issues Concerning the Application of Law for Trial of Cases of Stealing, Buying, or Unlawfully Supplying State Secrets or Intelligence for Entities outside of the Territory of China issued in 2001 (the "SPC Interpretation"). The SPC Interpretation is an official interpretation of Article 111 of the Criminal Law with legal force by the Supreme Court of China. Your objection to the application of the SPC Interpretation because it was "apparently issued more than twenty years ago" is absurd.

The fact that "state secrets" are not clearly defined under Chinese law does not mean that there is no rule or guidance under Chinese law to identify what information or documents may contain state secrets. Article 9 of the State Secrets Law and Article 18 of the Interim Provisions on State Secrets both set out the scope of matters that are subject to scrutiny under China state secrets laws and regulations. As we



PAUL
HASTINGS

Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 8

mentioned in our prior letter, China state secrets laws specifically prohibit overseas transmission of documents containing state secrets.  Violations may cause severe consequences including criminal liability under Articles 111 and 398 of the Criminal Law.  Should Defendants transfer any documents containing state secrets, they must first obtain the PRC authority's approval.  Accordingly, our PRC law firm has advised that it is crucial to have PRC licensed attorneys first review all relevant documents to be transferred abroad, identify the state secrets contained therein, and make redactions to avoid inadvertent transmission of state secrets to outside of China.

*Data Export*

You mistakenly state that Article 41 of the PIPL and Article 36 of the DSL do not apply to the present case because "Lead Plaintiffs are not a judicial or law enforcement authority" under these provisions.  Our PRC law firm has advised that, while litigants are not a "judicial or law enforcement authority," some, if not all, of the documents subject to discovery will ultimately be provided for review, and in support of an ongoing lawsuit, by a federal court in the U.S., which is a judicial authority.  Your reference to a U.S. court's holding that the DSL and PIPL do not apply because "[i]t is not U.S. courts that receive discovery in U.S. litigation, but the parties themselves who exchange information" is unfortunate.  Chinese laws are interpreted, applied, and enforced by competent Chinese authorities as to matters falling within their jurisdiction, not by U.S. courts.  As advised by our PRC law firm, both Article 41 of the PIPL and Article 36 of the DSL apply to the present case.  If your PRC-qualified attorneys believe otherwise, then our PRC counterparts may need to confer.

You also questioned the applicability of the DSL, and whether failure to comply with it (and the PIPL) will subject Defendants to penalties (Apr. 27 Ltr. at 12).  Our PRC counsel has seen criminal indictments for violations of the DSL and the Criminal Law by providing data overseas.  For instance, on April 13, 2022, China Central Television ("CCTV") reported on a criminal case where an information technology company transferred data to an overseas company, despite the PRC legal advisor's advice against the transfer.  Criminal investigation ultimately unveiled that the transfer included data concerning important national security and the company and its person-in-charge were criminally indicted for violation of the DSL and Article 111 of the Criminal Law.

*Enforcement of Chinese Law*

The PIPL and DSL were formally promulgated by the Standing Committee of the National People's Congress, *i.e.*, the permanent organization of the highest organ of state power and the legislature of China, as national laws in 2021 to safeguard the security of state secrets, personal information, and data stored in China.

These laws are newly issued but they both underwent a long and careful legislative progress with the main goal of strengthening the regulatory framework of data and personal information protection.  The specifications for compliance have been evolving in the past few years.  For example, the PRC authority issued the "Information security technology—Personal information security specification" in 2020 (GB/T 35273-2017), replacing a previous version (GB/T 35273-2017), to specify the standards for processing personal information and sensitive personal information.  More importantly, the Chinese government and authorities have undertaken years of enforcement against violations of rules of personal information, data security, and state secrets, and now authorities throughout the country are taking sweeping actions to initiate investigations into PIPL violations.  The Supreme People's Procuratorate recently published 11



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 9

guiding cases involving the collection, processing, and transfer of personal information in violation of the relevant laws and regulations.  These cases reinforce the principles of necessity and minimum impact for collecting and use of personal information and the consent requirement as prescribed by the PIPL, and illustrate the serious civil, administrative, and criminal liabilities for violations.

*Plaintiffs' Cases Do Not Require Defendants to Produce Documents They Cannot Produce*

In support of Plaintiffs' argument that Defendants are obligated to risk penalty under Chinese law in order to fulfill each one of Plaintiffs' overbroad and excessive discovery demands, Plaintiffs cite two recent district court decisions from outside the Southern District.  These decisions are distinguishable and do not bear on the key issues in this case.

In *Philips Medical Systems (Cleveland), Inc. v. Buan*, 2022 WL 602485 (N.D. Ill. Mar. 1, 2022), the court's decision was made on a motion for reconsideration, where the court concluded that Defendants were taking the motion as an "opportunity to develop new arguments by raising China's Data Security Law for the first time."  *Id.* at *2.  In this decision, the court recognized (as the Supreme Court has held) that "courts 'should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position.'"  *Id.* (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)).  And while the court recognized that the PIPL "generally operates based on consent," the actual issue of consent was not discussed in ruling on the case itself.  *Id.* at *4.

In *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 6010575 (D.N.J. Dec. 20, 2021), the court was focused on 23 specific documents, not the broad-based document collection that is at issue in this case.  Moreover, the court did not discuss the consent requirements under Chinese law, and instead focused on a state secrets analysis, which may not even be necessary in this action.

Plaintiffs' claim that Defendants "fail to establish a state secrets review" is required under Chinese law is undercut by Plaintiffs' own cases, which note that "[i]f Defendants have a good faith reason to believe that a responsive document may implicate the GSSL, they may withhold that information and instead produce a corresponding Rule 26(b)(5) privilege log."  *Philips*, 2022 WL 602485, at *5 (citing *In re Valsartan,* 2021 WL 6010575, at *1-2).  This is exactly what Defendants are doing, by engaging a PRC-based law firm to review documents in China to determine if any contain state secrets.[3]

*Chinese Law Issues Are Not Ripe for Resolution*

Your request to submit the Chinese law issues to the Court at this time is premature.  First, the state secrets and data privacy review being conducted by our PRC-based law firm is ongoing.  As a result, it is not clear that any responsive documents that have been collected and reviewed will be withheld from production.  Moreover, we are continuing to secure additional consents and data to collect as much potentially responsive material as possible, as demonstrated by our efforts regarding Fay Li.  And as both the *Philips* and *Valsartan* decisions demonstrate, the Court will need to conduct a balancing analysis to determine whether the Court will order the production of any such documents that are not being produced as a result of Chinese law.  *See In re Valsartan*, 2021 WL 6010575, at *11 (describing the "7-Factor

---

[3] Defendants do not believe that it is "selfish," troubling," or "irrelevant" that a law firm try to follow the law.



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 10

*Aérospatiale-Wultz* Balancing Analysis"). But the Court will not be able to analyze many of these factors (including, *inter alia*, "the importance of the requested information to the litigation," and "the availability of alternative means of securing the information") until documents have been produced.

There is no reason for the parties or the Court to address the complicated legal and factual issues raised by Chinese law unless it is necessary. In light of the expansive discovery that Defendants have been able to secure for production, we submit that it will not be necessary. But at the very least, the Court should not be bothered with this issue until it is ripe and crystalized. Moreover, to the extent Plaintiffs wish to take discovery from witnesses in China, they should, and should have, issued letters rogatory for international service of process, as the Court suggested in the aforementioned December 22, 2021 conference.

**Cyber Republic**

Cyber Republic is a separate legal entity from the Elastos Foundation. It was established as an LLC in Delaware under the name Cyber Republic Operations LLC.[4] A search of the Delaware Secretary of State's website reveals its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, 302-636-5401. Plaintiffs are wholly capable of serving a third-party subpoena on this separate entity and obtaining the documents it seeks. Indeed, because such documents are likely to be very helpful for Defendants' case, we strongly encourage Plaintiffs to do so. But it is not Defendants' obligation to conduct Plaintiffs' own third-party discovery.

Likewise, while it is not Defendants' responsibility to conduct research for Plaintiffs regarding a third-party entity, Defendants note that all of the current members of the Cyber Republic council are listed at https://elanodes.com/, and appear at the bottom of each "proposal" page on the Cyber Republic website.[5]

Plaintiffs have failed to establish that Feng Han (or any other custodian) has any ability to produce Cyber Republic documents that are not in his own control in the first place. As already detailed above, Feng Han has agreed to the collection of all sources of data relating to Elastos, which would include any such documents regarding Cyber Republic. Indeed, Cyber Republic is one of the search terms that Defendants are using to identify potentially relevant documents for review and production.

Finally, the presence of any current or former Elastos personnel on the Cyber Republic council is not proof of possession, custody, or control. Plaintiffs' cases regarding the ability of a senior executive or director to access the documents of the companies they are associated with is misplaced. The Cyber Republic Council is not a board. Council members are not directors or senior executives. Indeed, this fact is explicitly disclaimed in the Cyber Republic Whitepaper Plaintiffs reference in their letter. "The CR Council differs from normal councils and boards of directors in that it is a distributed body of individuals. In principle, the CR Council Members do not need to know each other, communicate with each other, or have common goals because all consensus actions revolve around proposals and voting. The CR

---

[4] https://newsdirect.com/news/elastos-incorporates-cyber-republic-dao-as-legal-entity-to-spearhead-growth-through-democratic-decision-making-605480561

[5] https://www.cyberrepublic.org/proposals/622a964f7eea4c0078004b67



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 11

Council is not a regular organization per se, but a decentralized entity whose collective decision making is facilitated by blockchain in much the same way Supernodes operate within DPoS consensus."[6]

<u>**Date Range**</u>

Defendants' date range cutoff of November 1, 2017 is principled and reasonable in light of Plaintiffs' own allegations in the Complaint, which make clear that November 2017 is the earliest point at which Defendants began to promote Elastos technology in the U.S.  AC ¶¶ 26-27.  Plaintiffs' arguments to the contrary are illogical.

*First*, documents prior to November 1, 2017 are not relevant to this case, because as Plaintiffs allege, there was no effort to offer or sell ELA Tokens in the U.S. prior to that date.  This is a U.S. federal securities class action concerning the offer and sale of purported securities in the U.S. (and nowhere else).  As a result, documents regarding the offer or sale of ELA Tokens prior to Elastos's efforts to sell in the U.S. are not relevant.  Even if such documents were marginally relevant—and they are not—Plaintiffs fail to explain why Defendants should bear the burden of reviewing such documents, when Defendants will be producing documents from November 1, 2017 to the present.

*Second*, the fact that Defendants denied the allegation in paragraph 25 of the Amended Complaint (dealing with Defendants' efforts to promote Elastos technology in the U.S.) does not entitle Plaintiffs to discovery prior to November 1, 2017.  Plaintiffs seem to be suggesting that because Defendants denied this allegation was false, Defendants were in fact admitting that such efforts started prior to November 1, 2017.  As a matter of logic, this is wrong.

*Third*, you claim that "we do not (and cannot) dispute that Defendants planned and undertook efforts towards promoting Elastos and ELA Tokens in the U.S. prior to November 2017."  (Apr. 27 Ltr. at 18.)  But no support is offered for this argument.  We can dispute, and we do dispute, this claim.

*Fourth*, for all of the types of documents that Plaintiffs seek, Plaintiffs fail to make any showing that the production of documents from November 1, 2017 forward will not adequately address all of these issues.  Defendants are not obligated to undertake the burden, effort, and significant expense of reviewing and producing documents that are unlikely to yield relevant information.

<u>**Search Terms**</u>

Attached as Exhibits B-E are the current set of search term hit reports, based on the latest set of documents that have been collected.

- Exhibit B shows hits on all Elastos Google email and Google drive documents in the U.S.
- Exhibit C shows hits on all non-Elastos documents in the U.S.
- Exhibit D shows hits on all Elastos Tencent documents in China
- Exhibit E shows hits on all non-Elastos documents in China

---

[6] https://www.cyberrepublic.org/whitepaper



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 12

As explained above, we are continuing to collect and process documents in both China and the U.S.  As a result, such documents are not included in the attached hit reports, though these reports represent the vast majority of the documents that Defendants are able to collect.

We confirm that we have applied search terms to all of the documents that we have collected, as they have been described above.  We have also OCRed all documents, and are investigating if there are documents that do not yield extracted text after the OCR process.

While the vast majority of the documents from the Google server are from after the November 1, 2017 date cutoff, some documents from Google shared drives predate November 1, 2017 and thus are not subject to review.  If a document has no metadata date field, we will review it for production.

To date, we have not received any proposed search terms from Plaintiffs, despite our request in our April 13 Letter.  Please provide any such terms as soon as possible so that we can consider whether any such terms should be used.  We note, however, that Defendants' own search terms (created without any input from Plaintiffs) hit on approximately 280,000 documents, and that further documents not covered by these hit reports continue to be collected and processed.  This both demonstrates Defendants' continuing good faith in collecting, reviewing, and producing responsive documents, as well as the limited need to add additional search terms.

## Responsiveness Review

As we said in our April 13 Letter, "if a document hits on a search term and is relevant to Elastos, ELA Tokens, or any other relevant aspect of this case, we will produce it unless it is protected by the attorney-client, work product, or other applicable privilege."  That statement does not require further clarification.  Defendants do not agree with your unilateral assertion that "[a]mong your initial eighteen searches, the only two that could have a false hit are Search 13 (App*) and Search 16 (Vot*)."  Neither party has any interest in the production of documents that, though they may hit on any of Defendants' search terms, are not relevant to any aspect of this case; those documents will not be produced.  To be clear, Defendants will only withhold or redact documents on the basis of a valid, recognized privilege or aspect of Chinese law, and will record the information from those documents on a privilege log consistent with the ESI protocol signed by both parties.

Sincerely,


/s/ Zachary Zwillinger

Zachary Zwillinger
for PAUL HASTINGS LLP



Bleichmar Fonti & Auld LLP
Raiti, PLLC
May 4, 2022
Page 13


cc:      George Bauer
         Javier Bleichmar
         Warren Raiti
         Ken Herzinger
         Carl Hudson
         Erin Zatlin

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MARK OWEN and JAMES WANDLING, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   -against-<br><br>ELASTOS FOUNDATION, FENG HAN, and RONG CHEN,<br><br>       Defendants. | Case No. 1:19-cv-5462-GHW |

---

### DEFENDANTS' AMENDED JOINT SET OF OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR DOCUMENTS

Defendants Elastos Foundation, Feng Han, and Rong Chen ("Defendants") hereby respond to Plaintiffs Mark Owen and James Wandling's (collectively, "Plaintiffs") First Requests for Documents (the "Requests" and each a "Request") as follows:

### GENERAL OBJECTIONS

Defendants incorporate the following General Objections into each of their responses to these Requests.  Each specific response is limited by these General Objections.

1.   Defendants object to the Definitions in the Request to the extent they are vague, ambiguous, overly broad, unduly burdensome, not susceptible to a reasonable interpretation, and fail to describe the information sought with particularity.  Defendants will make a good faith effort to interpret and respond to Plaintiffs' Requests, but should in no way lead to the prejudice of Defendants in relation to further discovery, research, and analysis.

2.      Defendants object to each Request to the extent each Request calls for production of documents or information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege or protective doctrine.

3.      Defendants object to each Request to the extent that each Request seeks information or documents that are readily available from public sources.

4.      Defendants object to each Request to the extent that each Request seeks information or documents not within the possession, custody or control of Defendants or purports to impose upon Defendants a duty to produce information or documents from individuals or entities that are not under Defendants' possession, custody or control.

5.      Defendants object to each Request and instruction to the extent that each Request or instruction imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure.

6.      Defendants object to each Request and instruction to the extent that each Request or instruction imposes obligations on Defendants that would require Defendants to violate Chinese law, including but not limited to the PRC Personal Information Protection Law; PRC Law on Guarding State Secrets, first released in 1988; the Interim Provisions on the Administration of Secret Classification of State Secrets released in 2014; certain provisions under the PRC Criminal Law issued in 1979; Interpretation of the Supreme People's Court on Several Issues Concerning the Application of Law for Trial of Cases of Stealing, Buying, or Unlawfully Supplying State Secrets or Intelligence for Entities outside of the Territory of China issued in 2001; and PRC Data Security Law (collectively, "Chinese Law").  Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

7.      Nothing contained in any response herein shall be deemed to be an admission, concession or waiver by Defendants as to the existence of any "fact" set forth or assumed by any such Request.

8.      Defendants expressly preserve any and all objections based on relevance, materiality, competence, privilege, immunity from disclosure, admissibility or other grounds.

9.      Subject to and without waiving these foregoing General Objections, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of any relevant, non-privileged documents in their possession, custody, or control, and regarding the entry of a mutually agreed-upon protective order and ESI protocol to be entered also by the Court.

## OBJECTIONS TO CERTAIN DEFINITIONS

1.      Defendants object to Plaintiffs' definition of "Chen" as overly broad, vague, and ambiguous.  Defendants will interpret "Chen" to mean Defendant Rong Chen.

2.      Defendants object to Plaintiffs' definition of "ChinaWise" as overly broad, vague and ambiguous.  Defendants will interpret "ChinaWise" to mean the business consulting firm ChinaWise.

3.      Defendants object to Plaintiffs' definition of "Correspondence" to the extent that it calls for production of documents that are not in the possession, custody, or control of Defendants.

4.      Defendants object to Plaintiffs' definition of "Cyber Republic" to the extent it implies that Plaintiffs' definition of this term is necessarily coextensive with Defendants' use of the term Cyber Republic in their Answers, as this would misstate these documents.

5.      Defendants object to Plaintiffs' definition of "Defendant" as overly broad, vague, and ambiguous.  Defendants will interpret "Defendant" to mean the defendants named in Plaintiffs' Amended Complaint filed in this Action on July 29, 2020 (Dkt. #68), and consistent with Defendants' interpretation of the terms describing each of those defendants in these responses and objections.

6.      Defendants object to Plaintiffs' definition of "ELA Tokens" to the extent it implies that Plaintiffs' definition of this term is necessarily coextensive with Defendants' use of the term ELA Tokens in their Answers, as this would misstate these documents.

7.      Defendants object to Plaintiffs' definition of "Elastos" to the extent it implies that Plaintiffs' definition of this term is necessarily coextensive with Defendants' use of the term Elastos in their Answers, as this would misstate these documents.  To the extent that this definition assumes Defendants' control over the Cyber Republic or Elastos Ecosystem, Defendants further object to Plaintiffs' definition of the term "Elastos" in that it assumes facts not in evidence.  Defendant will interpret "Elastos" to mean Defendant Elastos Foundation.

8.       Defendants object to Plaintiffs' definition of "Elastos Blockchain" to the extent it implies that Plaintiffs' definition of this term is necessarily coextensive with Defendants' use of the term Elastos Blockchain in their Answers, as this would misstate these documents.

9.      Plaintiffs' definition of "Han" appears to mistakenly define "Han" as Defendant Rong Chen.  Assuming Plaintiff intends to define "Han" similarly to how it defines "Chen," Defendants object to Plaintiffs' definition of "Han" as overly broad, vague, and ambiguous. Defendants will interpret "Han" to mean Defendant Feng Han.

10.      Defendants object to Plaintiffs' definition of "ICO" to the extent that it assumes facts not in evidence.

11.     Defendants object to Plaintiffs' definition of "Li" as overly broad, vague, and ambiguous.  Defendants will interpret "Li" to mean Fay Li.

12.     Defendants object to Plaintiffs' definition of "Lock-In Program" to the extent that it assumes facts not in evidence.

13.     Defendants object to Plaintiffs' definition of "Text Messages" to the extent that it calls for production of documents that are not in the possession, custody, or control of Defendants.

14.     Defendants object to Plaintiffs' definitions of "You" and "Your" to the extent they assume Defendants' acceptance of Plaintiffs definitions of "Defendant" and of the terms describing each defendant.  Defendant will interpret "You" and "Your" consistent with their interpretation of "Defendant" and of the terms describing each defendant as described in these objections and responses.

## OBJECTIONS TO INSTRUCTIONS

1.     Defendants object to Plaintiffs' second instruction to the extent that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure, or that it would require Defendants to violate Chinese Law.

2.     Defendants object to Plaintiffs' fourth instruction to the extent that it that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to Plaintiffs' fourth instruction on the grounds that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure, or that it would require Defendants to violate Chinese Law.

3.     Defendants object to Plaintiffs' fifth instruction on the grounds that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules

of Civil Procedure, or that it would require Defendants to violate Chinese Law.  Defendants will meet and confer with counsel for Plaintiffs, at a mutually agreeable date and time, regarding the entry of a mutually agreed-upon ESI protocol entered by the Court.

4.      Defendants object to Plaintiffs' sixth instruction on the grounds that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure, or that it would require Defendants to violate Chinese Law.  Defendants will meet and confer with counsel for Plaintiffs, at a mutually agreeable date and time, regarding the entry of a mutually agreed-upon ESI protocol entered by the Court.

5.      Defendants object to Plaintiffs' seventh instruction to the extent that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure, or that it would require Defendants to violate Chinese Law.

6.      Defendants object to Plaintiffs' eighth instruction on the grounds that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure, or that it would require Defendants to violate Chinese Law.

7.      Defendants object to Plaintiffs' ninth instruction on the grounds that it imposes obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure, or that it would require Defendants to violate Chinese Law.  Defendants will meet and confer with counsel for Plaintiffs, at a mutually agreeable date and time, regarding the entry of a mutually agreed-upon ESI protocol entered by the Court.

## OBJECTIONS TO PURPORTED RELEVANT TIME PERIOD

1.      Defendants object to the stated time period as overbroad.  Subject to and without waiver of the foregoing General Objections and objections to Definitions and Instructions,

Defendants will produce documents from November 1, 2017 through the date of their production.

## SPECIFIC OBJECTIONS AND RESPONSES

DOCUMENT REQUEST NO. 1:

All Documents and Communications (without any time limitation) concerning Your development and marketing of the Elastos Blockchain.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 1:

Defendants object to this Request on the grounds that it is vague and ambiguous as to the phrase "development and marketing." Defendants further object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 2:

All Documents and Communications (without any time limitation) concerning Your development, marketing, and/or sale of ELA Tokens.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 2:

Defendants object to this Request on the grounds that it is vague and ambiguous as to "marketing." Defendants further object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 3:

All Documents and Communications concerning any interaction with any regulatory authority, including without limitation any self-regulatory organizations, governmental entities, and/or digital asset exchanges, regarding Elastos, the Elastos Blockchain, ELA Tokens, the ICO, the Lock-In Program, and/or the listing of ELA Tokens on a secondary market.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 3:

Defendants object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 4:

All Documents and Communications concerning whether ELA Tokens pass the "Howey Test," including, without limitation, as referenced in Paragraph 82 of the Complaint and/or as described in the Defendants' Answer (*see, e.g.*, ECF No. 95 p.2 ¶1).

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 4:

Defendants object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request on the grounds that that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 5:

All marketing or promotional materials concerning Elastos and/or ELA Tokens, including, but not limited to, advertisements, social media posts, white papers, prospectuses, and offering materials.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 5:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that the information sought is publicly available and therefore equally accessible to Plaintiff.  Defendants further object to this Request on the grounds that it is vague and ambiguous as to the phrase "marketing or promotional materials."  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 6:

All Documents and Communications concerning the English language White Paper published by Elastos as referenced in Paragraph 39 of the Complaint.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 6:

Defendants object to this Request to the extent that the information sought is publicly available and therefore equally accessible to Plaintiff.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 7:

All Documents and Communications concerning Defendants' publications or statements in connection with Elastos, the Elastos Blockchain, ELA Tokens, the ICO, the Lock-In Program, and/or the listing of the ELA Tokens on a secondary market, including, but not limited to, all Documents and Communications concerning:

a.    The Elastos "meetup" in Silicon Valley on or about November 28, 2017 (¶29);

b.    The Blockchain Expo North America in Santa Clarita, California on November 29, 2017 (¶30);

c.    The "San Francisco launch meetup" held by Elastos on November 30, 2017 (¶31);

d.    The "meetup" at the offices of Deloitte on or about December 9, 2017 (¶32);

e.      The responses by Elastos to questions on Steemit.com on December 24, 2017 (¶33);

f.      The post titled "An Introduction to Elastos" posted by Elastos on Medium.com on or around December 26, 2017 (¶34);

g.      The November 2017 interview of Rong Chen (¶35);

h.      The publication regarding "Frequently Asked Questions" on Medium.com on or about December 27, 2017 (¶36);

i.      The publication on Bitcointalk.org in or around December 27, 2017 (¶37);

j.      The press release published by Elastos titled, "Elastos ICO Offers a Cross-Platform Operating System and Public Blockchain Designed for a Smart Economy" in December 2017 (¶38);

k.      "The NEO News Today Podcast" in which Chen discussed Elastos and has a listed date of January 1, 2018 (¶41);

l.      The "Elastos Founder's Beer Meetup" scheduled for January 21, 2018 (¶50);

m.      The video titled "Elastos (ELA) SmartWeb | Best ICO January 2018" featuring interviews with Defendants Chen and Han (¶54);

n.      The publication concerning "Token Sale—Reminders" on Medium.com on or around January 16, 2018 (¶55);

o.      Han's attendance and speech at CryptoCon 2018 on February 15, 2018 in Chicago, Illinois (¶¶71, 73, 74);

p.      Han's lecture about Blockchain and Elastos at Harvard on March 13, 2018 (¶79);

q.      Han's speech at the Block Invest Summit 2018 in Cambridge, Massachusetts on March 17, 2018 (¶80);

r.      Chen's discussion with Huoxing Financial on March 19, 2018, the transcript of
        which was posted to Medium.com on April 2, 2018 (¶82);

s.      Han's visit to New York University on or around April 4, 2018 (¶83);

t.      Han's visit to Johns Hopkins University on or around April 7, 2018 (¶84);

u.      Han's visit to George Washington University on or around April 8, 2017 (¶85);

v.      Han's appearance at Harvard's AI and Blockchain Forum on April 15, 2018
        (¶86);

w.      The post titled "Elastos Communication Plan by SF Team" posted on
        Medium.com on or around April 17, 2018 (¶87);

x.      Han's appearance and speech at the 2nd annual fintech conference at Fordham
        University on or around April 24, 2018 (¶88);

y.      Han's appearance and speech in Boston at the "Future of Blockchain: A Talk with
        Elastos and Nebulas" on or around April 26, 2018 (¶89);

z.      The 5th Annual "Omaha Summit" from on or around May 4, 2018 through May
        6, 2018 (¶90);

aa.     Han's appearance and discussions at MIT on or around May 3, 2018 and May 4,
        2018 (¶¶91, 92);

bb.     Elastos' Developer Meeting in San Francisco on May 8, 2018 (¶93);

cc.     Han's appearance and speech at a "meetup" at Fordham University on May 12,
        2018 (¶95);

dd.     Meetings or correspondence between Defendants and Congressman Ro Khanna,
        including on or about May 21, 2018 (¶97);

ee.   Meetings or correspondence between Han and former Federal Reserve Chairman Alan Greenspan, including on or about May 24, 2018 (¶98);

ff.   Meetings or correspondence between and Dr. Paul Sheard, Standard & Poor Executive Vice President, including on or about June 19, 2018 (¶101);

gg.   Chen's appearance and/or interview on the show "Crypto Trader" on or about July 13, 2018 (¶102);

hh.   Chen's appearance and/or interview on the podcast "Crypto 101" (¶106); and

ii.   The "Q&A" posted on Medium.com in or around April 2, 2018 (¶124).

<u>OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 7:</u>

Defendants object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that the information sought is publicly available and therefore equally accessible to Plaintiff. Defendants further object to this Request on the grounds that it is vague and ambiguous as to the terms "publications" and "statements." Defendants further object to this Request to the extent that it assumes as true statements and descriptions of events in Plaintiffs' Complaint, which are not in evidence. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and

any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 8:

All Documents and Communications concerning Defendants' activities on social media platforms regarding Elastos, the Elastos Blockchain, ELA Tokens, the ICO, the Lock-In Program, and/or the listing of ELA Tokens on a secondary market, including, but not limited to, Reddit, Facebook, Twitter, Telegram, Snapchat, TikTok, YouTube, Instagram, WeChat, and Sina Weibo.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 8:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it is unduly burdensome and oppressive.  Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that the information sought is publicly available and therefore equally accessible to Plaintiff.  Defendants further object to this Request to the extent that it calls for production of documents that are not in the possession, custody, or control of Defendants.   Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to

confer with Plaintiffs does not constitute an agreement to produce any particular documents, and

any production of documents will be made subject to the entry of a mutually agreed-upon

protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under

both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 9:

All Documents and Communications concerning the ICO, including, but not limited to,

offering materials, communications with actual or potential ELA Token purchasers, financial

results, transaction records, internal reporting or analyses, registration lists, purchase lists, and

agreements with purchasers.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 9:

Defendants object to this Request on the grounds that it is overly broad as to time and

scope.  Defendants further object to this Request to the extent that it seeks information protected

by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object

to this Request to the extent that the information sought is publicly available and therefore

equally accessible to Plaintiff.  Defendants further object to this Request to the extent that it calls

for production of documents that are not in the possession, custody, or control of Defendants.

Defendants further object to this Request to the extent that it would require Defendants to violate

Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it

understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning

the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to

confer with Plaintiffs does not constitute an agreement to produce any particular documents, and

any production of documents will be made subject to the entry of a mutually agreed-upon

protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under

both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 10:

     All Documents and Communications concerning the Lock-In Program, including, but not

limited to, offering materials, communications with actual or potential ELA Token purchasers,

financial results, transaction records, internal reporting or analyses, registration lists, purchase

lists, and agreements with purchasers.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 10:

     Defendants object to this Request on the grounds that it is overly broad as to time and

scope.  Defendants further object to this Request to the extent that it seeks information protected

by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object

to this Request to the extent that the information sought is publicly available and therefore

equally accessible to Plaintiff.  Defendants further object to this Request to the extent that it calls

for production of documents that are not in the possession, custody, or control of Defendants.

Defendants further object to this Request to the extent that it would require Defendants to violate

Chinese Law.

     Subject to and without in any way waiving the foregoing objections, and to the extent it

understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning

the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to

confer with Plaintiffs does not constitute an agreement to produce any particular documents, and

any production of documents will be made subject to the entry of a mutually agreed-upon

protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under

both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 11:

All Documents and Communications concerning the actual or potential listing of ELA

Tokens on any digital asset exchange, including, but not limited to, KuCoin, Houbi Global,

Bittrex Global, CoinEx, StealthEX, SimpleSwap, Tokswap, and Uniswap.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 11:

Defendants object to this Request on the grounds that it is overly broad as to time and

scope.  Defendants further object to this Request to the extent it seeks information protected by

the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to

this Request on the grounds that the information sought is publicly available and therefore

equally accessible to Plaintiff.  Defendants further object to this Request to the extent that it calls

for production of documents that are not in the possession, custody, or control of Defendants.

Defendants further object to this Request to the extent that it would require Defendants to violate

Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it

understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning

the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to

confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 12:

All Documents and Communications concerning ChinaWise.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 12:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it assumes facts not in evidence.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 13:

All Documents and Communications concerning the "Cyber Republic" community, as described in the Defendants' Answer (*see, e.g.,* ECF No. 95 ¶6), including, but not limited to, white papers, promotional materials, membership records, governing documents, policies and procedures, internal reporting and analyses, and/or transaction records.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 13:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this Request to the extent that the information sought is publicly available and therefore equally accessible to Plaintiff.  Defendants further objects to this Request to the extent that it calls for production of documents that are not in the possession, custody, or control of Defendants.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 14:

All Documents and Communications concerning the "Elastos Ecosystem," as described in the Defendants' Answer (*see, e.g.,* ECF No. 95 ¶6), including, but not limited to, white papers, promotional materials, membership records, governing documents, policies and procedures, internal reporting and analyses, and/or transaction records.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 14:

Defendants object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent that the information sought is publicly available and therefore equally accessible to Plaintiff. Defendants further objects to this Request to the extent that it calls for production of documents that are not in the possession, custody, or control of Defendants. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 15:

All Text Messages concerning Elastos, the Elastos Blockchain, ELA Tokens, the ICO, the Lock-In Program, and/or the listing of ELA Tokens on a secondary market.

OBJECTIONS AND REZPONSE TO DOCUMENT REQUEST NO. 15:

Defendants object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that it seeks information pertaining to individuals, the disclosure of which would constitute an unwarranted invasion of the affected individuals' constitutional, statutory and/or common law rights to personal privacy and confidentiality. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 16:

All Documents and Communications concerning the actual or potential taxation and/or tax implications regarding the purchase or sale of ELA Tokens.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 16:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this Request to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 17:

All Documents and Communications, including without limitation the books and records of Elastos, concerning Your actual or forecasted financial results.  These Documents and

Communications shall include, but are not limited to, those reflecting Your actual and forecasted revenues, profits, margins, sales, or losses generated by ELA Tokens, the ICO, and the Lock-In Program, respectively.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 17:

Defendants object to this Request on the grounds that it is overly broad as to time and scope. Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request. Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court. In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 18:

All Documents and Communications concerning Your Document and ESI retention or destruction policies, including, but not limited to, any actions taken or procedure for storage, transmission, retention, archiving, retrieval, maintenance, and back-up of all ESI.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 18:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 19:

All Documents and Communications concerning any compensation, consideration, or other benefits actually or possibly paid or owed by You to Chen, Han, Li, or any other employees responsible for the sale or marketing of ELA Tokens.  These Documents and Communications shall include, but not be limited to, those concerning any actual or potential compensation related to the ICO or the development, marketing, pricing, sales, revenues, or profits related to ELA Tokens.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 19:

Defendants object to this Request on the grounds that it is vague and ambiguous as to "possibly."  Defendants further object to this Request on the grounds that it is overly broad as to

time and scope.  Defendants further object to this Request on the grounds that it is unduly

burdensome and oppressive.  Defendants further object to this Request on the grounds that it

seeks information that is not relevant to the subject matter of this litigation and is not reasonably

calculated to lead to the discovery of admissible evidence.  Defendants further object to this

Request to the extent that it seeks information protected by the attorney-client privilege and/or

attorney work product doctrine.  Defendants further object to this Request to the extent that it

seeks information pertaining to individuals, the disclosure of which would constitute an

unwarranted invasion of the affected individuals' constitutional, statutory and/or common law

rights to personal privacy and confidentiality.  Defendants further object to this Request to the

extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it

understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning

the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to

confer with Plaintiffs does not constitute an agreement to produce any particular documents, and

any production of documents will be made subject to the entry of a mutually agreed-upon

protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under

both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 20:

All Documents and Communications concerning any actual or potential financial interest

in Elastos and/or ELA Tokens by Chen, Han, and/or Li, any members of their immediate

families, friends, or any entity over which any of them (or any Elastos officer or director) had or

has control or had or has any interest.  These Documents shall include, but not be limited to those sufficient to reflect the extent of any such interest and to show all such purchases, sales, holdings, gains and/or losses.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 20:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it seeks information pertaining to individuals, the disclosure of which would constitute an unwarranted invasion of the affected individuals' constitutional, statutory and/or common law rights to personal privacy and confidentiality.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 21:

Documents and Communications, including organizational charts and personnel directories, sufficient to show Your organizational structure, including:

a)    the identity of Your parent companies, subsidiaries, affiliates, and joint ventures;

b)    the organization of any division, department, unit, or subdivision of Your

      company that has any role or responsibilities concerning the development,

      marketing, pricing, sales, revenues and/or profits related to ELA Tokens;

c)    the identity and reporting relationships of any officers, directors, employees,

      committees, subcommittees, or working groups that have any role or

      responsibilities concerning the development, marketing, pricing, sales, revenues

      and/or profits of ELA Tokens;

d)    the identity and reporting relationships of any officers, directors, employees,

      committees, subcommittees, or working groups that have any role or

      responsibilities for communications and negotiations with third parties concerning

      ELA Tokens;

e)    the identity and reporting relationships of any officers, directors, employees,

      committees, subcommittees, or working groups that have any role or

      responsibilities for communications and negotiations with any digital asset

      exchange;

f)    the identity and reporting relationships of any officers, directors, employees,

      committees, subcommittees, or working groups that have any role or

      responsibilities for regulatory and/or legal compliance regarding ELA Tokens, the

      ICO, the Lock-In Program, and/or the listing of ELA Tokens on a secondary

      market;

g)    the identity and reporting relationships of Your information technology or

      information services departments or divisions, including their members' names,

Your outsourced information technology services (including with respect to data storage for Your ELA Token data), and any temporary consultants for information technology services.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 21:

Defendants object to this request to the extent that it assumes facts not in evidence. Defendants further object to this Request to the extent that it calls for production of documents that are not in the possession, custody, or control of Defendants.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 22:

For each of Your employees with any responsibility for development, marketing, pricing, sales, revenues and/or profits of Elastos and/or ELA Token:

a)      all calendars, appointment books, and appointment notes;

b)      all trip and travel logs;

c)      all time sheets or records;

d)      all expense vouchers or expense reports and supporting documents;

e)      all telephone number logs, directories, contact management systems, notebooks, and Rolodex-type contact files;

f)      all paper or electronic journals or notebooks used to memorialize work activities, including but not limited to, meetings and conference calls;

g)      all bills, statements, records, databases, and logs concerning the employee's office, home, cellular, or other mobile or landline telephone(s), including logs of all calls and text messages sent or received; and

h)      documents sufficient to identify all email addresses, social or industrial/business web-based media accounts (*e.g.*, Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster), cellular phone numbers, office phone, and facsimile numbers, or other telephone numbers assigned by You to each such employee or used by the employee in connection with his or her employment by You.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 22:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it is unduly burdensome and oppressive.  Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object to this to the extent that it seeks information pertaining to individuals, the disclosure of which would constitute an unwarranted invasion of the affected individuals' constitutional, statutory and/or common law rights to personal privacy and confidentiality.  Defendants further object to this Request to the extent that it calls for production of documents that are not in the possession, custody, or control

of Defendants.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 23:

All Documents and Communications concerning what, if any, actions You took in connection with the retention and preservation of Your ESI in connection with this Action. These Documents and Communications shall include, but not be limited to, those concerning (i) any litigation hold or preservation notices or (ii) any Documents or ESI that have been lost or destroyed.

OBJECTIONS TO DOCUMENT REQUEST NO. 23:

Defendants object to this Request on the grounds that it that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

DOCUMENT REQUEST NO. 24:

Documents and Communications sufficient to show Your policies and procedures concerning the use of instant messaging services or applications, social media, and mobile devices, including phones, PDAs, and tablets by Your personnel, including any "bring your own device" or "bring your own technology" policies.

OBJECTIONS TO DOCUMENT REQUEST NO. 24:

Defendants object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

DOCUMENT REQUEST NO. 25:

All Documents and Communications that You or Your counsel intend to rely upon, seek to introduce into evidence, or otherwise refer to in connection with class certification submissions or proceedings in this Action, or to establish a defense.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 25:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it is premature in that it demands identification of evidence prior to the completion of discovery.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 26:

All Documents and Communications concerning the information contained or referred to in any Defendants' Initial Disclosures provided pursuant to Federal Rule of Civil Procedure 26(a)(1).

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 26:

Defendants object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 27:

All Documents and Communications concerning any policies of insurance issued to You or to any other Person that may be used to satisfy all or part of any judgment in this Action rendered against You personally, or to indemnify or reimburse any payments made to satisfy any judgment rendered against You personally, including, but not limited to, Documents sufficient to establish whether the carriers of any such insurance policies have agreed to provide coverage.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 27:

Defendants object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants note that there are no such insurance policies responsive to this Request.

DOCUMENT REQUEST NO. 28:

To the extent not requested above, all Documents and Communications (without any time limitation) supporting, substantiating, undermining, contradicting, or concerning any of the Affirmative Defenses set forth in Your Answer.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 28:

Defendants object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 29:

All Documents obtained by the Defendants from any non-party concerning the subject matter of this Action, including, but not limited to, Documents obtained pursuant to subpoenas, voluntary productions, or any other process or procedure.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 29:

Defendants object to this Request on the grounds that it is overly broad as to time and scope.  Defendants further object to this Request on the grounds that it is unduly burdensome and oppressive.  Defendants object to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants object to this Request to the extent that it seeks

information protected by the attorney-client privilege and/or attorney work product doctrine. Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged documents in their possession, custody, or control responsive to this Request.  Any agreement to confer with Plaintiffs does not constitute an agreement to produce any particular documents, and any production of documents will be made subject to the entry of a mutually agreed-upon protective order and ESI protocol entered by the Court.  In producing documents responsive to this Request, Defendants will take all reasonable steps to comply with their obligations under both the Federal Rules of Civil Procedure and Chinese Law.

DOCUMENT REQUEST NO. 30:

To the extent not requested above, all Documents and Communications of which you are aware that are relevant to the claims or defenses in this Action.  This Request seeks all documents without time limitation.

OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 30:

Defendants object to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  Defendants further object to this Request to the extent that it would require Defendants to violate Chinese Law.

Subject to and without in any way waiving the foregoing objections, and to the extent it understands this Request, Defendants will meet and confer with counsel for Plaintiffs concerning the scope of any production, at a mutually agreeable date and time, of relevant, non-privileged

documents in their possession, custody, or control responsive to this Request.  Any agreement to

confer with Plaintiffs does not constitute an agreement to produce any particular documents, and

any production of documents will be made subject to the entry of a mutually agreed-upon

protective order and ESI protocol entered by the Court.  In producing documents responsive to

this Request, Defendants will take all reasonable steps to comply with their obligations under

both the Federal Rules of Civil Procedure and Chinese Law.


Dated: May 4, 2022                           By:     */s/ Kenneth P. Herzinger*
                                          Kenneth P. Herzinger
                                          PAUL HASTINGS LLP
                                          101 California Street
                                          Forty-Eighth Floor
                                          San Francisco, California 94111
                                          Telephone: 1(415) 856-7000
                                          kennethherzinger@paulhastings.com

                                          Zachary Zwillinger
                                          200 Park Avenue
                                          New York, New York 10166
                                          Telephone:  1(212) 318-6000
                                          zacharyzwillinger@paulhastings.com

                                          *Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 4, 2022, I served a copy of Defendants' Amended Joint First

Set of Requests for Production of Documents to All Plaintiffs via electronic email upon the

following counsel for plaintiffs:

Javier Bleichmar
Benjamin Burry
George Bauer
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com
bburry@bfalaw.com
gbauer@bfalaw.com

Warren Raiti
1345 Avenue of the Americas, 33rd Floor
New York, New York 10105
Telephone: (212) 590-2328
wraiti@raitipllc.com

Dated: May 4, 2022

/s/ *Zachary Zwillinger*
_____
Zachary Zwillinger
Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Telephone:  1(212) 318-6000
zacharyzwillinger@paulhastings.com

*Attorneys for Defendants*

Exhibit B

| Search Set | Elastos Data |
|---|---|
| Date Run | 4-May-22 |
| Custodians | See Custodian List |
| Total Documents | 313,935 |
| Total Records Searched (from 2017.11.01) | 306,337 |
| Hits | 130,845 |
| Hits Percentage of Total | 42.7% |
| Documents in Families | 156,913 |
| Family Percentage of Total | 51.2% |

| Custodian List | Hits + Family |
|---|---|
| Liu, Clarence | 33,219 |
| Lee, Ben | 28,068 |
| Lei, Leo | 24,564 |
| Yu, Nan | 16,160 |
| Elastos (4 mbox custodians) | 13,353 |
| Chen, Rong | 9,526 |
| Worswage, Zach | 6,987 |
| Su, Yipeng | 5,764 |
| Feng, Han | 5,635 |
| Hu, Hongjie | 3,838 |
| Yuan, May | 3,496 |
| Zhu, Rebecca | 3,230 |
| Cai, Simon | 1,880 |
| Zhu, Julie | 460 |
| Li, Fay | 77 |
| Zhang, Kevin | 58 |
| Sjon, Song | 8 |

**Search Result Notes:**

Hits are number of documents hitting the keyword / key phrase

Families include the family members to the keyword hit document i.e. emails plus all attachments

Hits greater than 1,000 are highlighted in red

Total Records: 130,845 | 156,913

| Search Count | Search Terms | Hits | Families | Unique Hits | Comments |
|---|---|---|---|---|---|
| Search 001 | initial coin offering OR 首次代币发行 | 329 | 940 | 1 | |
| Search 002 | ICO | 3,622 | 6,496 | 576 | |
| Search 003 | lock in OR lock-in OR 锁定 OR 禁售 | 6,325 | 10,547 | 1,054 | |
| Search 004 | secondary market OR 二级市场 | 679 | 1,550 | 23 | |
| Search 005 | white paper OR whitepaper OR white W/3 paper OR 白皮书 | 1,649 | 2,860 | 309 | |
| Search 006 | Mark W/3 own OR (拥有 OR 马切) W/3 股买) | 377 | 555 | 35 | |
| Search 007 | Wanding OR 旺鼎基金 OR 王鼎基本 OR 汪鼎基本 | 166 | 603 | 14 | |
| Search 008 | Cyber republic OR cyber republic OR (cyber W/3 republic) OR OR 网络共和国 | 52,490 | 66,497 | 28,375 | |
| Search 009 | Decentralit* OR 去中心化 | 13,523 | 20,036 | 719 | |
| Search 010 | DAO OR 去中心组织自治 OR 分布式自治组织 | 3,182 | 4,952 | 130 | |
| Search 011 | Ecosystem* OR 生态系统 | 11,856 | 16,783 | 534 | |
| Search 012 | DApp* | 7,602 | 12,938 | 585 | |
| Search 013 | App* OR 应用程序 | 61,556 | 83,769 | 24,203 | |
| Search 014 | Commun* OR 社区 OR 团体 | 42,171 | 60,441 | 10,478 | |
| Search 015 | Council* OR 委员会 OR 理事会 OR 顾问 | 14,133 | 23,658 | 3,969 | |
| Search 016 | Vot* OR 投票 OR 表决 OR 选举 | 14,405 | 23,280 | 4,063 | |
| Search 017 | KYC or "know your customer" OR 实名 OR 身份认以 OR 了解你的客户[?] | 2,654 | 5,242 | 491 | |
| Search 018 | Socure | 61 | 447 | 15 | |

Exhibit C

**Search Result Notes:**

Hits are number of documents hitting the keyword / key phrase
Families include the family members to the keyword hit document i.e. emails plus all attachments
Hits greater than 1,000 are highlighted in red

| Custodian List | Hits + Family |
| --- | --- |
| Chen, Rong | 51,661 |
| Feng, Han | 28,992 |
| Wansavage, Zach | 7,161 |

| Search Set | Non-Elastos Data |
| --- | --- |
| Date Run | 4-May-22 |
| Custodians | See Custodian List |
| Total Documents | 122,002 |
| Total Records Searched (from 2017.11.01) | 116,509 |
| Hits | 21,126 |
| Hits Percentage of Total | 18.1% |
| Documents in Families | 87,814 |
| Family Percentage of Total | 75.4% |

| Search Count | Search Terms | Hits (21,126) | Families (87,814) | Unique Hits | Comments |
| --- | --- | --- | --- | --- | --- |
| Search 001 | ((Elastos OR ELA OR 亦来云) AND (initial coin offering OR 首次代币发行)) | 114 | 2,846 | - | |
| Search 002 | ((Elastos OR ELA OR 亦来云) AND ICO) | 1,618 | 38,353 | 160 | |
| Search 003 | ((Elastos OR ELA OR 亦来云) AND (lock in OR lockin OR 锁定 OR 禁售期)) | 2,299 | 32,537 | 154 | |
| Search 004 | ((Elastos OR ELA OR 亦来云) AND (secondary market OR 二级市场)) | 308 | 19,766 | 4 | |
| Search 005 | ((Elastos OR ELA OR 亦来云) AND (white paper OR whitepaper OR white W/3 paper OR 白皮书)) | 637 | 11,951 | 15 | |
| Search 006 | ((Elastos OR ELA OR 亦来云) AND (Mark W/3 owen OR (马/欧 OR 马可) W/3 欧文)) | 209 | 1,099 | 28 | |
| Search 007 | ((Elastos OR ELA OR 亦来云) AND (Wandling OR 旺德林 OR 王德林 OR 王德林)) | 72 | 582 | - | |
| Search 008 | ((Elastos OR ELA OR 亦来云) AND (Cyberrepublic OR cyber republic OR cyber W/3 republic) OR CR OR 网络共和国)) | 6,122 | 49,070 | 672 | |
| Search 009 | ((Elastos OR ELA OR 亦来云) AND (Decentralz* OR 去中心化)) | 3,275 | 62,720 | 434 | |
| Search 010 | ((Elastos OR ELA OR 亦来云) AND (DAO OR 去中心组织组织 OR 分布自治组织)) | 1,537 | 35,711 | 65 | |
| Search 011 | ((Elastos OR ELA OR 亦来云) AND (Ecosystem* OR 生态系统)) | 3,159 | 48,954 | 229 | |
| Search 012 | ((Elastos OR ELA OR 亦来云) AND Dapp*) | 2,729 | 52,674 | 265 | |
| Search 013 | ((Elastos OR ELA OR 亦来云) AND (App* OR 应用程序)) | 7,421 | 74,489 | 1,870 | |
| Search 014 | ((Elastos OR ELA OR 亦来云) AND (Communit* OR 社区 OR 团体)) | 9,177 | 75,886 | 2,109 | |
| Search 015 | ((Elastos OR ELA OR 亦来云) AND (Council* OR 委员会会 OR 理事会 OR 顾问)) | 2,893 | 59,216 | 524 | |
| Search 016 | ((Elastos OR ELA OR 亦来云) AND (vot* OR 投票 OR 表决 OR 选举)) | 7,734 | 67,525 | 2,791 | |
| Search 017 | ((Elastos OR ELA OR 亦来云) AND (KYC OR "Know your customer" OR 实名 OR 身份认证 OR 了解你的客户)) | 910 | 41,951 | 45 | |
| Search 018 | ((Elastos OR ELA OR 亦来云) AND Socure) | 4 | 8 | | |

Exhibit D

| Search Set | Elastico Data |
|---|---|
| Date Run | 4-May-22 |
| Custodians | See Custodian List |
| Total Documents | 33,322 |
| Total Records Searched (from 2017.11.01) | 27,583 |
| Hits | 10,340 |
| Hits Percentage of Total | 37.5% |
| Documents in Families | 15,453 |
| Family Percentage of Total | 56.0% |

| Custodian List | Hits + Family |
|---|---|
| LI, Ben | 4,606 |
| SONG, Sun | 3,479 |
| YU, Nan | 2,299 |
| LEI, Leo | 1,562 |
| HAN, Sunny | 1,384 |
| CHEN, Rong | 841 |
| HU, Hongjie | 580 |
| YUAN, May | 276 |
| SU, Yipeng | 178 |
| ZHU, Rebecca | 34 |
| CAI, Simon | 14 |
| ZHU, Julie | - |

**Search Result Notes:**

Hits are number of documents hitting the keyword / key phrase

Families include the family members to the keyword hit document i.e. emails plus all attachments

Hits greater than 1,000 are highlighted in red

| Search Count | Search Terms | Hits 10,340 | Families 15,453 | Unique Hits | Comments |
|---|---|---|---|---|---|
| | Total Records: | 10,340 | 15,453 | | |
| Search 001 | initial coin offering OR 首次代币发行 | 10 | 16 | | |
| Search 002 | ICO | 800 | 3,543 | 332 | |
| Search 003 | lock* OR lockus OR 锁住 OR 监管 | 2,221 | 463 | 94 | |
| Search 004 | secondary market OR 二级市场 | 28 | 74 | 9 | |
| Search 005 | white paper OR whitepaper OR white W/3 paper OR 白皮书 | 114 | 205 | 37 | |
| Search 006 | Mark W/3 owen OR (马克 OR 马可) W/3 欧文) | | | | |
| Search 007 | Wanding OR 旺盛 OR 万盛 OR 王盛 OR 注册码 | 19 | 67 | 1 | |
| Search 008 | Cyberrepublic OR cyber republic OR (cyber W/3 republic) OR OR 网络共和国 | 92 | 4,200 | 17 | |
| Search 009 | Decentral* OR 去中心化 | 415 | 1,394 | 23 | |
| Search 010 | DAO OR 去中心自治组织 OR 分布式自治组织 | 72 | 2,435 | 21 | |
| Search 011 | Ecosystem* OR 生态系统 | 210 | 781 | 22 | |
| Search 012 | Dapp* | 204 | 892 | 26 | |
| Search 013 | App* OR 应用程序 | 7,191 | 11,821 | 5,366 | |
| Search 014 | Communit* OR 社区 OR 社群 OR 团体 | 2,677 | 8,468 | 910 | |
| Search 015 | Counci* OR 委员 OR 理事会 OR 理事会 OR 咨询 | 1,358 | 4,487 | 729 | |
| Search 016 | Vot* OR 投票 OR 表决 OR 投票 | 351 | 3,077 | 88 | |
| Search 017 | KYC or "know your customer" OR 实名 OR 身份认证 OR 了解你的客户 | 376 | 791 | 120 | |
| Search 018 | Secure | 7 | 129 | | |

Exhibit E

**Search Result Notes:**

Hits are number of documents hitting the keyword / key phrase
Families include the family members to the keyword hit document i.e. emails plus all attachments
Hits greater than 1,000 are highlighted in red

| Custodian List | Hits + Family |
|---|---|
| TIAN, May | 13,552 |
| LU, Ben | 7,278 |
| HAN, Sunny | 1,620 |

| Search Set | Non-Elastos Data |
|---|---|
| Date Run | 4-May-22 |
| Custodians | See Custodian List |
| Total Documents | 290,116 |
| Total Records Searched (from 2017.11.01) | 268,049 |
| Hits | 4,668 |
| Hits Percentage of Total | 1.7% |
| Documents in Families | 22,450 |
| Family Percentage of Total | 8.4% |

| | | Total Records: | 4,668 | 22,450 | | |
| Search Count | Search Terms | | Hits | Families | Unique Hits | Comments |
|---|---|---|---|---|---|---|
| Search 001 | (Elastos OR ELA OR 亦来云) AND (initial coin offering OR 首次代币发行) | | 13 | 4,267 | - | |
| Search 002 | (Elastos OR ELA OR 亦来云) AND ICO | | 82 | 12,764 | 5 | |
| Search 003 | (Elastos OR ELA OR 亦来云) AND (lock in OR lockin OR 锁定 OR 禁售期) | | 97 | 15,809 | 9 | |
| Search 004 | (Elastos OR ELA OR 亦来云) AND (secondary market OR 二级市场) | | 66 | 11,943 | 14 | |
| Search 005 | (Elastos OR ELA OR 亦来云) AND (white paper OR whitepaper OR white W/3 paper OR 白皮书) | | 29 | 7,159 | 4 | |
| Search 006 | (Elastos OR ELA OR 亦来云) AND (Mark W/3 owen OR (马克 OR 马可) W/3 欧文) | | 5 | 398 | - | |
| Search 007 | (Elastos OR ELA OR 亦来云) AND (Wandling OR 旺德林 OR 王德林) | | 4 | 398 | - | |
| Search 008 | (Elastos OR ELA OR 亦来云) AND (cyberrepublic OR cyber republic OR cyber W/3 republic) OR CR OR 网络共和国) | | 979 | 15,360 | 205 | |
| Search 009 | (Elastos OR ELA OR 亦来云) AND (Decentraliz* OR 去中心化) | | 494 | 18,561 | 90 | |
| Search 010 | (Elastos OR ELA OR 亦来云) AND (DAO OR 去中心自治组织 OR 分布式自治组织) | | 97 | 14,690 | 9 | |
| Search 011 | (Elastos OR ELA OR 亦来云) AND (Ecosystem* OR 生态系统) | | 217 | 16,063 | 27 | |
| Search 012 | (Elastos OR ELA OR 亦来云) AND Dapp* | | 388 | 16,620 | 52 | |
| Search 013 | (Elastos OR ELA OR 亦来云) AND App* OR 应用程序) | | 1,288 | 21,370 | 633 | |
| Search 014 | (Elastos OR ELA OR 亦来云) AND (Communit* OR 社区 OR 团体) | | 2,515 | 21,500 | 1,246 | |
| Search 015 | (Elastos OR ELA OR 亦来云) AND (Council* OR 委员会 OR 理事会 OR 董事会) | | 1,055 | 20,233 | 318 | |
| Search 016 | (Elastos OR ELA OR 亦来云) AND (vet* OR KYC OR 投票 OR 表决 OR 批准) | | 806 | 19,440 | 264 | |
| Search 017 | (Elastos OR ELA OR 亦来云) AND (KYC OR "know your customer" OR 实名 OR 身份认证 OR 了解你的客户) | | 178 | 17,085 | 29 | |
| Search 018 | (Elastos OR ELA OR 亦来云) AND Socure | | | | | |