# Exhibit 7

M5Q6OWEC

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARK OWEN, et al.,

4                 Plaintiffs,

5           v.                        19 CV 5462(GHW)
                                      Teleconference
6   ELASTOS FOUNDATION, et al.,

7                 Defendants.

8   ------------------------------x
                                      New York, N.Y.
9                                     May 26, 2022
                                      2:00 p.m.
10
    Before:
11
                      HON. GREGORY H. WOODS,
12
                                      District Judge
13
                      APPEARANCES
14
    BLEICHMAR FONTI & AULD LLP
15       Attorneys for Plaintiffs
    BY:  BENJAMIN F. BURRY
16       JAVIER BLEICHMAR

17  PAUL HASTINGS LLP
         Attorneys for Defendants
18  BY:  ZACHARY ZWILLINGER
         KENNETH P. HERZINGER
19

20

21

22

23

24

25
```

M5Q6OWEC

1          THE COURT:  Let me begin by taking appearances from

2     the parties.

3          What I'd like to do is to ask the principal

4     spokesperson for each to identify herself and the members of

5     her team rather than having each lawyer introduce themselves.

6          Let me begin with counsel for plaintiff.  Who's on the

7     line for plaintiff?

8          MR. BURRY:  Good afternoon, your Honor.

9          This is Benjamin Burry, and with me is

10    Javier Bleichmar.

11         THE COURT:  Thank you.  And who's on the line for

12    defendants?

13         MR. HERZINGER:  Good afternoon, your Honor.

14         This is Ken Herzinger, and with me is Zach Zwillinger,

15    and Mr. Zwillinger is going to be doing the speaking on our

16    end, so I'll hand it off to him at this point.

17         THE COURT:  Very good.  Thank you very much.

18         So before we begin with the substance of today's

19    proceeding, I'd like to just lay out some rules for the parties

20    with respect to their conduct during the conference.

21         The first thing I would like to do is remind you this

22    is a public proceeding.  Any member of the public or press is

23    welcome to dial in and audit the conference.  I'm not currently

24    monitoring whether third parties are monitoring the call.

25         Second, please keep the devices on mute at all times

M5Q6OWEC

1    except when you are speaking to me or the representative of a

2    party.

3            Third, please state your name each time that you

4    speak.

5            Fourth, please abide by instructions from our court

6    reporter that are designed to help her do her job.

7            And, finally, I'm ordering that there be no recording

8    or rebroadcast of all or any portion of today's conference.

9            So, counsel, with all of that out of the way, let me

10   turn to the substance of today's proceeding.  I scheduled this

11   to discuss the issues raised in the parties' letter that was

12   submitted to me with respect to a dispute regarding Chinese

13   law.

14           Counsel, I have reviewed the parties' letter.  I look

15   forward to hearing from each of you.  Let me say at the outset

16   that it appears likely that given the nature of the issues

17   presented here that this will be an issue that requires more

18   complete briefing and presentation of additional information in

19   order to resolve it.  That's my expectation coming in, in large

20   part because of the burden on the party resisting discovery on

21   the basis of foreign law to show proof, the nature of those

22   restraints.  That said, it will be helpful for me to hear from

23   you about the grounds for the motion and any opposition to it.

24           But I just wanted to frame the conversation on that

25   expectation now going in, namely it is not apparent to me that

M5Q6OWEC

1    I'm going to be able to resolve it during the course of the

2    conference.  It is not my preference — and my preference would

3    be to resolve it here, and the basis of your letter, it's just

4    not apparent to me that in this instance that is practicable.

5            So let me hear first from counsel for plaintiff.  What

6    would you like to tell me about the anticipated motion to

7    compel?

8            MR. BURRY:  Thank you, your Honor.  This is

9    Benjamin Burry.

10           This is just one issue.  There's really one issue

11   before the Court, which is, can defendants use China's Personal

12   Information Protection Law, the PIPL, to block discovery of

13   documents that they're required to produce under the Federal

14   Rules of Civil Procedure, and we submit based on clear

15   universal precedent that the answer is no.  We're asking the

16   Court to rule that China's PIPL does not trump the federal

17   rules.

18           Just like every other defendant in U.S. litigation,

19   Chinese defendants must produce the responsive documents in

20   their possession, custody, and control, regardless of whether

21   their witnesses want to provide consent to the production to

22   plaintiff.  And, specifically, we're also asking the Court to

23   order defendants to produce the Elastos business documents that

24   they're withholding based on Chinese law, which we know

25   includes Google e-mail and Google Drive data for custodians

M5Q6OWEC

1   like Hao Cheng and Dinghe Hu, which is located in the

2   United States, as well as documents for U.S. residents like

3   Fay Li, Kevin Zhang, and Clarence Liu.

4          The defendants are relying on this PIPL to justify

5   holding two types of documents; first, the documents located in

6   China; and second, documents located anywhere in the world,

7   including the U.S., if they concern a witness who's located in

8   China.

9          And the effect on this case is significant because

10   this implicates, according to defendants, all of the initial

11   custodians that the parties have agreed to, all 19 custodians.

12   In defendants' view, they only need to produce these documents

13   if all the individuals involved provide express written consent

14   to the production of plaintiffs.  And in defendants' view, they

15   do not and cannot even access or review these documents or

16   provide us any kind of log as to their volume or contents.

17   They're saying the documents, under the PIPL, are just

18   completely immune from discovery.  So, in effect, what they're

19   asking for is that every defense witness has a unilateral right

20   to refuse document discovery or the parts of document discovery

21   they don't like, and there's nothing the plaintiffs can do to

22   challenge it.

23          So here, specifically, there's 19 initial agreed-upon

24   custodians, and these custodians were not just picked out of

25   thin air; these are all current or former executives or workers

M5Q6OWEC

1  for defendant Elastos, and they're all individual defendants

2  identified in their initial disclosures as having discoverable

3  information relevant to the case.

4       And so as defendants purport in the joint letter of

5  the 19, there are four that apparently have provided no consent

6  at all.  So that's over 20 percent of the initial custodians

7  are just entirely prohibited from document discovery.  That

8  includes all their e-mail, company e-mail, all their records.

9       And then with respect to the remaining 15, what the

10  defendants purport is that there's "varying level of consent."

11  And what that means to us is that these individuals, in private

12  discussions with defense counsel, decide to pick and choose

13  which documents they want to produce.  So maybe they wanted to

14  produce files in their computers but they didn't want to

15  produce e-mails, or maybe they're producing a certain e-mail

16  account but not others, or they don't want to produce text

17  messages.

18       We've asked for them to give us copies of these

19  consent requests they sent, the responses they received from

20  these witnesses, what these private conversations they had with

21  these witnesses were that led to them to selectively deciding

22  to produce certain documents and not others, we've asked for a

23  log of what they're withholding, and we've asked them to

24  articulate the basis for saying that certain documents are

25  inaccessible in China and witnesses are located solely in

M5Q6OWEC

1    China, and they refused in every respect, which we think just

2    illustrates the complete discretion that they have under their

3    view of the PIPL and how what they're proposing would just

4    completely upend the Federal Rules of Civil Procedure.  And we

5    think this is pretty straightforward.  The precedent

6    universally rejects these kinds of special privileges for

7    litigants as an infringement upon the sovereignty of the

8    United States.

9         The general matter of foreign data privacy laws are

10   not grounds to withhold responses to discovery.  That's

11   especially true in cases where there's a protective order in

12   place like here, and where defendants fail to cite an instance

13   where the foreign government has taken any adverse action from

14   complying with discovery rules of the United States.

15        In the letter we submitted, the joint letter, we cite,

16   for example, a UK data privacy case, EU GDPR case, a Korean

17   data privacy law case.  What the defendants are asking for here

18   goes much, much further.  They want to block production of all

19   documents to certain employees and then permit their employees

20   to pick and choose which business documents these want to

21   withhold or produce in their discussions.

22        The two courts that have considered the PIPL

23   specifically have resoundingly held that it's inapplicable and

24   is not grounds for defendants to withhold discovery in U.S.

25   litigation.  That's the *Philips* case in the Northern District

M5Q6OWEC

1    of Illinois and the *Valsartan* case in the District of

2    New Jersey.

3              Both those cases strongly emphasize that if this

4    Chinese law took precedence, it would profoundly undermine U.S.

5    sovereignty and create an extraordinary and unfair advantage

6    for Chinese litigants in U.S. courts.  They say that Chinese

7    defendants cannot enter into a U.S. market and be shielded from

8    unfavorable discovery.  And they say if you don't like the

9    rules, stop doing business in the United States.

10             So, in sum, we think this is -- I understand, your

11   Honor expects there to be briefing, and we don't object to

12   that.  We do submit it's very straightforward, and the

13   defendants have cited no legal authority whatsoever that would

14   allow the Court to subordinate the Federal Rules of Civil

15   Procedure to this Chinese blocking statute.  What they are

16   asking for is totally unprecedented.

17             And we respectfully submit that what's in the letter

18   is what would be in the brief, and there's not going to be much

19   more to add.  The Court should order just like all other

20   defendants in federal court, these defendants have to produce

21   the responsive documents in their possession, custody, and

22   control regardless of whether their witnesses want to provide

23   written consent.

24             Thank you.

25             THE COURT:  Thank you, counsel.

1          Let me ask you:  Is it that straightforward?  Aren't

2     there a number of considerations that I have to take into

3     account in order to determine whether or not to order the

4     production of this information, notwithstanding foreign

5     restriction?  The way you're arguing, it sounds as though that

6     the rule is that if there's a foreign rule that impedes fall

7     litigation, that foreign rule is automatically overturned.  I

8     don't know if that's the case.

9          And this is relevant with respect to the briefing, to

10     the extent that you're planning to brief it as you proposed it,

11     that's part of your understanding as you described it; that's

12     not, rather, that the Court has to undertake a comity analysis,

13     evaluating a number of specific factors as outlined by the

14     circuit in cases such as the *Lindie* case.  So, counsel for

15     plaintiff, is the rule as you describe it — namely that any

16     foreign constraint is automatically overcome by the federal

17     rules — or is there more for the Court to consider in order to

18     evaluate the issue?

19          MR. BURRY:  Yes.  Thank you for the question.

20          So that is not our expression of the rule, that the

21     foreign law always is subordinate.  There is a comity analysis.

22     It's performed -- the Second Circuit has a seven-factor

23     analysis, but that does not apply here because following the

24     *Philips* case, for example, we don't even get there.  To get to

25     the comity analysis, the defendants bear the burden.  The

M5Q6OWEC

1   defendants are the ones positing this blocking statute as the

2   grounds to resist discovery.  They have the burden to show that

3   this blocking statute applies to responsive discovery in the

4   case.

5          And so what the *Philips* court explained is that

6   because this kind of argument under the PIPL results in them

7   not actually identifying any responsive documents for which

8   production is affected by Chinese law, they haven't met their

9   burden to specifically and with particularity demonstrate the

10  application to foreign law.

11         Put differently, the way in which they're asserting

12  this foreign law actually precludes an ordinary comity

13  analysis, and they don't get there.  And so like the *Philips*

14  court, this Court can reject it -- or must reject it -- without

15  undertaking the comity analysis.

16         THE COURT:  Thank you.

17         Counsel for defendants in their portion of the letter

18  suggests that the Court should take up the motion after

19  additional documents have been presented to you.  I just want

20  to ask you about that suggestion — again, mindful of the factor

21  the Court would have to consider engaging in the comity

22  analysis, which includes, of importance, litigation of the

23  documents requested and availability of other alternative means

24  of securing the information and the other factors of which

25  you're aware.  To what extent would the kind of delay in

M5Q6OWEC

1    seeking this motion impact your ability to provide the Court

2    with information going to those factors?

3            Counsel, if you're on mute, you can take yourself off

4    mute.

5            MR. BURRY:  Oh, was that for me, for plaintiffs, your

6    Honor?

7            THE COURT:  Yes.

8            MR. BURRY:  Yes.  So that's exactly right.  The first

9    factor, for example, is the importance of documents and

10   information to the litigation.  Because defendants are refusing

11   to provide any kind of accounting or log for what these

12   documents are, that illustrates exactly why the *Philips* court

13   ruled that we don't even get there.  How can the Court possibly

14   have examined the first of the seven factors when defendants

15   are refusing to identify what these documents are.  How could

16   the Court possibly assess the importance of them?

17           THE COURT:  Thank you.  Good.

18           Anything else, counsel for plaintiffs?

19           MR. BURRY:  No, your Honor.  I'm happy to answer any

20   further questions, but I think that encapsulates where we are

21   and where we're coming from.

22           THE COURT:  Thank you very much.

23           Let me turn back to counsel for defendants.  Counsel,

24   as I introduced at the outset of this conversation, given the

25   burden here, I suspect I'll probably need more from you than

M5Q6OWEC

1   what's provided in the letter in order to evaluate this issue,

2   but let me hear from you.

3          Why is it that you believe that what's been provided,

4   or is expected to be provided, is sufficient?  And more

5   significantly, what do you expect to put in front of me to show

6   that the PIPL bars disclosure?  And what will I have available

7   to me in order to evaluate the factors articulated by the

8   circuit, having heard counsel's arguments about *Philip*?

9          Counsel?

10         MR. ZWILLINGER:  Yes, your Honor.  This is

11  Zachary Zwillinger from Paul Hastings for defendant.

12         First, I just want to echo the Court's belief that

13  this is something that will need to be decided on full

14  briefing.

15         As the Court may be aware, the PIPL is only six months

16  old.  As a result, there really is no case law interpreting the

17  case law that is cited by plaintiffs, do not speak to the

18  consent requirement that pervades the PIPL.  As a result, they

19  speak not at all to the issues that are going to be before this

20  Court.

21         In terms of the materials that we would put in front

22  of your Honor on a full motion to dismiss -- motion to compel

23  brief opposition, we would anticipate providing foreign law

24  affidavits from experts on Chinese law as well as the language

25  of the PIPL itself.

M5Q6OWEC

1          We believe that the PIPL, the language, while it's --

2     first, it is written in Chinese, but it's not written

3     necessarily as a U.S. statute would be written.  But it's

4     pretty clear on its face that consent is a requirement before

5     we as defendants are even allowed to collect documents, and

6     that really is the issue here.

7          We want to emphasize to the Court that defendant

8     Elastos is not trying to hide behind any sort of Chinese law.

9     We've done everything in our power to collect as my documents

10    as plaintiff has requested.  I think that's clear from the

11    submission that we've provided to the Court.

12         So the PIPL, in a number of different articles,

13    requires that we get express written, voluntary consent without

14    coercion.  So what we did is we hired a PRC law firm.  We

15    worked with that law firm to develop a consent form that asked

16    each of the custodians that plaintiffs have raised to provide

17    us with access to all of their possible documents that could

18    have relevant Elastos litigation related material.

19         And the consents that we put together were quite

20    broad.  We asked not only for their consent to collect any data

21    they have at Elastos itself, but any data they have in their

22    personal e-mails, their devices, in social media, in hard copy,

23    and we also had a catchall asking for whatever other sources of

24    data.  So we sent these consent requests to pretty much anyone

25    that we possibly could.  And for the folks that we weren't able

1  to contact, there was only one, I believe, where we couldn't

2  obtain any sort of contact information.  So we've done

3  extensive diligence to try and reach out to as many people as

4  we could to get their consent.  And those efforts have born

5  significant fruit.

6          So in the collection that we've done, we've now

7  assembled over 800,000 documents that concern 17 of the 19

8  custodians.  And, certainly, all of the custodians, or almost

9  all the custodians that are actually relevant in this action,

10  we are in the process of reviewing and producing them.  We have

11  already produced about 48,000 documents, and we anticipate

12  making another substantial production shortly.

13          The review that we've undertaken has come as a result

14  of search terms, which hit over 300,000 documents.  And our

15  review is using a very liberal review standard so that we're

16  not trying to split hairs in determines of what we're producing

17  to plaintiffs.

18          The idea I want to leave with your Court is we're

19  doing everything we can to both adhere to our obligations under

20  the federal rules and also adhere to the PIPL.  And as your

21  Court recognized, once we've established that the PIPL is a

22  blocking statute and thus it is illegal for us to collect

23  documents without the prior consent of the custodian, the Court

24  will need to turn to the seven-factor analysis.  And we believe

25  that this case, unlike some of the other cases that are cited

M5Q6OWEC

```
 1    by plaintiffs in their submission, the factors really go

 2    against plaintiff in this case.

 3              THE COURT:  Thank you.

 4              Counsel, before we move on to that, let me ask -- and

 5    I apologize.  I look forward to learning more as briefing is

 6    presented to me.  I've looked at some of the cases, including

 7    the *Philips* case and the *Valsartan* case.  The first thing I'm

 8    curious to learn more in your briefing is -- and to the extent

 9    you're not prepared to answer these questions, please feel free

10    to tell me.  It's not a problem.  I'm happy to wait.

11              I note from those cases that the PIPL broadly defines

12    personal information as all kinds of information recorded by

13    electronic or other means related to identified or identifiable

14    persons...close quote.  The thing I'm curious about is whether

15    that term touches what I'll describe as business records as

16    opposed to what we in the U.S. would think of as personal

17    information, like PII, which is personal to the individual.

18    Can you respond to that?

19              And part of the reason why I'm curious is I don't

20    understand, I don't know yet, how it is that these records are

21    custodied, and why it is that the business records of Elastos

22    may be, I'll call it, mixed with this personal information.  Do

23    you know?  Can you help?

24              MR. ZWILLINGER:  Yes, your Honor.

25              So as I think your Honor recognizes the definition of
```

M5Q6OWEC

1    personal information in Article 4 of the PIPL is very broad.

2    And it is our understanding that would include things like

3    names and addresses and contact information and many other

4    categories of personal information that may not be considered

5    say PAI -- PII in the U.S.

6         But the sort of prior issue is that in light of how

7    the PIPL defines personal information handling in Article 4 to

8    include collection of data, that means that in light of

9    Article 4 and the other provisions, we're not able to collect

10   the data before we're able to analyze it to view what is, in

11   fact, in it without obtaining the consent of the custodian of

12   the documents.

13        And so while some of the data that is at issue is in

14   the possession -- clearly in the possession, custody, and

15   control of Elastos, much of it is also in the possession of the

16   custodians themselves on their personal devices or maybe on

17   their own personal accounts.

18        So the prior issue is that we don't have consent to

19   collect the data, and thus, we don't have the ability to see

20   exactly what is personal information versus not.  To the

21   extent --

22        THE COURT:  I am sorry.  Can I just ask this:  Out of

23   curiosity, to the extent that the information is on

24   individual's personal phones, I understand the argument that

25   there's a limitation on collecting the information because it

1    may include personal information, and the bar on collection may

2    be an impediment to collection of information to the extent

3    that part of that information is personal information.

4            Does this bar on collection of information apply at

5    all with respect to information that is, to the extent that

6    there's information on Elastos' computer system -- in other

7    words, are you collecting it, if you're pulling it off of a

8    server controlled by the company?

9            MR. ZWILLINGER:  Yes.  So the consent requirement

10   applies equally to data that's both on Elastos servers as well

11   as in the actual possession, custody, and control of the

12   custodian.  So there isn't a distinction there because

13   information that's at, say, Elastos servers will have personal

14   information of individuals and custodians themselves and others

15   that we can't access until we get the consents from the

16   custodians themselves.

17           THE COURT:  Can I expand on that?  In fact, and this

18   is not a question about the definition of "personal

19   information," it's a question about the definition of

20   "collect."  Is pulling information from the company's own

21   servers collecting information under the statute?

22           MR. ZWILLINGER:  It is, yes.  Because the collection

23   process is not the collection for the use for business

24   purposes, but in this context it's for the -- so it can be

25   reviewed and provided in a litigation outside of the borders of

M5Q6OWEC

1   China.

2           So the reason why we're not able to access the data

3   that's on Elastos' servers for production purposes is because

4   to collect that for review and production, that is to -- and

5   this is in the context of collection in the normal U.S.

6   discovery context.  As you might imagine, counsel for Elastos

7   has hired a third-party vendor to collect data from its server

8   so it can be processed and put in a format that's reviewable by

9   Elastos' counsel, both for litigation purposes and for adhering

10  to Chinese law, and that particular collection is subject to

11  the consent requirement under the PIPL.

12          Clearly, the data that is on Elastos' servers is in

13  the possession, custody, or control of Elastos at all times,

14  but we're not able to collect it for production purposes until

15  we get the consent from the custodians because the collection

16  of the information is of a different form.

17          THE COURT:  Interesting.  Thank you.  I apologize.  I

18  interrupted you.  You were about to discuss the comity

19  analysis.

20          MR. ZWILLINGER:  Yes.  So as your Honor recognized,

21  there's sort of two steps to the analysis.  First is that there

22  needs to be established that the foreign statute at issue is,

23  in fact, a blocking statute, and we submit that it's pretty

24  clear that the PIPL is a blocking statute and that it does

25  inhibit Elastos' ability to collect and produce documents in

M5Q6OWEC

```
1    this litigation.  So once we get -- and we'll submit, I

2    believe, foreign law affidavits and other materials in support

3    of that position, but I don't think that's going to be the

4    difficult question for this Court.  Instead, the difficult

5    question is going to be the balancing of the seven factors

6    because it's a very case-by-case, fact-intensive analysis, and

7    it really depends on the circumstances at issue.

8            So, as an example, as your Honor recognized, the first

9    factor is whether or not the documents are, in fact, important.

10   And the cases that that plaintiff themselves cite note that

11   when documents aren't outcome determinative or if they are

12   cumulative, they don't need to be produced; and thus, there's

13   no reason for the Court to force a producing party to violate

14   foreign law when it's really not necessary.  Likewise, the

15   Mercedes-Benz case, which is also cited by plaintiff,

16   recognizes that documents that are going to be subject to such

17   an order really need to be directly relevant.

18           The second factor about whether plaintiffs' requests

19   are specific, I think it's clear that they're not specific.  As

20   your Honor may have seen from the cases, often the documents at

21   issue are very, very narrowly and clearly identified.

22           In one of the cases -- I believe it's the Valsartan

23   case -- the whole dispute focused on 23 specific documents.  In

24   the Fenerjian case, the Korean PIPA case, it was just about

25   three individuals.
```

M5Q6OWEC

1           So the information was very specific.  It was clearly

2      important and clearly relevant; whereas here, plaintiff had

3      made no showing that the documents that they aren't going to be

4      receiving because of the PIPL are at all relevant to this case

5      or that the documents they will be receiving from defendants,

6      what they could receive through third-party subpoenas, through

7      other processes, what's public, why that isn't more than enough

8      for this litigation.

9           You know, this is not a traditional securities class

10     action like a 10b-5 or Section 11 action where the loss of

11     internal documents are necessary to litigate the case.  This is

12     a sort of a different class action relating to whether or not

13     the tokens are securities under the Howey Test or whether

14     there's an exemption.  So it just doesn't lend itself to the

15     sort of broad based discovery that you would see in a normal

16     class action.

17          We submit the documents we have produced and will

18     produce after completing our review will be more than

19     sufficient for plaintiffs' purposes.  And to that point, that's

20     why in our submission we noted that we thought this whole

21     dispute was premature, because plaintiff hadn't had the

22     opportunity to look at the documents that they are receiving

23     and determine whether or not these other small pockets of data

24     that they're not receiving are, in fact, so important and so

25     relevant that they need an order from the Court forcing us to

M5Q6OWEC

1    violate Chinese law.

2          You know, I think the Court should be reluctant to do

3    that in a case where there really isn't a real showing that

4    it's necessary.  In some cases, it may be such that such an

5    order is appropriate, and I think some of the cases cited by

6    plaintiff demonstrate that.  But that is clearly not the case

7    here.  When they're receiving so much, they can access so much

8    through either public means or Rule 45 subpoenas or elsewhere.

9    We believe that's more than enough to satisfy our obligations

10   under the federal rules and more than enough for plaintiff to

11   make their claims against defendants.

12         THE COURT:  Thanks very much, counsel.  Let me turn

13   back to counsel for plaintiff.

14         Just on the counsel's last point following up on our

15   conversation from earlier, they are arguing that we will get

16   past what you described as step one and engage in the comity

17   analysis, at which point if the motion is briefed before the

18   production that is anticipated has been completed, they suggest

19   the lack of information regarding the nature of the documents

20   that have not been provided will weigh against plaintiff in the

21   Court's assessment of those factors.

22         So I want to come back to you, counsel for plaintiff.

23   This just comes to the issue of timing for briefing your motion

24   to compel.  And just to put it very bluntly, the question, in

25   part, is whether or not you feel very confident that you

M5Q6OWEC

1    wouldn't need to get into the comity factors such that the

2    additional information that might be provided to you through

3    disclosure of discovery would be useful in briefing the motion.

4            So the question for you, counsel for plaintiff, having

5    heard everything that we just talked about, what is your

6    proposal regarding timing for filing of your motion?

7            MR. BURRY:  Your Honor, this is Benjamin Burry for

8    plaintiffs.  We're prepared to -- if your Honor wants briefing,

9    we think it should be submitted right away.  I would submit we

10   could file a brief -- maybe seven pages is appropriate for a

11   brief and a response of five pages for reply.

12           THE COURT:  I'm sorry.  That's wildly wrong in terms

13   of the page limit.  I think you may misunderstand the nature of

14   the issue represented here.

15           I'm being asked to evaluate a complex, novel issue of

16   Chinese law and then to engage in a complex balancing test.  I

17   don't expect that there's any reasonable way for that to be

18   presented to me in 19 federal pages of briefing.  That's

19   implausible.

20           If you want to limit your briefing to seven pages,

21   that is, of course, entirely up to you.  But I do not expect

22   that I'm going to set page limits anywhere near that limit

23   because this is a more complex and novel issue than I think can

24   be properly presented to me in a total of 19 pages of briefing.

25           So, again, counsel, I'm happy for you to file seven

M5Q6OWEC

1    pages if you think that would be persuasive.  That's up to you.

2    But in terms of setting the briefing schedule, my expectation

3    is that the issues presented here are more substantial than

4    that kind of briefing structure seems to suggest you believe it

5    is.  So I'm happy to entertain the structure, but you should

6    know I expect I'll see substantially more from defendants, as

7    you heard.

8            If you want me to limit your reply to that, to set

9    five pages, I am happy to, if that is your real proposal,

10   counsel for plaintiff.  I'm happy to adopt a structure in which

11   your moving papers are seven pages and your reply is five

12   pages.  But you have heard what defendant is going to put in

13   front of me; we both know that's going to be a lot more than

14   seven pages.

15           So, counsel for plaintiff, is that what you're asking

16   for, for me to cap your brief at seven pages and your reply at

17   five pages, notwithstanding the volume of issues defendant is

18   going to present to me in their opposition?

19           MR. BURRY:  We are not asking for that, your Honor.

20           THE COURT:  Thank you.  So why did you float that in

21   the first instance?

22           MR. BURRY:  Well, if I could -- so you heard counsel

23   for defendants explain they'd like to submit foreign law

24   affidavits on the issue of express consent being required under

25   the PIPL.  We think that's unnecessary because we've taken that

1   assertion of theirs for granted.  There's no reason to have the

2   back-and-forth on experts when there's no dispute as to what

3   the PIPL provides.  What our argument is, assuming they're

4   interpretation of the PIPL, that is not grounds to upend the

5   Federal Rules of Civil Procedure.

6          THE COURT:  Thank you.  Fine.

7          So, counsel, I take it from your proposal, counsel for

8   plaintiff, that being fully aware of the nature of the issues

9   to be presented here and the nature of the decision the Court

10  is going to make, your proposal is that I order that your

11  initial brief be filed on June 2; is that right?

12         MR. BURRY:  Yes, your Honor.  We think that timing is

13  appropriate.  And your question about whether a further

14  production would be helpful, we do not think it would.

15  Defendants counsel talk --

16         THE COURT:  Thank you.  That's fine.

17         So, counsel for defendants, the plaintiffs' motion

18  will be filed by June 2.  How much time would you like to

19  request for your opposition?

20         MR. ZWILLINGER:  So we recognize that plaintiff is no

21  longer disputing that the PIPL is a blocking statute, and so in

22  some way that analysis goes away and we don't need to address

23  it.  So we certainly won't need as much in support of our

24  argument as we did prior to that recognition.

25         I would still say we need sufficient pages and time to

M5Q6OWEC

1    develop our balancing analysis.  And I do think that the

2    production that we hope to make in the coming weeks will be

3    illustrative of how unnecessary an order from this Court will

4    be.  So I would ask for maybe an opposition deadline of June 16

5    or 17.  That would give us two weeks or two weeks and a day.  I

6    believe that would be enough to both cover any productions that

7    we are going to be making in the coming weeks and also to

8    address plaintiffs' argument on the motion.  Of course, that is

9    my proposal at this point.  I believe the opposition deadline

10   of June 17th is preferred.

11            THE COURT:  Thank you.  Let me just make sure that we

12   have clarity on one point.

13            Counsel for plaintiff has made a couple of statements

14   during this conference that that is far from, what I'll call

15   it, a formal stipulation regarding the extent of and coverage

16   of Chinese law.  The Court will need to make a determination

17   regarding what the law is and does.  To the extent that the

18   parties can formalize a stipulation or agreement regarding the

19   nature and extent of Chinese law and its application here, then

20   I'm happy to consider it.  I'm a little concerned about too

21   much weight being placed on what may be a thoughtful but

22   perhaps not fully developed concession during a conference.

23   Even if it is a full concession that the law is what the

24   defendants say it is, which is not what I heard, I still have

25   to make the relevant determinations in order to get to what the

1  parties have described as Stage 2.

2           So, counsel, I'm going to invite you to work together

3  to develop a more fulsome stipulation regarding the parties'

4  agreement as to the terms and meaning of Chinese law and its

5  applicability here in all of the relevant circumstances.  If

6  the parties cannot reach a stipulation regarding the nature and

7  extent of the relevant Chinese law as well as its application,

8  it may be that counsel's hope that expert affidavits could be

9  avoided here will not come to roost.  In other words, I want

10 the parties to actually make concrete the possible stipulation

11 around which you circled and suggested here, and if you're not

12 able to reach a very complete and comprehensive stipulation

13 regarding the meaning, extent, and impact of Chinese law, I

14 don't think that I would expect that the defendants would

15 proceed in the absence of the kind of expert affidavits that

16 we've discussed, and that might affect our schedule.

17          So I'm going to set a schedule that's predicated on

18 the parties actually reaching a full stipulation on the nature,

19 extent, and effects of Chinese law and its impact here.  That

20 will be a threshold issue.

21          Assuming you're able to do that, I expect the schedule

22 the parties proposed is reasonable; namely the motion itself

23 would be filed by the 2nd, any opposition would be filed by the

24 17th, and any reply would be filed by the 24th of July.

25          You should obviously meet and confer regarding the

1    nature of the parties' agreement regarding the scope, extent,

2    and the effect of Chinese law promptly.  If you are unable to

3    reach a complete and comprehensive agreement regarding the

4    meaning, extent, and effect of that law, then I would ask for

5    you to write me to request an appropriate adjournment in the

6    schedule so the appropriate information can be presented to the

7    Court that would allow me to make a ruling in the case.

8         So, again, I appreciate the parties may be near some

9    agreement, or suggested a hint of an agreement, but I ask that

10   you make that very concrete — sufficiently concrete — that it

11   will provide a basis for the Court to rule on this with a clear

12   understanding of the nature and extent of Chinese law.  Again,

13   I encourage you to work on that promptly.

14        If you're unable to reach an agreement with respect to

15   that, a full agreement with respect to that, I'm going to

16   invite you to reach out to me with a proposal for a modified

17   schedule to permit the parties to present the relevant

18   information to the Court regarding the nature and extent of and

19   effect of foreign law, which I would expect that be through

20   affidavits, certified translations of the statute and the like.

21        Good.  So I'll enter an order to that effect.

22        Counsel, anything else that we need to talk about

23   here, first, counsel for plaintiff?

24        MR. BURRY:  No, thank you, your Honor.  We look

25   forward to submitting our brief.  And we're hopeful defendants

M5Q6OWEC

1   can quickly get us a draft stipulation, and we're optimistic

2   that the parties can stipulate as to what the PIPL provides.

3           THE COURT:  Good.  Thank you very much.

4           Counsel for defendants, anything from you?

5           MR. HERZINGER:  Sorry.  Your Honor I didn't mean

6   Mr. Zwillinger.  This is Mr. Herzinger speaking for the record.

7           I just did want to note I actually concur with the

8   Court whether or not we really are close to an agreement on

9   China law.

10          And just to give the Court some background,

11  Mr. Zwillinger mentioned we have both our own PRC counsel

12  within our firm and China, and also the clients retained

13  separate PRC counsel, and we had lengthy negotiations and meet

14  and confers with plaintiffs in this case over the scope of

15  Chinese law and its meaning as to this case, and we have not

16  agreed, and I think there are fundamental disagreements.

17          So we absolutely will endeavor, as your Honor has

18  mentioned, to reach some sort of common ground or stipulation.

19  But I do believe that it will be important, nevertheless, to

20  provide information to the Court about our respective

21  positions, and more importantly, the expert declaration and

22  information, and not just to Prong 1 of the test, but also as

23  to the comity factors, because I think it actually bears on

24  both sets of analyses.

25          So I just wanted to note that for the Court just so

M5Q6OWEC

1  that your Honor was aware that we have had lengthy discussions

2  about the applicability and the scope and the interpretation of

3  the statute itself.

4          THE COURT:  Good.  Thank you very much.

5          Again, I welcome any request to modify the schedule to

6  permit the parties to present any information that you like

7  regarding the nature, extent, and effect of Chinese law.  The

8  schedule that we just set really works only if everybody agrees

9  about all of the nuances of Chinese law.  It was not clear to

10  me that that was necessarily going to happen, so I am very open

11  to a request to modify the schedule should the parties not be

12  able to reach full agreement.

13          Very good.  Thank you very much.  This proceeding is

14  adjourned.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25