UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK OWEN and JAMES WANDLING,
Individually and On Behalf of All Others
Similarly Situated,

              Plaintiffs,

     -against-

ELASTOS FOUNDATION, FENG HAN, and
RONG CHEN,

           Defendants,

Case No. 1:19-cv-5462-GHW

---

## **DEFENDANTS' OPPOSITION TO MOTION TO COMPEL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................2

    A.    Legal Background .......................................................................................2

    B.    Discussions Among Parties Regarding Discovery ..................................3

    C.    Defendants' Document Collection and Review.......................................4

    D.    Defendants' Extensive Efforts to Adhere to both Chinese and U.S. Law ..............5

    E.    The Documents Plaintiffs are not Receiving due to the PIPL are not Essential ...................................................................................................7

ARGUMENT ..........................................................................................................................7

I.    Chinese Law BARS Production of the Requested Documents .........................8

    A.    The PIPL Applies to the Discovery Sought by Plaintiffs .......................8

    B.    Elastos Can Only Collect Documents with the Consent of Custodians..................9

    C.    The PIPL Applies to Documents In China and Some Documents Outside of China........................................................................................10

    D.    Elastos Could be Subject to Substantial Penalties If Forced to Violate the PIPL ........................................................................................................11

    E.    This Court Should Give No Weight to Plaintiffs' Expert........................11

II.    Comity Analysis Does Not Require Production .............................................12

    A.    The Documents Sought Are Not Vital to Plaintiffs' Case......................14

    B.    Plaintiffs' Overreaching Discovery Requests are Not Specific.............16

    C.    All Documents at Issue Originated in China ........................................17

    D.    The Information Sought can be Obtained Through Other Means .........17

    E.    The Sovereign Interests of the U.S. and China.....................................18

    F.    Defendants, Including Defendants' Agents, May be Liable under Chinese Law .........................................................................................................19

    G.    Defendants Have Acted in Good Faith .................................................20

III.    PLAINTIFFS' WAIVER ARGUMENT FAILS .............................................21

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Campbell v. Facebook Inc.*,
  2015 WL 4463809 (N.D. Cal. July 21, 2015) ................................................................ 14, 18

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,
  2013 WL 2661037 (S.D.N.Y. 2013) .................................................................... 14, 17, 20

*Doubleline Capital LP v. Odebrecht Fin., Ltd.*,
  2021 WL 4596561 (S.D.N.Y. Oct. 6, 2021) ....................................................... 13, 16, 17

*Fenerjian v. Nong Shim Co.*,
  2016 WL 245263 (N.D. Cal. Jan. 21, 2016) ................................................. 15, 17, 18, 19

*Fischer v. Forrest*,
  2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) ......................................................................... 22

*Foster v. Lee*,
  93 F. Supp. 3d 223 (S.D.N.Y. 2015) .................................................................................... 21

*Gucci Am., Inc. v. Curveal Fashion*,
  2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ......................................................................... 16

*Industrial Technology Research Institute v. LG Electronics*,
  No. 3:13-cv-02016-GPC-WVG (S.D. Cal.) .......................................................................... 12

*Integrated Communications v. HP Financial Services*,
  No. 1:16-CV-10386 (D. Mass.) .............................................................................................. 12

*Laydon v. Mizuho Bank, Ltd.*
  183 F. Supp. 3d 409 (S.D.N.Y. 2016) ................................................................. 13, 15, 19, 20

*Meggitt Inc. v. Yongzhong*,
  2014 WL 12967458 (C.D. Cal. Mar. 21, 2014) ................................................................... 20

*Mercedes-Benz Emissions Litig.*,
  2020 WL 487288 (D.N.J. Jan. 30, 2020) ............................................................................. 14

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
  116 F.R.D. 517 (S.D.N.Y. 1987) .......................................................................................... 14

*Mohegan Lake Motors, Inc. v. Maoli*,
  2018 WL 4278351 (S.D.N.Y. Apr. 6, 2018) ....................................................................... 22

*Nautilus v. Icon*,
  No. 5:16-cv-00080 (W.D. Tex.)............................................................................12

*Philips Medical Systems (Cleveland), Inc. v. Buan*,
  2022 WL 602485 (N.D. Ill. Mar. 1, 2022)........................................................9, 14

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*,
  902 F.2d 1275 (7th Cir. 1990) ...........................................................................18

*Revak v. SEC Realty Corp.*,
  18 F.3d 81 (2d Cir. 1994) ....................................................................................2

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ..................................................................14, 16, 17

*Royal Park Inv. SA/NV v. Deutsch Bank Nat'l Tr. Co.*,
  2017 WL 7512815 (S.D.N.Y. 2017)..............................................................15, 16

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946)..........................................................................................2, 15

*Societe Nationale Industrielle Aérospatiale v. United States Dist. Ct. S.D. Iowa*,
  482 U.S. 522 (1987)....................................................................................... *passim*

*Strauss v. Credit Lyonnais, S.A.*,
  249 F.R.D. 429 (E.D.N.Y. 2008) ........................................................................16

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
  310 F.3d 102 (2d Cir. 2002)................................................................................21

*Tiffany (NJ) LLC v. Qi Andrew*,
  276 F.R.D. 143 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*,
  2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011)..............................................13, 20

*United States v. Davis*,
  767 F.2d 1025 (2d Cir. 1985)..............................................................................19

*United States v. First Nat'l City Bank*,
  396 F.2d 897 (2d Cir. 1968)............................................................................1, 19

*In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*,
  2021 WL 6010575 (D.N.J. Dec. 20, 2021)..................................................15, 18, 19

*VFS Fin., Inc. v. Elias-Savion-Fox LLC*,
  73 F. Supp. 3d 329 (S.D.N.Y. 2014)....................................................................21

*Wu v. Sushi Nomado of Manhattan, Inc.*,
  2021 WL 7186735 (S.D.N.Y. Oct. 29, 2021) ......................................................13

*Wultz v. Bank of China Ltd.*,
  910 F. Supp. 2d 548 (S.D.N.Y. 2012)..........................................................................13, 15, 21

**Statutes**

15 U.S.C. § 77d.............................................................................................................................3

15 U.S.C § 77k..............................................................................................................................2

15 U.S.C. § 78j..............................................................................................................................2

**Other Authorities**

17 C.F.R. § 240.10b-5...................................................................................................................2

Fed. R. Civ. P. 26(e)(1)...............................................................................................................22

Defendants Elastos Foundation ("Elastos"), Rong Chen, and Feng Han (collectively, "Defendants") respectfully submit this opposition to the motion to compel (the "Motion," Dkt. 112-118) filed by plaintiffs Mark Owen and James Wandling ("Plaintiffs").

## PRELIMINARY STATEMENT

If Defendants could collect and produce the documents Plaintiffs seek in this Motion, they would.  Defendants are not looking to obstruct document discovery by hiding behind China's Personal Information Protection Law ("PIPL").  Plaintiffs' otion misstates and misrepresents the law and the facts.  Indeed, Defendants asked the custodians to consent to their collection and production and have done everything in their power to collect and produce relevant documents in this litigation.  Unfortunately for Defendants, a handful of custodians have refused to consent to the collection of certain categories of documents.  Thus under the newly-enacted PIPL, Defendants are barred from collecting and producing these documents.  This places Defendants in an untenable position.  If they violate Chinese law, Defendants (and their agents) could become subject to significant penalties.

Thus, the question raised in this Motion is whether Defendants should be ordered to violate Chinese law.  They should not.  Defendants have already produced hundreds of thousands of documents, including from key custodians, across a variety of sources.  These documents are more than sufficient for the purposes of this litigation.  Moreover, Plaintiffs have failed to show why the documents they seek are at all important to this case, much less that they are so important that Defendants should be ordered to violate Chinese law.

Plaintiffs' Motion should be denied for several reasons.  *First*, as set forth in Section I, the PIPL bars the production of the documents sought in this Motion.  Defendants' interpretation of the PIPL is tied directly to the language of the statute itself.  Moreover, Defendants' interpretation is supported by the expert opinion of Jianwei (Jerry) Fang, a lawyer admitted to

practice in both China and the U.S., and an equity partner at one of the most well-respected law firms in China.  Plaintiffs' interpretation of the PIPL, which is wholly divorced from the statutory text, is wrong.  Plaintiffs' interpretation is based on the opinion of an expert who is not a Chinese lawyer, who has no experience with the PIPL or related areas of Chinese law, and whose opinion is itself a violation of Chinse law.

*Second*, as set forth in Section II, under the relevant seven-factor comity analysis, there is no reason why Defendants should be ordered to produce the documents, notwithstanding the PIPL.  Indeed, as detailed below, each of the seven factors supports denying Plaintiffs' Motion.

*Finally*, as described in Section III, Plaintiffs' throwaway waiver argument fails because Defendants waived nothing and Plaintiffs have failed to show that they have suffered any prejudice at all.  For all these reasons, the Motion should be denied.

## **BACKGROUND**

A.    Legal Background

Wide-ranging discovery is not warranted in this case.  This is not a traditional securities class action concerning (for example) alleged misstatements or purported fraud.  *See, e.g.*, 15 U.S.C § 77k (Section 11 of '33 Act); 15 U.S.C. § 78j (Section 10(b) of '34 Act); 17 C.F.R. § 240.10b-5 (Rule 10b-5).  Instead, the key questions in this case are whether ELA Tokens— offered during the January 2018 Token Sale, subject to the Lock-In Program, or sold in the secondary market—for use on the Elastos platform of decentralized applications, are securities, and thus subject to the registration requirements under the Securities Act of 1933, or otherwise exempt from those registration requirements.  Whether ELA Tokens are securities will depend on the test established by the Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), *i.e.*, whether there has been "(i) an investment of money (ii) in a common enterprise (iii) with profits to be derived solely from the efforts of others."  *Revak v. SEC Realty Corp.*, 18 F.3d 81,

88 (2d Cir. 1994).  And, whether the ELA Tokens are exempt from the registration requirements will depend on, as an example, whether the transactions at issue were done by a person "other than an issuer, underwriter, or dealer."  15 U.S.C. § 77d.  The expansive discovery typically seen in traditional securities class actions, which often focus on factually intensive questions of materiality, reliance, scienter, falsity, and loss causation, is thus not necessary here.

      B.    <u>Discussions Among Parties Regarding Discovery</u>

      At the December 22, 2021 conference, counsel for Defendants explained that "there are various complex Chinese data privacy laws that we will need to work through with plaintiffs' counsel in order to ensure that we can have the appropriate checks and balances so we can take that discovery out of China."  *See* 12/22/2021 Hr'g Tr. at 7:4-12 (Dkt. 92).  Plaintiffs served their document requests on January 26, 2022, and on February 25, 2022, Defendants served their responses and objections.  *See* Declaration of Javier Bleichmar ("Bleichmar Decl.") (Dkt. 114) Exs. 1, 3.  Defendants objected to the requests to the extent they imposed "obligations on Defendants that are different from or beyond those required by the Federal Rules of Civil Procedure," or sought documents "not within the possession, custody or control of Defendants," and also expressly preserved all objections on other grounds.  *Id.*

      On March 4, 2022, Plaintiffs asked to schedule a meet and confer call for March 10, 2022.  *See* Bleichmar Decl. Ex. 5, at 31-32.  Counsel for Defendants was not available March 10, so instead scheduled the call for March 11.  *Id.*  (Thus Plaintiffs' statement that March 11 was the "earliest" time Defendants were available to meet and confer is deliberately misleading.)  As Plaintiffs admit, during meet and confer calls on March 11, March 16, and April 8, and in letters sent on April 13, May 4, and June 8, Defendants detailed the ways in which Chinese law impacts Defendants' ability to collect and produce responsive documents.  *See* MOL at 4; Bleichmar Decl. Exs. 4, 6, 8.  Moreover, to address Plaintiffs' concerns that Defendants' responses and

objections were not sufficiently precise regarding Chinese law, on May 4, Defendants amended their responses and objections. *See* Bleichmar Decl. Ex. 7. To date, Plaintiffs have identified no way in which they have been prejudiced by Defendants' purported failure to address Chinese law in their initial responses and objections.

C.    Defendants' Document Collection and Review

Defendants have acted in good faith throughout the discovery process, accommodating Plaintiffs' requests by extensively collecting documents from custodians around the world and conducting a broad and inclusive review and production. The process has been costly and time intensive. Defendants engaged a Chinese law firm to develop procedures that complied with Chinese law, and hired a huge team of contract attorneys to review hundreds of thousands of documents that hit on search terms. *See* Declaration of Zachary Zwillinger ("Zwillinger Decl.") ¶¶ 8-9; Bleichmar Decl. Ex. 8, at 3.

**Custodians.** Defendants agreed to collect and produce documents from 19 of the 20 custodians demanded by Plaintiffs.[1] Zwillinger Decl. ¶ 10. Importantly, Defendants agreed to those custodians (many of which are not currently employed by, or are no longer associated with, Elastos) even though the vast majority of documents relevant to this case are held only by a few custodians, including the founding leadership of Elastos (*i.e.*, individual defendants Rong Chen and Feng Han) and certain individuals located in the U.S. *Id.*

**Document Sources.** Plaintiffs further demanded that Defendants collect and produce documents whether or not they are in the actual possession, custody, or control of Elastos. *See id.* ¶¶ 11-12. Defendants have not, to date, refused to produce any documents based on their objection that the data requested is not in their possession, custody, or control. *See id.* ¶ 12. In

---

[1] Defendants did not agree to the 20th custodian because that individual never had any relationship with Elastos.

short, Defendants have done everything they can to collect Elastos data controlled by others.  As a result, Defendants have collected 879,126 documents from 17 custodians, both within and outside of China.  *Id.* Ex. 1 (collection summary).

**Date Range, Search Terms, and Responsiveness Standard.**  Defendants have structured their review to be exceedingly inclusive.  They have agreed to produce documents that pre-date Elastos' promotion of their technology in the U.S.  *Id.* ¶ 16.  Furthermore, Defendants' search terms are very broad, yielding 390,930 hits inclusive of full parent-family relationships.  *See id*. ¶¶ 17-18, Ex. 1.  To date Defendants have produced 245,314 documents, or 920,242 pages.  *Id.* ¶ 19.

     D.    <u>Defendants' Extensive Efforts to Adhere to both Chinese and U.S. Law</u>

Elastos has worked hard to follow both Chinese and U.S. law in responding to Plaintiffs' demands.  *Id.* ¶ 20.  Elastos has data on servers in China, and most of the custodians are located in China.  *See id.* ¶ 14.  As a result, Defendants must adhere to Chinese law, including the PIPL, in addition to their obligations under the Federal Rules of Civil Procedure.

Defendants engaged Jianwei (Jerry) Fang, a partner at Zhong Lun Law Firm, to ensure that Defendants' collection and production of documents complied with Chinese law.  With Zhong Lun, Defendants developed a consent form that would permit them to collect documents in accordance with the PIPL.  *See id*. ¶ 14.  Of the 19 custodians, Defendants were able to locate and send consent forms to 17 of them, and received 15 executed forms.[2]  *See id.* Ex. 2.  Importantly, Defendants Rong Chen and Feng Han have consented to the collection of all of their documents.  *Id.* ¶ 23.

---

[2] The forms sent to Rong Chen, Donnie Bullers, and Zach Warsavage only had two questions on them, because they are located in the U.S., and therefore any data they have outside of China is not subject to the PIPL.  Other custodians outside of China received the full 12-question consent form when it was not clear to counsel for Defendants where they were located.

As explained further below, the PIPL applies differently depending on whether a custodian resides in China or not.  For a custodian that is in China, the consent requirements of the PIPL apply to all documents at issue in this Motion, whether or not the documents are located in China.  For a custodian that is not in China, the PIPL consent requirements only apply to documents that are actually located in China.

**Custodians Outside of China.**  Of the 19 custodians, it is Defendants' understanding that eight currently reside outside of China.  *Id.* ¶ 24.  Thus the PIPL only applies to their data if that data is in China.  For five of those custodians, including named defendant Rong Chen,[3] Defendants have collected all of their responsive data, whether in China or elsewhere (Zach Warsavage, Donald Bullers, Hongjie Hu, and Leo Lei).[4]  *Id.*

Despite counsel for Defendants' extensive efforts, Fay Li, Clarence Liu, and Kevin Zhang (who are no longer associated with Elastos), did not provide consent.  *Id.* ¶ 25.  Because these individuals are in the U.S., Elastos was able to collect, review, and produce significant amounts of their Elastos data outside of China.  *Id.* ¶ 26.  Moreover, because they are in the U.S., and thus subject to Plaintiffs' subpoena power under Rule 45, Plaintiffs can pursue further discovery from these individuals (on top of the U.S.-based documents they have already received) if they believe it is necessary.  *See id.* ¶ 27.

---

[3] Plaintiffs' claim that Mr. Chen "has access to Elastos business documents" located in China (MOL at 23) is false.
[4] Contrary to Plaintiffs' baseless allegations, the collection of Leo Lei's documents is a clear showing of Defendants' good faith.  Counsel for Defendants initially believed that Leo Lei was located in China, and therefore he was entitled to withhold consent over the collection of data in social media accounts and personal devices, which he did in his signed consent form.  Once counsel for defendants confirmed that Leo Lei is actually located in Australia, we informed him that the PIPL did not apply and asked to collect those other documents.  He agreed to do so, and Defendants have now collected an additional 11,896 documents from him, including laptop efiles and WeChat messages, which they will review and produce in due course.

**Custodians in China.** Elastos was able to receive executed consent forms from ten of the eleven custodians in China. Of those ten that provided responses, nine individuals, including named defendant Feng Han, to collect Elastos email accounts. *Id.* ¶¶ 29-30. Moreover, five custodians (Feng Han, Song Sjun, Nan Yu, May Yuan, and Rebecca Zhu) consented to the collection of all of their Elastos documents.[5] *Id.* ¶¶ 29-30. Thus, all but one of the China-based custodians have consented to the collection of their Elastos email accounts, and half have consented to the collection of all of their data. *See id.* ¶ 31, Ex. 2.

E.      The Documents Plaintiffs are not Receiving due to the PIPL are not Essential

Plaintiffs' entire Motion boils down to whether Elastos should be forced to violate Chinese law to try and collect certain categories of data from certain custodians. But there is no showing of *why* these particular categories of documents are so important. The few individuals who refused collection of data are not named defendants in this action, nor were they directly involved in ELA Token sales in the U.S. And, Plaintiffs have already received tens of thousands of documents involving many of the disputed custodians. *Id.* ¶ 32.[6]

## ARGUMENT

The Motion should be denied because the PIPL bars the collection and production of the requested documents. Moreover, after applying the seven-factor comity analysis to this case, it is clear that there are no grounds for ordering Defendants to violate the PIPL. Finally, Defendants have waived nothing regarding the PIPL.

---

[5] Plaintiffs claim that certain custodians (*e.g.*, Rebecca Zhu) used personal accounts or devices while reporting in their consent forms that they did not. Plaintiffs provide no evidence to support their claim.

[6] Furthermore, Plaintiffs can obtain data through public sources for the custodians who refused the collection of personal social media accounts used for Elastos (Yipeng Su and Ben Li). And, as this court knows, Plaintiffs are already in the process of serving Hague Convention letters of request on several foreign-based cryptocurrency exchanges, and the same process is readily available to them for the custodians living in China.

I.      **CHINESE LAW BARS PRODUCTION OF THE REQUESTED DOCUMENTS**

The PIPL prohibits Elastos from producing documents containing personal information where the custodian of those documents has not provided express consent.  For the documents that Elastos has produced, the PIPL prohibits the production of personal information of individuals who have not provided express consent to have their personal information produced in this case.

Defendants' position on the PIPL is based on the opinions of Chinese lawyer Jianwei (Jerry) Fang.  Mr. Fang has law degrees from both U.S. and Chinese law schools, is admitted to practice in both the U.S. and China, and is an expert on Chinese personal information protection, data privacy, and cross-border document production issues.  *See* Expert Declaration of Jianwei (Jerry Fang) ("Fang Decl.") ¶ 3-5, Ex. 1.

Mr. Fang interprets and applies the PIPL to this dispute in his declaration, which accompanies this memorandum.  In addition, Mr. Fang's declaration explains why the interpretation provided by Plaintiffs' expert, Laura Wen-Yu Young, is inconsistent with the text of the PIPL.  Mr. Fang's declaration also details why Ms. Young is not qualified to render an opinion on the PIPL, because she is a U.S. lawyer, not a Chinese lawyer.

A.      The PIPL Applies to the Discovery Sought by Plaintiffs

The PIPL applies to this case because the documents sought by Plaintiffs contain "personal information," and the collection, processing, review and production of documents in this case is "personal information processing," under Article 4 of the PIPL.

**Elastos documents contain personal information.**  The PIPL broadly defines "personal information" as "various information related to an identified or identifiable natural person." PIPL at Art. 4.  Personal information includes many different categories of information, including (as Ms. Young notes) "name, date of birth, ID number, biometric information, address,

telephone number, e-mail address, health information, whereabouts information of the natural person, and the like." Young Report ¶ 28. There is no reasonable dispute that personal information exists in the documents sought by Plaintiffs.

Plaintiffs' main argument against the application of the PIPL is that the documents it seeks are business documents, instead of personal documents. MOL at 6-7, 13-14. But the PIPL does not have a "business documents" exception, nor does the definition of "personal information" turn on where the information is found. Personal information can be found in any context, including email correspondence for a business.[7] Fang Decl. ¶ 41. Plaintiffs' arguments to the contrary are divorced from the text of the PIPL itself.

**In this context, Elastos is a personal information processor.** Likewise, the PIPL defines "personal information processing" as "personal information collection, storage, use, processing, transmission, provision, disclosure and deletion, among others." PIPL at Art. 4. A personal information processor is a party that autonomously determines the purposes and means of personal information processing. *Id.* at Art 73, para 1. Therefore, where Elastos is collecting, processing, reviewing, and producing documents to Plaintiffs, Elastos is acting as a personal information processor. Plaintiffs' claim that "personal information processor" only covers large tech companies from processing the personal information of their customers. MOL at 13. But this purported interpretation is divorced from the PIPL itself, which merely speaks of "organization[s] or individual[s]" that process personal information. PIPL at Art. 73(1).

B.   Elastos Can Only Collect Documents with the Consent of Custodians

Because the documents sought by Plaintiffs contain personal information, and because Elastos is a personal information processor, under Article 13 of the PIPL, Elastos cannot process

---

[7] Plaintiffs' reliance on *Philips Medical Systems (Cleveland), Inc. v. Buan*, 2022 WL 602485, at *6 (N.D. Ill. Mar. 1, 2022) is misplaced because that case did not analyze the PIPL's consent requirement.

the documents sought unless "the individual's consent has been obtained," or if one of six other

narrow exceptions apply.  Fang Decl. ¶ 55.  As described above, Defendants have obtained

consent to "process" the vast majority of the documents that Plaintiffs seek.  For the few

categories of documents for which Defendants have not obtained consent, Article 13 prohibits

Defendants from processing those custodians' documents.

Plaintiffs' argument that one or more of the exceptions to Article 13 apply is wrong.  In

particular, Plaintiffs argument is founded on the incorrect assumption that the PIPL would take

into consideration the Federal Rules of Civil Procedure, in determining whether the exceptions

apply (*e.g.*, whether there are "statutory duties or obligations").  *See* MOL at 16-17.  But as Mr.

Fang explains, Chinese law would not consider foreign law in interpreting the PIPL, because the

PIPL is a law of territorialism, and because Chinese law generally rejects "long-arm

jurisdiction."  Fang Decl. ¶¶ 58-59.[8]

C.     The PIPL Applies to Documents In China and Some Documents Outside of China

Plaintiffs do not dispute that the PIPL applies to documents that are in China.  PIPL at

Art 3.  This includes any documents on Elastos' Tencent servers, as well as documents in the

personal devices and accounts of custodians in China.

However, the PIPL also has an extraterritorial provision, which applies to documents

outside of China, but which "analyz[e] or evaluat[e] the behaviors of natural persons within the

territory of the People's Republic of China."  PIPL at Art. 3(2).  The purpose of the discovery

sought by Plaintiffs is, on its face, to understand the conduct of Elastos custodians (many of

---

[8] Plaintiffs' claims that a relative could revoke the consent of a decedent are similarly unfounded.  *See* MOL at 15.
Art. 49 limits close relatives' rights to "legal and legitimate" interests, meaning that if the deceased individual had
entered into a consent form that gave a personal information processor the right to process that individual's personal
information after death, the relatives would not have any right to change the decisions of the deceased person.  Fang
Decl. ¶ 80.

whom are in China), and Plaintiffs are therefore looking to "analyze" or "evaluate" their behavior.  Fang Decl. ¶ 67.  Plaintiffs' suggestion that the PIPL is meant to prevent tech companies from analyzing consumer behavior (MOL at 17-8) is again not based on the text of the PIPL itself.

> ### D.   <u>Elastos Could be Subject to Substantial Penalties If Forced to Violate the PIPL</u>

If Elastos is ordered to violate the PIPL, it could be subject to significant penalties. Under Article 66, potential administrative penalties include the suspension or termination of business services, and fines can reach up to one million RMB (approximately $150,000). Moreover, violations of the PIPL can subject a personal information processor to potential civil liability.  *See* PIPL at Arts. 44, 69.  And while the PIPL has been effective for less than a year, multiple administrative penalties have already been imposed on violators.  *See* Fang Decl. ¶ 72.

> ### E.   <u>This Court Should Give No Weight to Plaintiffs' Expert</u>

Plaintiffs' arguments regarding the PIPL are based solely on Ms. Young's expert opinion. As summarized above, and as explained in greater detail in Mr. Fang's declaration, Ms. Young's opinions regarding the application of the PIPL to this case are entitled to no weight because they are inconsistent with the text of the PIPL itself, as well as basic Chinese law.  That Ms. Young's opinions are incorrect is not surprising, given that she is not qualified to provide any opinion on Chinese law at all, much less an opinion on the newly-enacted PIPL and the principles of personal information protection under Chinese law.

Unlike Mr. Fang, who is a Chinese lawyer, Ms. Young is a U.S. lawyer.  She has not attended a Chinese law school, and is not admitted to practice law in China.  *See* Young Report ¶ 5.  Because under Chinese law, only China-qualified attorneys may advise on Chinese laws, Ms. Young's report is actually a violation of Chinese law.  *See* Fang Decl. ¶ 18.

Recognizing her lack of expertise, Ms. Young cites her status as the chief representative of her U.S. law firm's office in China, and an alleged designation as a "foreign legal expert" by the Ministry of Justice of China.  Young Report ¶ 5; Ex. 1 at 2.  But as a representative of a U.S. law firm in China, she is not qualified to provide an opinion on Chinese law, and is affirmatively prohibited from conducting "affairs on Chinese law."  Fang Decl. ¶ 25.  Moreover, her designation as a "foreign legal expert" by the Ministry of Justice does not appear to even exist. *Id*. ¶ 19.  Instead, she may only be referring to an immigration designation that merely permits an individual to apply for a Chinese visa, and nothing more.  *Id*. ¶¶ 26-29.

Finally, her own experience demonstrates that she has no qualifications to opine on the PIPL.  Instead, her specialty is in general corporate matters (Young Report ¶ 6), and her academic work relates to "foreign investment and business operations in China, Intellectual Property, and Chinese legal history."  *Id*. ¶ 7.  The expert reports and testimony she has proffered in the past have nothing to do with what is at issue in Plaintiffs' Motion.[9]

## II.     COMITY ANALYSIS DOES NOT REQUIRE PRODUCTION

This court should not force Defendants to risk liability under Chinese law for non-essential documents in response to Plaintiffs' overreaching requests.  The Supreme Court has cautioned courts to "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position . . . [and] always seek to minimize [foreign litigant's] costs and inconvenience and to prevent improper uses of discovery requests."  *Societe Nationale Industrielle Aérospatiale v. United States Dist. Ct. S.D. Iowa,* 482 U.S. 522, 546 (1987).

---

[9] *See Integrated Communications v. HP Financial Services*, No. 1:16-CV-10386 (D. Mass.) (relating to business licensing, customs requirements, and taxation); *Industrial Technology Research Institute v. LG Electronics*, No. 3:13-cv-02016-GPC-WVG (S.D. Cal.) (relating to Taiwanese patent law); *Nautilus v. Icon*, No. 5:16-cv-00080 (W.D. Tex.) (relating to Chinese patent law).

When considering whether to compel production of documents in contravention of foreign law, courts in the Second Circuit apply a seven-factor comity analysis.  *Aérospatiale* 482 U.S. at 544 n.28; *Wultz v. Bank of China Ltd.,* 910 F. Supp. 2d 548, 552-53 (S.D.N.Y. 2012). The factors are:

> (1) the importance to the investigation or litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located; (6) the hardship of compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery.

*Wultz,* 910 F. Supp. 2d at 553.  While courts consider whether the party resisting production is a party to the litigation (MOL at 19), the seven-factor analysis is applied the same for parties and non-parties.[10]

Many district courts have concluded that, after undertaking the *Aérospatiale* analysis, foreign parties should not be ordered to produce documents in violation of foreign law.  *See Doubleline Capital LP v. Odebrecht Fin., Ltd.*, 2021 WL 4596561 (S.D.N.Y. Oct. 6, 2021) (Brazilian data security law); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160 (S.D.N.Y.

---

[10] The Motion relies upon *Wultz* for the proposition that a person's status in the litigation is part of the comity analysis, yet the language Plaintiffs point to from that case merely contextualizes the Defendant's resistance to document production in light of their behavior in other related actions.  MOL at 19; 910 F. Supp. 2d at 553 ("This is not the first case in which a party has sought the production of documents by [defendant], [defendant] has objected that production would threaten it with civil and criminal liability under China's bank secrecy laws . . .").  Notably, no other case cited by Plaintiffs pays particular attention to whether or not the person resisting discovery is or is not a party to the action, nor does the record of the substantial efforts undertaken by Defendants to comply with commitments under both U.S. and Chinese laws support Plaintiffs' assertions that Defendants are "hid[ing] behind the PIPL."  MOL at 19; *see Laydon v. Mizuho Bank, Ltd.* 183 F. Supp. 3d 409, 420 (S.D.N.Y. 2016) (applying seven-factor analysis, and discussing that "[c]ourts also often ***consider*** whether the person resisting discovery is a party to the litigation . . .") (emphasis added) (internal citations and quotations omitted); *but see Wu v. Sushi Nomado of Manhattan, Inc.*, 2021 WL 7186735, at *10 (S.D.N.Y. Oct. 29, 2021) (not discussing whether the person was a "party to the litigation" in the comity analysis when stating that "courts in the Second Circuit consider seven factors, the first five of which are drawn from *Aérospatiale*.") (internal citations and quotations omitted).

2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, 2011 WL 11562419 (S.D.N.Y. Nov. 14,

2011) (various Chinese laws); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517,

529 (S.D.N.Y. 1987) (Swiss banking secrecy laws); *Campbell v. Facebook Inc.*, 2015 WL

4463809, at *5 (N.D. Cal. July 21, 2015) (Irish data protection law).

In this case, all seven factors weigh against ordering production.[11]

A.      The Documents Sought Are Not Vital to Plaintiffs' Case

The documents sought by Plaintiffs are not vital to this case.  The Supreme Court, in

*Aérospatiale*, held that courts must square the broader scope of civil discovery in the United

States with that of foreign jurisdictions by "applying a more stringent test of relevancy" to

determine whether the documents at issue are vital to the litigation.  *Aérospatiale*, 482 U.S. at

546; *see also Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *6 (D.N.J. Jan. 30, 2020)

(holding that "the information sought [must be] ***directly relevant and necessary*** to the parties'

claims and defenses") (emphasis added); *Richmark Corp. v. Timber Falling Consultants,* 959

F.2d 1468, 1475 (9th Cir. 1992) (noting that "where the outcome of the litigation does not stand

or fall on the [] discovery order" courts generally do not order production) (citations and

quotations omitted).  Thus, the *Aérospatiale* standard for foreign litigants contrasts with the

Federal Rules, in that the requested documents must be more than merely relevant—they must be

"***vital***" or "***crucial***."  *See Richmark,* 959 F.2d at 1475 (holding that the information sought was

not merely relevant, but "crucial.");  *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,

2013 WL 2661037, at *8 (S.D.N.Y. 2013) (observing that, while there is no exact standard for

---

[11] Plaintiffs' prefatory argument that Defendants' objection fails because Defendants have not identified any documents barred by the PIPL (MOL at 12-13) makes no sense.  Defendants have made an "accounting identifying the documents" not being collected under the PIPL, and those categories are described herein.  Plaintiffs' complaint that Defendants have not provided a log to identify specific documents that we cannot produce fails to acknowledge that the PIPL expressly limits the collection of documents; thus Defendants are not capable of providing more detail than what they have provided.  Finally, Plaintiffs' reliance on the *Philips* decision is misplaced, because the *Philips* court did not analyze the scope of the PIPL's consent requirement.

what constitutes "importance," "courts examine the role that the desired information plays in the action.").

The documents at issue are not vital or crucial to the claims at issue.  This is not a securities fraud action where the wide-ranging discovery is key to proving materiality, reliance, scienter, falsity, and loss causation.  Instead, the *Howey* test is likely to determine this dispute. 328 U.S. 293 (1946).  Moreover, Plaintiffs' Amended Complaint largely hinges on *public* statements made by those who allegedly offered the unregistered security to prove their claims. Likewise, the court in *Wultz* found that in disputes that do not involve the funding of terrorism, it is "reasonable to limit foreign discovery to information [that is] necessary to the action . . . and directly relevant and material … rather than information that could lead to admissible evidence." 910 F. Supp. 2d at 556 (quotations omitted).

In *Valsartan*, a case about *23 specific documents*—not the type of broad-based document collections that Plaintiffs seek here—the opinion relied upon other trade secret cases where the documents sought were central to the dispute.  *See In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.,* 2021 WL 6010575, at *3 n.3 (D.N.J. Dec. 20, 2021); *see also Fenerjian v. Nong Shim Co.*, 2016 WL 245263 (N.D. Cal. Jan. 21, 2016) (analyzing the importance of the *contact information of three witnesses* alleged to be involved in the price fixing scheme at the heart of the case)

*Laydon* and *Royal Park* are inapposite.  The party resisting discovery in *Laydon* "did not directly contest [the importance of the documents]," which is not the case here.  183 F. Supp. 3d at 420.  And while the court in *Royal Park* held that prior productions did not relieve the obligation to produce further documents, it concluded that this factor would ***not*** "weigh heavily

in favor of or against production" given uncertainty about documents' relevance.  *Royal Park Inv. SA/NV v. Deutsch Bank Nat'l Tr. Co.*, 2017 WL 7512815, at *10 (S.D.N.Y. 2017).

      B.    <u>Plaintiffs' Overreaching Discovery Requests are Not Specific</u>

        The second factor weighs in favor of Defendants because Plaintiffs' document requests are not specific or narrowly tailored.  Under *Aérospatiale*, the second factor considers the degree of specificity of the requests for foreign discovery because "generalized searches for information . . . are discouraged."  *Richmark*, 959 F.2d at 1475; *see also Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 440-41 (E.D.N.Y. 2008) (analyzing whether the document requests in dispute are "narrowly tailored" to the claims of the litigation).  The court should not be fooled by Plaintiffs' attempts to focus its attention on the specificity of Defendants' *objections*, and not the specificity of the document *requests* themselves.  The second factor in the *Aérospatiale* test considers "the degree of specificity of the request."  482 U.S. at 544 n.28.[12]

        The requests at issue are not narrowly tailored.  Plaintiffs served 30 broad document requests all of which seek a large swath of information.  *See, e.g.*, Bleichmar Decl. Ex. 1; (Document Request No. 5: "All marketing or promotional materials concerning Elastos and/or ELA Tokens, including, but not limited to, advertisements, social media posts, white papers, prospectuses, and offering materials.").  Defendants agreed to produce documents in response to the vast majority of those requests.  Yet Plaintiffs' Motion seeks documents in response to ***all*** of those requests.  *Doubleline* is instructive.  There, the court denied production in part because the document requests were "not narrowly tailored to obtain the information plaintiffs claim they actually need . . . they asked for what is effectively the entire [database], which apparently

---

[12] The Motion quotes *Gucci Am., Inc. v. Curveal Fashion*, without providing context for the reasoning in that case. 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010) (concluding that even though the objections lacked specificity, the factor went in favor of forcing production because "[i]n any event, [defendant] has been *requested to produce a specific, discrete source of information*.") (quotation marks omitted).

consists of "terabytes" of data.")  2021 WL 4596561, at *12 (citations and quotations omitted).

Similarly, other courts applying this factor specify that the standard "do[es] not favor compelling

discovery when the moving party presents burdensome, generalized searches for information."

*Fenerjian,* 2016 WL 245263, at *4.  This factor weighs in favor of Defendants.

      C.    <u>All Documents at Issue Originated in China</u>

All of the documents at issue in Plaintiffs' Motion originated or are otherwise located in

China.  For U.S. based custodians, the PIPL only applies to documents on Chinese servers.  The

only non-China based custodian who has not consented to the collection of documents on

Chinese servers is Fay Li, and who is subject to Rule 45 subpoenas.  For custodians in China,

their documents, by definition, originated in China, and the vast majority of such documents are

still located in China (*e.g.*, on personal devices).  Plaintiffs' attempt to obfuscate *Aérospatiale*

through a convoluted discussion of where some documents are allegedly *stored* or if they may be

*accessible* outside of China.  But this factor concerns whether the documents *originated* in

China, and therefore it weighs in favor of Defendants.

      D.    <u>The Information Sought can be Obtained Through Other Means</u>

There is no need to force Defendants to violate Chinese law because the disputed

materials can be obtained through other means.  Courts assume that "[i]f the information sought

can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign

law."  *Richmark,* 959 F.2d at 1475; *see also CE Int'l*, 2013 WL 2661037, at *10 (denying motion

where the requestor could reasonably obtain the information elsewhere).

Plaintiffs can readily access additional information sought in their Motion through

Rule 45 subpoenas or the Hague Convention.  In Defendants' June 8 letter, Defendants provided

the contact information for the three U.S. based custodians who had not provided consent to the

collection of their documents.  Likewise, Defendants have not objected to Plaintiffs' use of the Hague Convention.  *See, e.g.*, Dkt. 122 (joint letter on Hague Convention).

Furthermore, the documents at issue here are likely cumulative, given the tens of thousands of documents already produced where the individuals who have refused consent were communicants on emails and attachments.  *Campbell* denied production, and held that because the plaintiffs had already received *information* responsive to the disputed request, they therefore had "alternative means of obtaining similar if not the same information" because "where the evidence sought is . . . largely cumulative of records already produced, courts are more reluctant to require production."  2015 WL 4463809, at *4 (citations and quotations omitted).  *Valsartan* does not control the facts at hand.  In that case, the moving party sought 23 reports to Chinese regulators that were unobtainable through other means because of the state security law.  2021 WL 6010575, at *15.  Plaintiffs here are moving on a variety of broad requests.  And while the *Valsartan* court did not find the documents in question to necessarily be cumulative of previous productions, it ultimately held that this "factor favors neither disclosure nor non-disclosure."  *Id.*

E.    The Sovereign Interests of the U.S. and China

In balancing the interests of American and foreign courts, U.S. courts respect foreign privacy statutes, especially when the violation of those laws would result in severe penalties or fines.  *See, e.g.*, *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1279-81 (7th Cir. 1990) (finding Romanian interests in protecting citizens' privacy was important as demonstrated by its broad scope and severe penalties associated with its violation).

While Plaintiffs are correct in pointing to the U.S.' interest in upholding the Federal Rules, and for litigants to have access to discovery and be able to vindicate their rights, those interests are not at risk in this dispute.  MOL at 26; *Fenerjian*, 2016 WL 245263, at *5.

Defendants have complied with the Federal Rules and Plaintiffs have access to a vast amount of relevant discovery to fully and fairly pursue their claims.

Plaintiffs' claims that a protective order is sufficient to protect the privacy interests of individuals is a non sequitur in this dispute, which concerns lack of consent.  Indeed, the two cases that have discussed the PIPL, *Valsartan* and *Phillips*, did not engage with the law's consent requirement.  *See also Laydon*, 183 F. Supp. 3d at 425 (failing to discuss consent requirements under U.K. privacy laws in finding that a protective order assuaged any concerns under that foreign law).  And while the Korean data privacy law at issue in *Fenerjian* also included a notice and consent mechanism, that case's discussion of this factor does not control because, while a protective order may protect information that is *produced* in litigation, it has no bearing on *consent* from individuals to *collect* the information in the first place.  2016 WL 245263, at *5-6.

Plaintiffs' reliance on *United States v. Davis*, 767 F.2d 1025, 1035 (2d Cir. 1985), and *United States v. First Nat'l City Bank*, 396 F.2d 897, 904 (2d Cir. 1968) for the premise that the Chinese government's silence supports production, is off-base.  Both of those authorities dealt with *criminal* charges, and involved situations where foreign authorities were *not* silent, but rather actively involved.[13]  Therefore, this factor weighs in favor of Defendants because they should not be forced to violate Chinese law for materials that are not essential to the litigation.

F.    Defendants, Including Defendants' Agents, May be Liable under Chinese Law

If this court orders the production of the disputed materials, Defendants, their counsel (including attorneys based in China), and their e-discovery vendors, face severe liability under the PIPL.  Fang Decl. ¶¶ 53, 69-73.  "If compliance with a discovery request would subject the

---

[13] Plaintiffs' cherry-picked quotations are misleading in omitting language to suggest that the Chinese government's silence shows a lack of interest in the enforcement of the PIPL.  *Davis,* 767 F.2d (noting that "the affirmative cooperation of the Cayman Attorney General is significant"); *First Nat'l City Bank*, 396 F.2d at 900, n.5 (citing a statement from the German Consulate General defining the German policy of bank secrecy).

party on whom compliance is sought to liability or sanctions, this factor will weigh against compelling disclosure." *CE Int'l,* 2013 WL 2661037, at *15.  Defendants "need not prove that they will certainly be punished if forced to comply . . . but they must show that the possibility of civil and/or criminal punishment for disclosure is more than speculative." *Tiffany,* 276 F.R.D. at 158.

The recent adoption of the PIPL should be considered in determining the likelihood of prosecution under that law.  Already there have been multiple administrative orders entered against companies for violating the PIPL.  *See* Fang Decl. ¶ 72.  And while some cases, such as *Tiffany*, at 149, and *Meggitt Inc. v. Yongzhong,* 2014 WL 12967458, at *3(C.D. Cal. Mar. 21, 2014) consider the history of prosecutions under long-standing foreign laws, the PIPL has only been in place since November 2021.  Fang Decl. ¶ 36.  *CE International* instructs that this factor "considers two related factors: [the] possibility of sanctions and the status of the entity in the underlying action."  2013 WL 2661037, at *14.  There, the court denied the motion to compel production, in part because "compelling disclosure would put non-party Deutsche Bank or its employees at risk of criminal sanctions."  *Id.*  Accordingly, this factor weighs heavily in favor of Defendants because of the severe risk to them, and their counsel and vendors, under the PIPL.

G.     Defendants Have Acted in Good Faith

Defendants' good faith weighs heavily in favor denying Plaintiffs' Motion.  Defendants, including individual defendants Rong Chen and Feng Han, have provided consent for the collection of their data, and have committed to processing the documents of all custodians covered by the PIPL who provide their consent.  At no time have Defendants' response to Plaintiffs' discovery requests been dilatory and obstructive and Plaintiffs' statement to the contrary is false and unsupported by the facts.  Unlike *Laydon*, where the responding party sought to avoid compliance with all discovery obligations, *see* 183 F. Supp. 3d at 425,

Defendants have done their best to navigate a complex and uncharted legal landscape, and, in the process, have produced 245,314 documents to Plaintiffs.

This factor weighs heavily in favor of Defendants as they conducted a thorough consent, collection, and production process while balancing their obligations under U.S. and Chinese Law. *Contra Wultz*, 942 F. Supp. 2d at 469 (finding bad faith where party resisting discovery was dilatory and evasive in its communications to both the court and opposing counsel).

## III.  PLAINTIFFS' WAIVER ARGUMENT FAILS

Defendants have made abundantly clear to Plaintiffs throughout this lawsuit that Chinese law would impact the production of documents.  The issue was expressly raised with the court at the December 22, 2021 conference.  *See* 12/22/2021 Hr'g Tr. at 7:4-12 (Dkt. 92) (discussing "the various complex Chinese data privacy laws that we will need to work through" to produce materials from China.).  Defendants preserved their ability to assert Chinese Law as an objection in their February 25, 2022 responses and objections, and amended those responses and objections on May 4, 2022.  The parties extensively discussed how Chinese law, and in particular the PIPL, would affect document production during meet and confer calls and letters in March, April, and June.  And Defendants April 13, May 4, and June 8 letters detailed how Chinese law, and in particular the PIPL, would affect document production.

Moreover, because Plaintiffs have been on notice of Chinese law issues since the start of discovery, they are unable to identify any way in which they have been prejudiced.  *See VFS Fin., Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329, 335 (S.D.N.Y. 2014) ("[N]otice to the opposing party is the crux of the waiver doctrine"); *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) ("The key to a waiver analysis is prejudice").

Plaintiffs' Motion will be addressed long before the December 15, 2022 fact discovery cutoff.  *Cf. Foster v. Lee*, 93 F. Supp. 3d 223, 230 (S.D.N.Y. 2015) (finding defendant waived

affirmative defense where argument was not raised until after close of discovery).  The Federal Rules of Civil Procedure explicitly contemplate, and may require, a party supplementing or amending its discovery responses.  Fed. R. Civ. P. 26(e)(1).  And Plaintiffs' assertions that the amended Responses and Objections were insufficiently detailed is faulty, because Defendants' correspondence on the topic were more than specific for the requirements of Rule 34.

Plaintiffs' cases change nothing.  The relevant analysis in *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278351, at *1 (S.D.N.Y. Apr. 6, 2018), is limited to a few sentences, and says nothing about the impact of foreign law on discovery, or the requirement to assert such law in written responses and objections.  Moreover, even after holding that certain objections were waived, the court did in fact place related limitations on the request.  *Fischer v. Forrest*, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) likewise does not support plaintiffs' arguments.  While the court in *Fischer* did explain that Rule 34 requires objections to be stated with specificity and thus general objections will not always be appropriate, the court goes on to recognize that general objections may still be used where "each such objection applies to each document request."  *Id.* at *3.  Defendants' general objection regarding requests that would require Defendants to violate specific Chinese laws is not the type of "meaningless boilerplate" found in *Fischer*, but rather contains the requisite specificity.  *Id.*

## CONCLUSION

WHEREFORE, Defendants respectfully submit that the Motion should be denied.

Dated:  New York, New York          By:      */s/ Kenneth P. Herzinger*
        July 8, 2022                         Kenneth P. Herzinger
                                             Carl P. Hudson
                                             Erin Zatlin
                                             PAUL HASTINGS LLP
                                             101 California Street
                                             Forty-Eighth Floor
                                             San Francisco, California 94111
                                             Telephone: 1(415) 856-7000
                                             kennethherzinger@paulhastings.com
                                             carlhudson@paulhastings.com
                                             erinzatlin@paulhastings.com

                                             Zachary Zwillinger
                                             200 Park Avenue
                                             New York, New York 10166
                                             Telephone: 1(212) 318-6000
                                             zacharyzwillinger@paulhastings.com

                                             *Attorneys for Defendants*