**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARK OWEN, Individually and On Behalf of All Others Similarly Situated, | Hon. Gregory H. Woods |
| | Civil Action No. 1:19-cv-5462-GHW |
| Plaintiff, | |
| vs. | **EXPERT REPORT OF LAURA WEN-YU YOUNG REGARDING INAPPLICABILITY OF CHINA'S PERSONAL INFORMATION PROTECTION LAW TO THE OBLIGATION TO COMPLY WITH U.S. COURT PROCESSES** |
| ELASTOS FOUNDATION, FENG HAN, and RONG CHEN, | |
| Defendants. | |

Respectfully submitted this 22 day of July, 2022:

_____

### I.    INTRODUCTION

1.        I, Laura W. Young, submit this report as a rebuttal to various opinions set forth in the July 8, 2022 Expert Report of Jerry Jianwei Fang.

2.        In preparing my opinions, I considered the materials cited in Mr. Fang's report and in my Opening Report.  Additional materials I considered are listed in **Exhibit 1** to this report, and in the citations below.

### II.    REBUTTAL TO MR. FANG'S REPORT

#### A.  I Am Fully Qualified for this Action

3.        Mr. Fang seeks to extend China's Law on Lawyers to govern the activities before this Court.  Mr. Fang claims that my report to this Court is a violation of China's Law on Lawyers ("LOL"), which was promulgated on May 15, 1996.  I and many other American scholars and

lawyers have acted as advisors and experts on Chinese law before and after the LOL was promulgated.  Many notable U.S. experts on Chinese law include academics and professors such as NYU's Jerome A. Cohen, UC Berkeley's Stanley Lubman, George Washington's Donald Clarke, Daniel Chow, and many others, I understand are not members of the All China Bar Association or admitted to practice in China.  In addition, some Western lawyers residing in China appeared in Chinese courts without admission by appearing as an appointed *agent ad litem* rather than as an attorney at law.  The Supreme People's Court Provisions on the Application of the Civil Procedure Law of the PRC, allow a foreign party in a civil action involving foreign elements to entrust a citizen of his/her own country as an *agent ad litem* in China, or a lawyer of his/her own country as an *agent ad litem* in China.  (Supreme People's Court Provisions on the Application of the Civil Procedure Law of the PRC, Article 526.)  However, this case presents no such situation.  This case is in U.S. District Court, adjudicating claims under U.S. securities laws, for U.S. litigants.

4.     China's LOL clearly states that it was enacted to improve the practice of lawyers and "enable lawyers to play their role in the development of the socialist legal system" (LOL, Article 1).  China's LOL governs Chinese lawyers practicing law in China but does not govern foreign lawyers acting in foreign courts, and Mr. Fang cites no authority to the contrary.

5.     My opinion is based on my years of teaching, my experience for the past nearly 35 years both in and outside of China, and publishing, lecturing, and advising clients on matters of Chinese law.  Since 1988, I have specialized in advising Western companies regarding compliance with Chinese law.  I am fluent in Chinese and have significant experience teaching, both in and outside of China, and publishing and lecturing on matters of Chinese law, including more than twenty years as Professor of Law at the Kenneth Wang School of Law, Suzhou University, in China.  I am familiar with a range of digital privacy laws enacted in a variety of countries, all of

which were reference points for China's legislative team preparing the PIPL.  (See, for example, interview with Stanford University's *DigiChina*, and Chinese Academy of Sciences Vice President Zhou Hanhua, accessible in English at: https://digichina.stanford.edu/work/top-scholar-zhou-hanhua-illuminates-15-years-of-history-behind-chinas-personal-information-protection-law/.)    I taught legal courses on International Intellectual Property and covered the European Union General Data Protection Regulations, and the Taiwan Personal Data Protection Act.

6.    The Regulations on the Administration of Foreign Law Firms' Representative Offices ("RAFLFRO") in China governs the practice of representative offices of foreign law firms in China, but does not govern the practice of foreign law firms or foreign lawyers conducted outside of China.  Neither China's LOL, nor any other Chinese law or administrative regulation, prohibits me from issuing my opinion, stating my experience in a U.S. court of law, or assisting U.S. clients in a U.S. court.  Mr. Fang seeks to apply the RAFLFRO to the conduct of foreign lawyers in foreign countries.  This is an incorrect use of the regulations.  In asserting his incorrect position, Mr. Fang cites to a Shanghai administrative decision that is irrelevant here.  The Shanghai Judicial Bureau issued a penalty against the Shanghai foreign representative office of Faegre Drinker Biddle & Reath LLP on December 22, 2021, because its Shanghai employee provided legal services advising on Chinese law to a Shanghai company in China.  In that case, the employee was in China, the Chinese client was in China, and the client sought legal advice under Chinese law.  In this case, the parties, the U.S. securities laws at issue, and the court are in the USA, not China, and so not within the territorial reach of the RAFLFRO.

7.    Mr. Fang fails to describe any experience or qualifications for his assertion that he is an expert on the PIPL.  His firm website shows his expertise as "Compliance & Anti-corruption, Litigation & Arbitration, Antitrust & Competition," but does not list experience with privacy

regulation or even intellectual property (which covers issues raised by new technology, including privacy regulation).[1]

### III.   MR. FANG INCORRECTLY APPLIES THE PIPL

#### A. The PIPL Does not Apply to Business Records

8.     Mr. Fang concludes that the act of collecting, reviewing, and processing information qualifies Elastos as a "personal information processor" under the PIPL.  (Fang Report, para 47 and headline C.)  Mr. Fang's logic is that because Elastos has stored documents including emails, it is a personal information processor.  He notes that "[t]here are no limitations on what constitutes personal information processing, aside from what is provided in Article 4."  (Fang Report, para 47.)  Under his reading, everyone is a personal information processor subject to the dictates of the PIPL, including "[Mr. Fang's] firm, Elastos' U.S. counsel, Elastos' contract attorney vendor, and Elastos' eDiscovery vendor."  (Fang Report, para 53.)   Under his logic, Defendants' counsel and the Court qualify as well by virtue of possessing Elastos business communications, employee names, or employee email addresses filed in connection with this motion.

9.     While it can be true that personal information and business can co-exist, such as for a company that markets to online users, this broad possibility does not mean that every business record of all businesses is covered by the PIPL or that the PIPL converts every Elastos business record with an employee's name or email address into personal information belonging to Elastos employees.

10.     Elastos asserts that Plaintiffs' request for business records would require a response that consists of emails and WeChat records that are protected by the PIPL as personal and private. (Fang Report, para 83.)  However, I understand that Plaintiffs seek the business records of Elastos,

---

[1] http://www.zhonglun.com/Content/2016/12-02/1413520202.html

and at no time sought the personal information of Elastos employees.  There is no Chinese law that prohibits Elastos from producing its records related to its business operations located in China, aside from laws to protect national security.  Mr. Fang has conceded that Chinese national security concerns do not arise in the requested documents.  (Fang Report, para 95.)

11.     For all businesses, it is normal that an employee's conduct is reviewed by the employer, and an employer naturally keeps records of its business performance and employees' conduct for operating its business and improving its performance.   The documents used and stored by a business related to the performance of employees in fulfilling their job duties do not raise a right to personal privacy such that the PIPL empowers the employee to prevent an employer from storing, accessing, or processing such records.  In the employment context, such information is not the personal and private information belonging to the employee.  Documents related to employees' health and personal tax records, etc. are of course private, but I understand those records are not at issue in this action and were not requested.

### B.  Mr. Fang's Interpretation Would Prevent Normal Business Operations of All Businesses in China

12.     Elastos' application of the PIPL to its business documents, including the emails, texts, and correspondence sought in this litigation, is incorrect.  The PIPL is not intended to provide a shield to prevent records made in the ordinary course of business, such as correspondence in the form of emails, or texts from being reviewed to evaluate the behavior of a company.  In fact, Mr. Heqing Yang, Vice Director of the Economic Laws Office of the Legislative Affairs Commission of the Standing Committee of China's National People's Congress ("NPC ELO"), and one of the drafters of the PIPL, published a book shortly after the PIPL took effect to further explain the legislative history and intent of the PIPL, article by article.  In explaining the PIPL's Article 3(2)

language, "analyzing or evaluating the behaviors of natural persons within the territory of the

People's Republic of China" Mr. Yang states,

> "Using personal information for analysis and evaluation activities usually
> requires continuous recording and tracking of relevant personal
> information, and through subsequent processing technology the analysis or
> prediction of personal behavioral habits, interests, hobbies, or economic,
> health, credit status, etc., such as using user portrayals for marketing or
> making automatic decisions."

The emails and text records of Elastos employees fulfilling their job duties related to their

marketing of Elastos' crypto tokens do not fall within the parameters of Article 3, according to

Mr. Yang, a drafter of the PIPL. (Exhibit 1, excerpts from *Interpretation of the Personal*

*Information Protection Law of the People's Republic of China ("Interpretations of the PIPL)*, by

Heqing Yang.)

13.     As can be seen from the broad scope of rights in the PIPL provided in Article 4,

Mr. Fang's application of the PIPL to all business records would lead to absurd results.  The PIPL's

Article 4 provides "Personal information' refers to various information related to an identified or

identifiable natural person recorded electronically or by other means, but does not include

anonymized information."  As noted in my first report, for a more detailed list of types of personal

information, one must refer to the Civil Code, which provides guidance in the absence of specific

direction in statutes.  The Civil Code defines personal information as follows:

> "Personal information is all kinds of information recorded in electronic
> or other ways that can identify a specific natural person alone or in
> combination with other information, including the name, date of birth,
> ID number, biometric information, address, telephone number, e-mail
> address, health information, whereabouts information of the natural
> person, and the like."  (Civil Code, Article 1034, (available    at:
> http://en.npc.gov.cn.cdurl.cn/pdf/civilcodeofthepeoplesrepublicofchina.
> pdf )

Under Mr. Fang's interpretation, the employee's email address on emails and use of an employee's

name on ordinary business records converts those business records into personal information.

Since PIPL Article 44 provides, "Individuals have the right to…restrict or refuse the processing of their personal information by others," PIPL Article 45 provides, "Individuals shall have the right to consult and duplicate their personal information," and PIPL Article 47 provides that "an individual has the right to request the deletion of his personal information," Mr. Fang's reading of the PIPL to all business records would require Elastos to delete emails and business records or provide copies when demanded by an employee.  Among other things, such an interpretation would run counter to China's trade secrets protection regime. This is not the intention of Chinese authorities.

14.     Mr. Fang states that there is nothing in the PIPL that limits its application to personal information related to, "'personal lives or online activities' in an apparent contrast to individuals' professional activity." (Fang Report, para 77.)  Mr. Fang's interpretation would also require Elastos to delete emails and business records when demanded by an employees' heirs and close family members on an employee's death.  (PIPL, Article 49, in conjunction with Article 47.) Mr. Fang blithely states that such an interpretation is wrong because a company could just require employees to waive their rights upon employment: "Therefore, a personal information processor can avoid Ms. Young's "nonsensical" outcomes by creating straightforward policies or other means of obtaining consent." (Fang Report, Para 80.)  Mr. Fang either failed to notice, or somehow differently interprets Article 14's requirement that "consent shall be voluntary, explicit, and fully informed." (PIPL, Article 14.)  It is unlikely that a unilateral employment policy imposed on new employees would qualify as voluntary and fully informed, even if explicit.  Mr. Fang's advice is not consistent with the PIPL.

15.     Mr. Fang tries to address the absurdity of his expansion of the PIPL to any and all business records that contain an employee name or were sent out from an employee text or email

address, by stating that an employee's withdrawal of consent is not retroactive.  (Fang Report, para 80.)  He also notes that the PIPL provides an escape valve so that information need not necessarily be destroyed as long as all processing is ceased.  (Fang Report, para 81.)  Such an interpretation provides no real solution to the beleaguered companies of China who, according to Mr. Fang, will be allowed to retain their files and archives, but will be tasked with figuring out how to selectively prohibit all personnel from accessing or using portions of those files.

### C. Mr. Fang Misapplies the PIPL's "Public Interest" Exception

16.     Mr. Fang goes on to misrepresent the plain meaning of the English in my first report, and accuse me of "ignor[ing] the fact that the PIPL is a law of territorialism. (sic)"  (Fang Report, Para 58, citing to Young Report, Paras 44-46.)  He ignored and omitted the first sentence in both of my paragraphs 45 and 46, "As stated, the PIPL does not apply to this litigation."  He also ignored and omitted my sentence, "But even if they were deemed so, there are four exceptions to allow the production of this information under the PIPL..."  (Young Report, Para 43.)

17.     Similarly, Mr. Fang's argument about the Supreme People's Court's Provisions is premised on ignoring or omitting the word "if" in my paragraphs 39-42.  I specifically said that if the case were before a Chinese court, the Provisions would apply, and a court would have the power to find against the party that refused to provide evidence.  The point is that in this respect, Chinese courts would adjudicate in a manner similar to courts located in the USA.

18.     Mr. Fang also seeks to apply the PIPL with one hand and remove it with the other hand.  He states first that the records sought by Plaintiffs qualify as personal information and that the PIPL applies to prohibit their production, but then states that the exceptions to the PIPL do not apply.  (Fang Report, paras 58, 62.)  If he is going to apply the PIPL, then he should not do so selectively.

19.     Mr. Fang further misunderstands the public interest exception.   Consumer protection is in the public interest, and Chinese authorities have clearly expressed the importance of protecting consumers in many statutes, such as the E-Commerce Law, the Anti-Unfair Competition Law, the Administrative Procedure Law, etc.    Chinese authorities studied cryptocurrencies as a matter of grave concern to the public interest, and after years of study, the People's Bank and multiple agencies banned the sales and distribution of cryptocurrencies and transactions in cryptocurrencies in China in 2021.   But before that there were several sets of administrative notices issued.   I understand that China's ban on initial coin offerings influenced Elastos to cease marketing to China investors in the fall of 2017.   On September 4, 2017, The People's Bank of China, jointly with 6 other financial regulatory agencies, issued the Announcement on Preventing the Financial Risks of Initial Coin Offerings, available at http://www.cac.gov.cn/2017-09/04/c_1121603512.htm?from=timeline) prohibiting initial coin offerings ("ICOs"), notifying operators who had already completed ICOs to liquidate, and warning that consumers were likely to be defrauded, and that where such activity was proven to be fraudulent, the operators would be referred for punishment.

20.     However, Mr. Fang seeks to dismiss the public interest exception with the incorrect statement, "Plaintiffs have failed to show how their requests are at all tied to news reporting or media supervision."  (Fang Report, Para 63.)  The PIPL does not state that news reporting and media supervision are the only forms of public interest.  Instead, the exception language is clear, "(5) the personal information is reasonably processed for news reporting, media supervision, *and other activities conducted in the public interest*;" (PIPL, Article 13 (5) (emphasis added).)  I did not argue that the public interest exception was tied to the news reporting exception.  My point is that if the PIPL applies, then the exceptions would also apply, including the protection of the public

interest.  Plaintiffs bring this action to protect the public from the unlawful sale of unregistered securities, which is a legitimate public interest, in China as well as the USA.

### D. Mr. Fang Misreads the PIPL to Require Public Disclosure

21.     Mr. Fang argues that the exception of PIPL, Article 13(6) does not apply, "because there is no indication that anyone has disclosed their personal information in any way, much less publicly or to Plaintiffs in this litigation."  (Fang Report, Para 64.)   However, there is no requirement under the PIPL that the information be "disclosed to the public" or to Plaintiffs in order for the exception of Article 13(6) to apply.

22.     Notwithstanding that the PIPL does not apply to Elastos' business records, if it did, then Article 13 (6) would provide an exception for names and email addresses or text account names or other contents sent out to co-workers, customers, or potential customers.  There can be no expectation of privacy in material that one voluntarily sends to a third party, despite Mr. Fang's illogical assertions.   "A personal information processor can process personal information of an individual only if one of the following circumstances exists:

…(6) the personal information disclosed by the individual himself or other legally disclosed personal information of the individual is reasonably processed in accordance with this Law;" (PIPL, Article 13 (6).)  The situation is completely different from the situation that the PIPL was designed to protect.   Information, such as email addresses or text chat account names, are voluntarily disclosed when a person sends out a communication.  Therefore, the fact that an email account name or a text chat name appear on that communication does not make the information personal, as Mr. Fang argues.

23. Mr. Yang of the NPC ELO explained that once information is disclosed, it is no longer private and that excessive restrictions on its use would be unreasonable.

"Already disclosed personal information is a special kind of personal information. Information dissemination is to benefit popular knowledge, advance social contact and interaction, and promote the progress of human civilization. Therefore, normally unnecessary restrictions should not be imposed on the dissemination of already disclosed personal information. If the already disclosed personal information remains under strong personal control, then it will conflict with the value of public dissemination of information. In order to balance the public interest and the rights and interests of personal information, in both China's Civil Code and this law, as well as the legislation of other countries, already disclosed personal information is regarded as a special kind of personal information, and special provisions are made. China's Civil Code, Article 1036, provides that the actor shall not bear civil liability for reasonable handling of the information voluntarily disclosed by a natural person or other legally disclosed information, except where the natural person expressly refuses, or handling the information will infringe his/her major interests. The meaning of this article is consistent with the above provisions of the Civil Code."

(*Interpretations of the PIPL*, pp. 82-83)

It is clear that the National People's Congress expected that information would be used in other countries, and that once information was published, it was no longer private information covered by the PIPL. This understanding is consistent with the general international understanding of privacy.

23.     Mr. Fang fails to understand, or ignores, the clear meaning of the PIPL. As one example, Mr. Fang asserts the Young Report starts from a faulty premise by using the term "derived from processing" to describe information covered by the PIPL. (Fang Report, Para 76.) He asserts, "But there is nothing in the PIPL, much less the definition of 'personal information' that suggests that there is such a requirement that personal information be 'derived' from 'processing' to be subject to the PIPL." (Fang Report, para 76.) However, PIPL Article 3 clearly states, "This Law shall apply to the processing of personal information…" (PIPL, Article 3.) This is not a matter of a faulty English translation of the PIPL. The Chinese clearly states, "处理自然人个人信息的活动," which means, "the activity of processing the personal information of natural

11

persons." So, it is clear from the language of the statute that processing of personal information is the purpose of protection of the PIPL. I understand that Plaintiffs in this action seek the business records of Elastos, and do not seek to obtain personal information covered by the PIPL or learn about the private lives of Elastos employees.

**E. Chinese Court Cases Show the Understanding of Personal Information**

24.     While China is a civil law jurisdiction and *stare decisis* does not apply to court decisions, Chinese court cases do provide examples of courts' understanding and reasoning.

25.     Mr. Fang argues that email addresses are personal information by citing to *Ma Yonglong and Beijing Zhongzi Huanyu Environmental Protection Technology Co., Ltd*., ((2021) Jing 0106 Min Chu 21840, "Ma v. Beijing ZH"). (Fang Report, Para 73.) However, the case does not demonstrate that a name or email address is personal information. In fact, the personal information at issue in that case was Mr. Ma's photographs taken with friends on excursions while he claimed to be at home on sick leave. Mr. Ma subsequently deleted his personal WeChat account from his office computer. The employer, Zhongzi Huanyu recovered the WeChat feed on the computer and sought to show from the copies of the photos, that Mr. Ma had abused the company policy on sick leave. A business communication, freely provided by the sender of an email to business contacts in the course of employment, is not similar to personal photos taken with friends on vacation and posted to a personal WeChat feed.

26.     In the decision for *Ma. V. Beijing ZH*, we see an example of the kind of information that a Chinese court found to be personal information. Personal photos taken with friends on a personal excursion, especially if shared only with friends, are clearly personal. One's WeChat feed is designed to allow the user to control who can see their information, like one's Facebook page in the US. Personal photos that one posts to one's personal feed on WeChat intended to be

seen only by friends do not qualify as business records or publicly disclosed information.  From the facts, it is clear that the personal photos were not contained in business records such as emails to his employer's customers.  The photos understandably qualify as personal information.  The example of *Ma. v. Beijing ZH* shows that the Beijing Court found personal photos in an employee's personal WeChat feed to be personal information.  The case has no useful application to Elastos' effort to shield its business emails, texts, or correspondence.

27.     Mr. Fang also cites to administrative decision Sheng Fu Gong (Tian An) Xing Fa Ju Zi (2022) No 33751 as showing that personal information should not be revealed absent consent under the PIPL.  However, the Bureau of Public Safety's decision only shows that a user's IMEI, MAC address, or Android ID from a dating app on an individuals' personal device qualifies as personal information.  This type of information seems naturally enough to qualify as personal information that can lead to the identification of a specific person.  This information is not like business correspondence where an employee put their name and email address on an outgoing text or email.  It is unlikely that such reasoning would apply to a company's computers to find any right of personal privacy in the company's books and records.

28.     Mr. Fan further cites a case as Bing Gong (Nan) Xing Fa Jue 25 (2022) No. 836 to show that Binhai County authorities penalized a company.  However, Mr. Fang fails to tell us the type of information and specifically fails to assert that the information is in any way similar to the business emails and correspondence sought from Elastos.  In addition, no such case is recorded among 2021 or 2022 administrative decisions issued by the Public Security Bureau of Binhai County.  It may be that Mr. Fang has incorrectly cited the case and should provide a corrected citation.

29.     In stating that *Yu v. Beijing Kuaiche* has no relevance, Mr. Fang ignores the point that Ms. Yu claimed privacy in the repair records and the Court found that such records did not constitute personal information.  (Fang Report, Para 88.)  The Court noted that designating all information as personal and private would violate the principle of socially reasonable cognition. Again, while the case has no *stare decisis* effect, it demonstrates that Chinese Courts are looking for specific types of information that need to be protected as private, and that a bald assertion of privacy is not sufficient.

30.     Mr. Fang dismisses the Beijing Intermediate Court decision in *Liang v. Beijing Huifa Zhengxin technology Company* on the grounds that the situation is fundamentally different than here.  He notes that the information "was already disclosed to the public."  (Fang Report, para 89.)  Mr. Fang acknowledges that personal information is no longer private once it has been disclosed, but he incorrectly imposes a requirement that it be disclosed to the public.  However, the exemption of PIPL Article 13 for information already disclosed, does not state that disclosure must be "made to the public".  It provides only that, "the personal information disclosed by the individual himself or other legally disclosed personal information of the individual is reasonably processed in accordance with this Law;"  (PIPL, Article 13(6).)  As discussed above, the drafters of the PIPL did not intend that disclosure required disclosure must be made to the public.  Thus, while the PIPL does not apply to business records, if it were to apply, there are exceptions to its application and one of them is where the employees sent out correspondence to customers and potential customers, voluntarily revealing their email addresses, texts, WeChat accounts, and the like.

**F. The PIPL is Administered by China's National Cyberspace Administration, Not an Agency with Power to Review All Business**

31.     The PIPL provides that supervision and administration, coordination and overall planning are the responsibility of the National Cyberspace Agency.  (PIPL, Article 60.)  While it is theoretically possible that Chinese authorities would grant a relatively new agency authority to supervise of all business records of all entities in China, it would be very impractical, and unlikely. Another agency already exists with such powers.  The Administration for Market Regulation already has administrative authority over all businesses, including regular review of the business records of business entities.

32.     Another provision of the PIPL provides another insight into the intended targets of the PIPL.  "A personal information processor that provides important internet platform services involving a huge number of users and complicated business types shall perform the following obligations…" (PIPL, Article 58.)  Mr. Fang might choose to offer his interpretation that Article 58 applies only to limited group of internet platform services, and that the remaining group is intended to be every other business and all of their business records in China.  However, that interpretation is not logical, and it seems clear that business records not falling in the scope of personal information derived from processing are not intended to be included.  The notion that the PIPL directs the National Cyberspace Agency to oversee all business records of all entities in China would eviscerate the ability of the agency to effectively conduct its duties.

33.     Furthermore, the Chinese legal system is not illogical and unworkable, as Mr. Fang's assertions would lead us to believe.  The PIPL does not exist in a vacuum, but in a comprehensive structure of statutes and regulations for China's economy that seek to balance the interests of various actors in society.  As noted in my first report, China's Civil Code has a definition that informs Chinese courts on the intention of the PIPL.  The definition is also

consistent with the definition in other jurisdictions, such as the European Union's well-publicized General Data Protection Regulations ("GDPR").  It is clear that the PIPL does not intend to capture all documents and records of everyone and every business as personal information subject to privacy regulations.

### G. Under Mr. Fang's Broad Interpretation of the PIPL, he and his firm are in Violation of the PIPL

34.     Mr. Fang claims to have reviewed the requested records and to have found the following information of the employees contained in such business emails and WeChat records: "date of birth, personal identification number, passport ID number, personal address, personal email address, mobile number, fax number, social media account, personal website address, personal bank account, and cryptocurrency address.  (Fang Report, para 96.)

35.     The issue at hand arises from Elastos' representation that employees have failed to provide consent to production of business records in this U.S. Court action.   Mr. Fang states that Elastos is a personal information processor under the PIPL, and that the individual employees must give consent before the information can be processed.  (Fang Report, Paras 51, 54.)  He also cites to the PIPL's requirement that the employees' consent must be voluntary, explicit, and fully informed.  (Fang Report, Para 56.)  However, Mr. Fang's opinion appears to be selectively applied, or disingenuous.

36.     Mr. Fang states, "The collection, processing… review… and production of documents in a US litigation clearly fall within the scope of personal information processing." (Fang Report, para 48.)  Under Mr. Fang's reading, he and his team appear to be in violation of the PIPL.  (Fang Report, Paras 45, 48, 93, 94, 95, 96.)  He fails to inform us that those non-consenting employees provided their explicit consent to him, Zhonglun, and his outside contractors, Control Risks and CJK, and contract attorneys, to use the employees' information.

37.     Mr. Fang notes that the review was conducted "by attorneys" and "with an eDiscovery vendor" but fails to point out any language in the PIPL that provides such an exception. Mr. Fang vaguely asserts that he and his team are exempt from the PIPL as security measures. However, he fails to show how he and his team qualify as the required security measure. (PIPL, Article 59.)

38.     Mr. Fang notes that he and his team engaged in the collection, processing, and review of the documents from Elastos. (Fang Report, paras 93-96.) Under Mr. Fang's logic, since those non-consenting employees failed to provide their consent, then those documents clearly have been collected and stored by Elastos, and reviewed by Elastos, Mr. Fang, and others for this litigation, apparently all in violation of the PIPL. Since we assume that Mr. Fang and Zhonglun would not engage in illegal activity, it seems that Mr. Fang advances the argument only for the purpose of denying the documents to Plaintiffs, even while illogically allowing their use by himself and his firm.

39.     Mr. Fang baldly states that it, "is clear that the documents sought by Plaintiffs contain 'personal information', and their collection, review, and production to Plaintiffs is 'personal information processing' and therefore subject to the PIPL." (Fang Report, Para 79.) However, it is not at all clear, and Mr. Fang provides no support for his assertion. We are required to accept that he and his team collected, and reviewed documents stored, collected, and produced to Mr. Fang and his team, in the absence of employee consents, and that his team having done so in violation of the PIPL by their own interpretation, have made a sincere conclusion that there is personal physical location information and personal banking information, etc. contained in those records, all in the absence of any showing of evidence.

### H. Mr. Fang Concedes the Business Records Can Be Provided Without Violating the PIPL

40.     Furthermore, Mr. Fang says that he and his team reviewed documents containing "personal information and sensitive personal information of natural persons who have not consented to the collection" and "applied redactions to keep such information from being produced," stating that, "the amount of redaction has a minimal impact, if any, on the readability of the produced documents." (Fang Report, para 96.)  Given this statement, it is unclear the purpose of withholding documents based on the PIPL.  If the personal information has already been redacted, then it would not be revealed to Plaintiffs.  Therefore, there would be no violation of the PIPL.  It would seem that there is a ready solution, already prepared by Elastos, and this debate about the PIPL is unnecessary.  Elastos could simply follow the same process for the remaining documents—that is, produce them to Plaintiffs with redactions for any "personal information of natural persons who have not consented to the collection."

41.     For the reasons stated above, it is my opinion that Defendants' claim that China's Personal Information Law prohibits or restricts production of its business records where individual employees are located in China is erroneous and not supported by Law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 22d day of July, 2022 in San Francisco, California.

_Laura Wen-yu Young_
Laura Wen-yu Young

# Exhibit 1

一是,以向境内自然人提供产品或者服务为目的,即以我国为目标市场并以个人为对象的跨境交易。随着我国不断推进高水平对外开放,更深地融入全球化进程,一些境外商业主体不断加大对中国市场的开拓力度。特别是电子商务的迅猛发展,为跨境提供产品和服务带来了更多便利,促使我国消费者的跨境消费日益频繁,而以我国消费者为目标人群的经营活动,也必然涉及大规模处理我国境内自然人的个人信息。对于相关境外个人信息处理者是否以我国为目标市场,应当综合多种因素对其商业意图作出判断,如境外处理者的网站、应用程序使用中文对相关产品和服务进行标识、介绍,将人民币作为支付货币或者接入我国境内支付工具,则可以表明该境外处理者将我国作为目标市场,其处理我国境内自然人个人信息的活动应当适用本法。如我国境内消费者仅凭其个人意愿自主跨境消费,或者境外处理者仅零星少量处理我国境内自然人的个人信息,并综合其他因素能够确认境外处理者不以我国为目标市场,则其处理我国境内自然人个人信息的活动不适用本法。

二是,分析、评估境内自然人的行为。利用个人信息进行分析、评估活动,通常需要持续记录、追踪相关个人信息,并通过后续的处理技术,对个人的行为习惯、兴趣爱好或者经济、健康、信用状况等作出分析或预测,如利用用户画像进行营销或者作出自动化决策。相比一般的处理行为,此类行为对个人信息的收集、挖掘更容易侵害个人隐私等权益。因此,本法明确,在境外分析、评估境内自然人行为的个人信息处理活动适用本法,这一适用情形不区分该处理活动是商业行为还是非商业行为。

三是,法律、行政法规规定的其他情形。当前在个人信息处理方面,新技术新应用快速迭代发展并可能带来新的挑战,个人信息跨境处理的风险尚未充分显现,在今后实践中还可能遇到新情况、新问题,这样规定可以为相关法律、行政法规有针对性地加强对跨境处理活动的管理提供必要的空间。

"Using natural persons' personal information for analysis and evaluation activities usually requires continuous recording and tracking of relevant personal information, and through subsequent processing technology, to analyze or predict personal behavior habits, interests, hobbies, or economic, health, credit status, etc., such as using user portrayal for marketing or making automatic decisions."

From *Interpretation of the Personal Information Protection Law of the People's Republic of China,* pp 17, by Heqing Yang, Vice Director of the Economic Laws Office of the Legislative Affairs Commission of the Standing Committee of China's National People's Congress.

的个人信息且仅用于维护公共安全的目的。在公共场所安装图像采集、个人身份识别设备应当是为了维护公共安全、其他所需要的。例如，小区物业企业为了维护治安和小区管理等目的在公共场所安装的摄像设备所采集的个人信息，应当用于维护社会公共秩序、治安管理等、公共场所所有的所有、管理者不得为商业目的安装图像采集、个人身份识别设备，为维护公共安全目的收集的图像、个人信息也不得用于维护公共安全以外的目的，特别是用于商业营销。韩国《个人信息保护法》也对利用这些视频信息设备采集、明确可视数据设备的操作人员不得以初始目的以外的其他目的任意处置可视数据。

第二，取得个人单独同意的，可以将相关信息用于维护公共安全以外的其他合法用途。个人信息处理者通过在公共场所安装图像采集、个人身份识别设备所收集的个人信息用于维护公共安全以外的目的且相关个人的同意的，相关要求在收集个人信息的同时应取得个人的同意。考虑到该项处理行为对个人权益有较大影响且属于一项新的个人信息处理行为，按照本法规定，应当取得个人的同意，应依照本条规定当取得个人单独同意。

**第二十七条** 个人信息处理者可以在合理的范围内处理个人自行公开或者其他已经合法公开的个人信息；个人明确拒绝的除外。个人信息处理者处理已公开的个人信息，对个人权益有重大影响的，应当依照本法规定取得个人同意。

**【释义】** 本条是关于处理已公开的个人信息的规定。

已公开的个人信息是一类特殊的个人信息。信息传播有利于普及知识，促进社会交流与交流，推动人类文明进步，因此对已公开的信息通常不应对其传播施加不必要的限制。如果对已公

开的个人信息仍赋予个人过大的控制权，则信息公共传播的价值将得不到保护。为了平衡公共利益与个人信息权益，包括我国《民法典》和本法，以及其他国家的立法都将它公开的个人信息作出特别规定。我国《民法典》第1036条对此作了规定，个人信息处理者对其能已经公开的信息为一类特殊的个人信息，自行公开或者他人合法公开的信息，行为人不承担民事责任，但是该自然人明确拒绝或者处理该信息、行为对他人重大利益的除外。本条规定与《民法典》的上述规定含义基本一致的。

**一、关于已公开的个人信息**

公开的个人信息主要包括个人自行公开、他人合法公开、其他人非法公开。

个人自行公开，是指个人通过网络、媒体等渠道主动将自己的个人信息向社会公开，比较常见的是将自己日常生活的照片、出于特定目的将媒体上向社会公开。他人合法公开，是指他人经个人同意，或者基于本法第13条自然人公开，他人非法公开，是指他人在不具有合法性基础之外的合法性被公开，他人非法公开了个人信息，是指他人依据法律依据或者正当理由而使个人信息。

本条将适用对象限于个人自行公开或者他人合法公开的个人信息，个人信息处理者在收集相使用的个人信息。对于已经公开个人信息还要进行判断比较容易将自行公开，是自行公开还是他人公开，如果不容易判断或者知道或知道原则或使用是非法公开，如果本法规定的，则不适用本条又可不经个人同意在合理范围内处理。

**二、关于在合理范围内处理已公开的个人信息**

在合理范围内处理已公开的个人信息，解释把握：

"Already disclosed personal information is a special kind of personal information.  Information dissemination is to benefit popular knowledge, advance social contact and interaction, and promote the progress of human civilization. Therefore, normally unnecessary restrictions should not be imposed on the dissemination of already disclosed personal information.  If the already disclosed personal information remains under strong personal control, then it will conflict with the values of public dissemination of information.  In order to balance the public interest and the rights and interests of personal information, in both China's Civil Code and this law, as well as the legislation of other countries, already disclosed personal information is regarded as a special kind of personal information, and special provisions are made.  China's Civil Code, Article 1036, provides that the actor shall not bear civil liability for reasonable handling of the information voluntarily disclosed by a natural person or other legally disclosed information, except where the natural person expressly refuses, or handling the information will infringe his/her major interests.  The meaning of this article is consistent with the above provisions of the Civil Code."

From *Interpretation of the Personal Information Protection Law of the People's Republic of China,* pp 82-8 , by Heqing Yang, Vice Director of the Economic Laws Office of the Legislative Affairs Commission of the Standing Committee of China's National People's Congress.