UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK OWEN and JAMES WANDLING,
*Individually and On Behalf of All Others Similarly Situated*,

                Plaintiffs,

-against-

ELASTOS FOUNDATION, et al.,

                Defendants.

19-CV-5462 (GHW) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In their joint letter dated March 7, 2023 (Joint Ltr.) (Dkt. 193), the parties reported that they were at impasse on what plaintiffs characterize as a key document discovery issue: "Defendants' refusal to search, or even access, the Google/Gmail account of Director Ben Li (a/k/a Heng Li, Ben Lee) to determine what is still recoverable (if anything), based on Defendants' objection that this account is outside Defendants' possession, custody, or control." Joint Ltr. at 1. Plaintiffs ask the Court to order defendant Elastos Foundation (Elastos) to access that account, search it (using the parties' previously agreed-upon search terms), and either "produce all responsive documents or a report as to the volume and search hits of recoverable documents." *Id.*

For the reasons that follow, plaintiffs' request is DENIED.

**Background**

Mr. Li is an Elastos employee, its Director of Operations, and one of three members of its board of directors, but is not himself a defendant in this action. Discovery shows that he used two different Google accounts during the relevant time period: an Elastos account associated with an email address ending in "elastos.org" (the Elastos Google Account), and what defendants characterize as Mr. Li's personal account, associated with an email address ending in "gmail.com" (the Personal Google Account). The Elastos Google Account has been searched in connection with

this action, *see* Li Dep. Tr. (Joint Ltr. Ex. 1) at 205:3-19; Li Decl. (Joint Ltr. Ex. 7) ¶ 11 & Ex. B, resulting in the production of over 13,000 documents. Joint Ltr. at 4. In total, more than 30,000 documents have been produced from various Li sources, including (for example) his laptop, phone, and personal WeChat account, which he concededly used for Elastos business, and which he permitted defendants' lawyers to collect and search. *Id.* However, when asked for permission to search his Personal Google Account, Li refused. *Id.*

Discovery further shows that on two occasions, Mr. Li received emails concerning a personal investment at his elastos.org email address and forwarded them to his gmail.com email address. Joint Ltr. Exs. 4, 5. On one occasion, he received an email concerning Elastos business at his gmail.com email address, which he forwarded to his elastos.org email address. *Id.* Ex. 6. And on two occasions, Mr. Li participated in editing Elastos documents (a team budget, in 2019, and a whitepaper, in 2020) using email addresses that were apparently generated by "Google Sheets" and "Google Docs," respectively. *Id.* Exs. 2-3.

During the status and discovery conference held on March 14, 2023, plaintiffs noted that they do not have access to the underlying spreadsheet or whitepaper (that is, the versions of those documents referenced in Mr. Li's emails) and theorized that this is because those documents were stored in his Personal Google Account. Defendants disputed this interpretation, pointing out that in both cases, the responding emails were addressed to Mr. Li's elastos.org email address, *see* Joint Ltr. Exs. 8-9, which, according to defendants, suggests that the underlying documents were stored in the Elastos Google Account. Plaintiffs reminded the Court that the emails showing communications to or from Mr. Li's gmail.com email address were produced only incidentally,

2

and argued that, at a minimum, the previously agreed-upon search terms should be run across the entire Personal Google Account to determine whether there were any further hits.[1]

## Discussion

The parties' dispute presents two questions: (1) whether Mr. Li's Personal Google Account is within the "control" of defendant Elastos, as that term is used in Fed. R. Civ. P. 34, such that Elastos can be ordered to search it and produce any relevant contents; and (2) if so, whether the discovery sought would be nonetheless be disproportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), and therefore should not be required. Joint Ltr. at 2-4.

As to the "control" question, plaintiffs rely primarily on *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, *5-9 (S.D.N.Y. Sept. 27, 2016), in which this Court adhered, on reconsideration, to its prior order requiring plaintiff Royal Park Investments SA/NV (RPI) to produce relevant business communications sent to or from its outside directors using their non-RPI email accounts, and *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014), in which the court directed defendant AppDynamics to search the personal email accounts of Bansal and Sunkara, its "founders and officers." Defendants point to *Precision Med. Grp., LLC v. Blue Matter, LLC*, 2020 WL 7352509, at *3-4 (S.D.N.Y. Dec. 15, 2020), in which the court declined to require Blue Matter to search the personal email accounts of its founder and managing partner, Dandekar, because there was no evidence to show that Dandekar used that account for relevant communications.

Rule 34(a)(1) states that a party may obtain discovery of documents "in the responding party's possession, custody, or control." Documents are considered to be "under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-

---

[1] *See* Dkt. 114-4 at ECF p. 14 (list of search terms applied).

party to the action." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997)). *See also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required") (citation omitted); *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party.")

There is no one criterion for determining whether a corporate party has the "practical ability" to obtain relevant documents from a non-party officer, director, or employee. *See Royal Park*, 2016 WL 5408171, at *6. Among the factors that the courts consider are whether the corporation could discharge the individual for failure to cooperate in discovery; whether the individual has a duty, under local law, to turn over the documents on request; whether the corporate party previously secured the individual's cooperation in discovery; and "whether the party has asked the non-party to turn over the documents at issue and, if so, whether the non-party is willing to do so." *Id.* at *6-7. "The burden of demonstrating that the party from whom the documents are sought has the practical ability to obtain those documents lies with the party seeking the discovery." *AppDynamics*, 2014 WL 12860591, at *3.

In this case, plaintiffs have not met that burden. In most American jurisdictions, the first two factors weigh heavily in favor of a finding of "control." *See, e.g., AppDynamics*, 2014 WL 12860591, at *3 (collecting cases). But the landscape is less settled abroad. *See Royal Park*, 2016 WL 5408171, at *7 (noting that it was unclear, under Belgian law, "whether and under what circumstances RPI could remove its current directors from the board" and equally unclear "what

4

fiduciary or other duties of cooperation they owe to RPI in connection with this lawsuit"). Elastos is registered in Singapore and "has its primary offices in Shanghai and Beijing, China." Am. Compl. (Dkt. 68) ¶ 15. Mr. Li works in China. *See Owen v. Elastos Found.*, 2023 WL 194607, at *2 (S.D.N.Y. Jan. 11, 2023). Plaintiffs do not discuss either Singaporean or Chinese law as it bears on the "control" question, and this Court is not willing to assume that Elastos has the same "practical ability" to coerce compliance from Mr. Li that a U.S. corporation would have with respect to documents in the physical or electronic possession of its officers, directors, or employees. Defendants, for their part, advise the Court that "Elastos has no polices that would give it control over data on the personal devices of [its personnel]." Joint Ltr. at 4.

Defendants do not claim that Mr. Li has refused entirely to cooperate in Elastos's discovery efforts. To the contrary: he agreed to turn over his laptop and phone to be searched, *see* Li Dep. Tr. at 202:5-203:8; he sat for deposition; and he prepared a declaration, in response to an order by this Court, detailing Elastos's efforts to search the company's Google, Dropbox, and Zoom accounts, as well as its dissemination of litigation hold memos. Li Decl. ¶¶ 4-45. Defendants report, however, that they "have requested multiple times for Mr. Li to provide access to his personal email account for collection and search but he has refused." Joint Ltr. at 4. Plaintiffs present no contrary evidence. On balance, I cannot conclude, on the present record, that Elastos controls Mr. Li's Personal Google Account.

Even if plaintiffs had borne their burden as to control, I am not persuaded that Mr. Li used his Personal Google Account to conduct Elastos business. At best, plaintiffs point to a single instance where he *received* an Elastos business document via his gmail.com email address – but promptly forwarded it to his Elastos Google Account, where it was collected and produced to plaintiffs. Joint Ltr. Ex. 6. The case at bar is thus very different from *Royal Park*, where RPI's

outside directors had no RPI-issued email accounts and consequently used "outside email accounts, provided by their employers," to conduct all of their RPI business, 2016 WL 5408171, at *8. It is also distinguishable from *AppDynamics*, where both Sunkara and Bansal testified that they used their personal accounts for various business purposes, including to "back up" work emails, to store "notes concerning the APM product," to send work emails to outside vendors, and "in connection with forming AppDynamics and possibly for other related work." 2014 WL 12860591, at *4. There is no comparable testimony from Mr. Li.[2]

### Conclusion

Plaintiffs have not shown, on the present record, that they are entitled to an order compelling Elastos to search Mr. Li's Personal Google Account. "Should further discovery reveal a valid justification for such a search, [plaintiffs] may renew [their] request." *Blue Matter*, 2020 WL 7352509, at *4.

Dated: March 16, 2023
New York, New York

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[2] As to plaintiffs' request for an order compelling production of a hit report, Joint Ltr. at 1, I note that running the previously agreed-upon search terms across Mr. Li's entire Personal Google Account would not necessarily reveal whether he used that account for Elastos work, because those search terms include some common words that could hit on innumerable emails and documents completely unrelated to Elastos's business. For example, the search terms include APP*, COMMUNI*, and VOT*. *See* Dkt. 114-4 at ECF p. 14.